Smith v. Bronson Lifestyle Imp. and Research Center Co., Not Reported in N.W. Rptr....

2015 WL 8932816

2015 WL 8932816
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

Kristen SMITH, next friend of
A.S., minor, Plaintiff–Appellant,

v.

BRONSON LIFESTYLE IMPROVEMENT AND
RESEARCH CENTER CO, a/k/a Bronson Athletic
Club, Medsport Enterprise, Inc, a/k/a Medsport Athletic
Clubs, LLC, and Sherry Gesmundo, next friend
of Allen Dueweke, minor, Defendants–Appellees.

Docket No. 321813
|
Dec. 15, 2015.

**Synopsis**
**Background:** Individual, as next friend of seven-year-old
camp attendee, brought negligence and vicarious
liability action against camp operators for criminal act of their
employee, who sexually abused attendee. The Circuit
Court, Kalamazoo County, granted summary disposition for
operators. Individual appealed.

**Holdings:** The Court of Appeals held that:

[1] operators were not vicariously liable for employee's
criminal act, and

[2] operators did not have duty to protect attendee from
employee's criminal act.

Affirmed.

Stephens, J., concurred with opinion.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment.

West Headnotes (4)

[1]    **Labor and Employment** 🔑 Particular cases

Camp operators were not vicariously liable for
criminal act of their employee, who sexually
abused seven-year-old camp attendee, despite
claim that operators should have known of
employee's propensity to commit sexual contact;
employee's permitting female campers to jump
on him and pull at his clothing was not
at all similar to his future commission of
criminal sexual contact against attendee in
locked closet that would have placed operators
on notice of imminent risk of harm to campers,
operators performed criminal background check
on employee and were familiar with him from
his past attendance as camper, and nothing
showed that operators had actual or constructive
knowledge that employee committed similar
conduct in past or that he had propensity to
commit criminal sexual conduct.

2 Cases that cite this headnote

[2]    **Negligence** 🔑 Protection against acts of third
persons in general

**Parent and Child** 🔑 Liability for injuries to
child

Camp operators did not have duty to protect
seven-year-old female camp attendee from
criminal act of their 16-year-old male employee,
who sexually abused attendee; employee's
act was unforeseeable, as nothing showed
that employee had ever engaged in criminal
conduct in past and no circumstance clearly
and unmistakably would have put reasonable
employer on notice of imminent risk of harm
to specific victim, employee's prior horseplay,
during which he allowed female campers to
jump on him and pull at his clothing, did not
put operators on notice that employee would
later commit criminal sexual conduct against
attendee, and comments by camp's executive
director, in which he expressed regret and agreed
that employee should not have been left alone

with campers, did not render employee's conduct foreseeable.

1 Case that cites this headnote

**[3]**    **Appeal and Error**    ⚷ In general; adhering to theory pursued below

Individual, as next friend of seven-year-old camp attendee, abandoned for appellate review claim that camp operators were negligent in training their employee, who sexually abused attendee, in individual's negligence action against operators; individual's complaint did not assert theory that camp's managers and supervisors should have been trained to recognize behaviors that might identify persons prone to commit criminal sexual conduct, and individual cited no legal authority requiring such training or removing child sexual abuse from rule requiring foreseeability before duty would arise to protect against criminal conduct.

1 Case that cites this headnote

**[4]**    **Appeal and Error**    ⚷ Particular Cases and Contexts

Individual, as next friend of seven-year-old camp attendee, abandoned for appellate review claim that liability could be imposed on employers of minors who committed criminal conduct without regard to whether conduct was foreseeable, in individual's negligence action against camp operators for criminal act of their 16-year-old employee, who sexually abused attendee; individual cited no authority and presented no persuasive argument in support of claim.

Kalamazoo Circuit Court; LC No.2013–000234–NO.

Before: MARKEY, P.J., and MURPHY and STEPHENS, JJ.

**Opinion**

PER CURIAM.

**\*1**  Plaintiff Kristen Smith, as next friend of A.S., appeals by leave granted the trial court's orders granting summary

disposition to defendants, Bronson Lifestyle Improvement and Research Center Company, a/k/a, Bronson Athletic Club (Bronson or BAC), and MedSport Enterprise Inc, a/k/a, MedSport Athletic Clubs, LLC (MedSport). [1] Plaintiff asserted claims of direct negligence and vicarious liability for the criminal act of defendants' employee, [2] 16–year–old Allan Dueweke, who sexually abused seven-year-old A.S. while she attended defendants' camp. The trial court entered its first order on April 25, 2014, granting defendants summary disposition on plaintiff's claims of vicarious liability because plaintiff presented no evidence that would permit a reasonable jury to find that defendants knew, or that a reasonable employer should have known, that (1) Dueweke had committed similar misconduct in the past, and (2) Dueweke had the propensity to commit such criminal acts in the future. On May 6, 2014, the trial court granted defendants' summary disposition as to plaintiff's claims that defendants were negligent in the hiring, supervision and training of Dueweke. The trial court reasoned that because Dueweke's criminal conduct was not foreseeable, a duty of care did not arise on the part of defendants to protect campers from Dueweke's unforeseeable actions. We affirm.

**[1]**    This Court reviews de novo the trial court's grant or denial of a motion for summary disposition. *Maiden v. Rozwood*, 461 Mich. 109, 118, 597 N.W.2d 817 (1999). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence. *Corley v. Detroit Bd. of Ed.*, 470 Mich. 274, 278, 681 N.W.2d 342 (2004). When considering a motion under MCR 2.116(C)(10), the trial court and this Court must view the proffered evidence in the light most favorable to the party opposing the motion. *Maiden*, 461 Mich. at 120, 597 N.W.2d 817. A trial court properly grants the motion when the proffered evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Brown v. Brown*, 478 Mich. 545, 552, 739 N.W.2d 313 (2007). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v. Gen. Motors Corp.*, 469 Mich. 177, 183, 665 N.W.2d 468 (2003).

Plaintiff argues on appeal that she produced sufficient evidence from which a jury could find that the corporate defendants knew or should have known of Dueweke's

Smith v. Bronson Lifestyle Imp. and Research Center Co., Not Reported in N.W. Rptr....

2015 WL 8932816

propensity to commit criminal sexual contact (CSC) so as to render defendants vicariously liable for Dueweke's actions. Plaintiff points to an incident about two weeks before the assault on A.S. in which Dueweke permitted three female campers to jump on him and pull at his shirt and was disciplined for it. [3] Plaintiff asserts this incident was sexual in nature because body parts could have been exposed and that the trial court's characterization of this incident as "inaction" was improper fact-finding. Plaintiff argues that she produced affidavits of two experts that this incident rendered Dueweke's subsequent CSC reasonably foreseeable. Plaintiff also notes that Michael Rowe, BAC Executive Director, testified that Dueweke should not have been left alone with the campers, and if he had not been, the incident would not have happened. We conclude the trial court properly ruled that the horseplay incident [4] was insufficient to place defendants on notice of Dueweke's propensities so as to render his later criminal assault on A.S. foreseeable.

**\*2** The trial court properly granted defendants summary disposition of plaintiff's claims based on vicarious liability for the intentional tort of defendants' employee. Despite plaintiff's expert's opinion, plaintiff presented no evidence that would permit a reasonable jury to find that defendants knew, or that a reasonable employer should have known, that (1) Dueweke had committed similar misconduct in the past, and (2) Dueweke had the propensity to commit sexual assault in the future. See *Hamed v. Wayne Co.,* 490 Mich. 1, 12, 803 N.W.2d 237 (2011), and *Brown,* 478 Mich. at 553–556, 563, 739 N.W.2d 313 (the pertinent standard is what a *reasonable* employer knew or should have known, not that of a child abuse expert trained to identify patterns of pre-abuse "grooming" behaviors).

"The general rule of respondeat superior is that an employer is not liable for the torts of its employees who act outside the scope of their employment." *Zsigo v. Hurley Medical Ctr.,* 475 Mich. 215, 217, 716 N.W.2d 220 (2006); see also *Salinas v. Genesys Health Sys.,* 263 Mich.App. 315, 317, 688 N.W.2d 112 (2004) (noting that "liability cannot be imposed against an employer for torts intentionally committed by an employee that are outside the scope of the employment"). Further, Michigan courts have recognized that criminal conduct of an employee is, in general, unforeseeable and outside the scope of employment of a legitimate business. See *Brown,* 478 Mich. at 555, 739 N.W.2d 313 ("an

employer can assume that its employees will obey our criminal laws"). Our Supreme Court has explained:

> [W]e have consistently held that an employer's liability for the criminal acts of its employees is limited to those acts it can reasonably foresee or reasonably should have foreseen. This is because we should not expect employers to assume that their employees will disobey the law. Criminal conduct is inherently arbitrary and highly unpredictable.
>
> [*Hamed,* 490 Mich. at 13, 803 N.W.2d 237.]

But the general rule does not always apply, and our Supreme Court has provided clear rules for determining when an exception might exist to the general rule of employer non-liability for the intentional torts of an employee. An employer may be held vicariously liable for an employee's criminal conduct when "an employer had (1) actual or constructive knowledge of prior similar conduct and (2) actual or constructive knowledge of the employee's propensity to act in accordance with that conduct." *Hamed,* 490 Mich. at 12, 803 N.W.2d 237. To satisfy the first prong of this test, there must be sufficient similarity between the prior conduct of the employee and the conduct at issue so as to lead a reasonable employer to recognize the prior conduct as an "inevitable prelude," or such that would "inexorably lead to criminal sexual conduct," *Brown,* 478 Mich. at 555, 739 N.W.2d 313, or "inevitably lead to acts of criminal sexual conduct." *Hamed,* 490 Mich. at 16, 803 N.W.2d 237.

The trial court correctly ruled that Dueweke's permitting female campers to jump on him and pull at his clothing was not at all similar to his future commission of criminal sexual contact in a locked closet that would place defendants on notice of an imminent risk of harm to campers. *Id.; Brown,* 478 Mich. at 555, 739 N.W.2d 313. The evidence showed defendants performed a criminal background check on Dueweke that disclosed nothing and were familiar with him from his past attendance as a camper. Plaintiff presented no evidence of any similar sexual misconduct in Dueweke's

past that defendants could have but did not discover. Further, Dueweke's passive violation of workplace rules by allowing physical contact with female campers is not such "that would afford a reasonable employer notice of a propensity to rape or commit some other type of criminal conduct[.]" *Brown, 478 Mich. at 563, 739 N.W.2d 313.* Because there was no other evidence from which to infer that defendants had actual or constructive knowledge that Dueweke committed similar misconduct in the past and no other evidence from which to infer defendants had actual or constructive knowledge that Dueweke had a propensity to commit criminal sexual conduct, defendants cannot be held vicariously liable for his intentional tort of CSC against A.S. *Hamed, 490 Mich. at 12, 16, 803 N.W.2d 237; Brown, 478 Mich. at 563, 739 N.W.2d 313.* Consequently, the trial court correctly ruled as a matter of law that no basis existed to impose vicarious liability on defendants for Dueweke's intentional tort of CSC on A.S. *Zsigo, 475 Mich. at 221, 231, 716 N.W.2d 220; Salinas, 263 Mich.App. at 317, 688 N.W.2d 112.*

**\*3** Plaintiff argues that the trial court erred by engaging in improper fact finding at the summary disposition phase, see *Featherly v. Teledyne Industries, Inc., 194 Mich.App. 352, 357, 486 N.W.2d 361 (1992)* (a trial court may not make factual findings or weigh the credibility of witnesses when deciding a summary disposition motion), by characterizing the incident of female campers jumping on Dueweke as passive, innocent horseplay, and, therefore, not similar to the future CSC. This argument is without merit. First, in a negligence action the trial court must determine as a question of law whether a defendant owes the plaintiff a duty, *Brown, 478 Mich. at 552, 739 N.W.2d 313,* and second, under MCR 2.116(C)(10), the trial court must determine whether the plaintiff has produced sufficient evidence from which a reasonable jury could find as a matter of fact that the defendant breached the duty. In this case, whether a duty exists—the breach of which imposes vicarious liability on defendants—depends on plaintiff's producing sufficient evidence of foreseeablity under the test stated in *Hamed, 490 Mich. at 12, 803 N.W.2d 237.* In this regard, evidence is sufficient to withstand summary disposition if it raises a question of fact on which reasonable minds might differ. *West, 469 Mich. at 183, 665 N.W.2d 468.* If reasonable minds could not differ in concluding that the *Hamed* standard was not satisfied, the issue is one of law for the trial court to decide. *Hiner v. Mojica, 271 Mich.App. 604, 610, 722 N.W.2d 914 (2006).* The trial court's characterization of the camper horseplay incident with three female campers as a passive response by Dueweke is not improper judicial fact-finding; it is the proper judicial determination that reasonable minds could not differ and find such conduct similar to the future CSC Dueweke committed where he lured a single camper into a locked closet and forced sexual contact. As a matter of law, the evidence was insufficient to satisfy the first prong of the *Hamed* standard—similar prior conduct.

The trial court also properly determined that the affidavits of plaintiff's experts were insufficient to create a question of fact regarding satisfying the second prong of the *Hamed* standard—"actual or constructive knowledge of the employee's propensity to act in accordance with that conduct." *Hamed, 490 Mich. at 12, 803 N.W.2d 237.* Although Kathleen Faller, an expert in the field of child sexual abuse, averred that the horseplay incidents would have been recognized as "foreseeable grooming behaviors" by a "camp director or supervisor with proper training on child sexual abuse awareness and prevention," plaintiff's reliance on this evidence must fail. First, Faller herself notes specialized training is necessary to recognize "grooming behavior." But the law does not require such training, and the evidence must be such to place a *reasonable employer* on notice of the employee's propensity. See *Brown, 478 Mich. at 553–556, 563, 739 N.W.2d 313.* Thus, the trial court correctly observed that even if plaintiff's expert could predict future criminal activity based on the horseplay incidents, the trial court could not alter the legal standard of foreseeability on the basis of the expert's specialized training. Moreover, the trial court properly followed our Supreme Court's admonition against using hindsight to determine whether an employer might have been placed on notice of future criminal conduct by an employee. The Court in *Brown,* 478 Mich. 555–556, rejected permitting "a jury to impose liability on an employer if, in retrospect, somehow the harm was avoidable." The Court would "not transform the test of foreseeability into an 'avoidability' test that would merely judge in hindsight whether the harm could have been avoided." *Id. at 556;* see also *Hamed, 490 Mich. at 14, 803 N.W.2d 237.* Consequently, the trial court correctly ruled that reasonable minds could not differ that Dueweke's sexual contact with A.S. was not foreseeable by a reasonable employer; therefore, defendants were entitled to judgment as a matter of law of plaintiff's claims based on vicarious liability.

Case 1:25-cv-00442-JMB-SJB    ECF No. 17-5, PageID.183    Filed 07/09/25    Page 5 of 11

Smith v. Bronson Lifestyle Imp. and Research Center Co..., Not Reported in N.W. Rptr....

2015 WL 8932816

**\*4**  **[2]**  Plaintiff next argues that the trial court erred by granting defendants summary disposition on issues of direct negligence in hiring, training and supervising Dueweke. Plaintiff contends that whether Dueweke's acts were reasonably foreseeable was a question of fact for the jury. Again, plaintiff relies on Faller's affidavit that with "proper training on child sexual abuse awareness and prevention," defendant's managers and supervisors would have recognized Dueweke's conduct as "potential grooming behavior."

Plaintiff also argues that defendants' camp program constituted an unlicensed child care organization under 1973 PA 116, MCL 722.115(1). [5] Plaintiff asserts that under Mich. Admin Code, R 400 .5101(c) & (d), defendants' camp was a "center," which required "caregivers" to be at least 17 years old. [6] Plaintiff also argues that defendants operated a "day camp," Mich. Admin Code, R 400.11106(1)(i), [7] and that Mich. Admin Code, R 400.11111(2)(a) required one adult staff member for every 10 campers below the age of 13. Plaintiff contends these rules are relevant to the issue of foreseeability and whether defendants were negligent because the violation of administrative rules and regulations are evidence of negligence.

Plaintiff further argues that the trial court erred by dismissing her direct negligence claims because Bronson's Executive Director, Michael Rowe, testified that Dueweke should not have been left alone with the campers and that defendants should have but did not comply with licensing requirements. Last, plaintiff argues that the general rule that an employee's criminal conduct is unforeseeable does not apply to minors because minors "cannot be held fully accountable for their actions" and an employer of a minor should therefore be accountable.

We conclude that the trial court correctly granted defendants summary disposition on plaintiff's claims of negligent hiring, training and supervision of Dueweke. For the same reasons discussed regarding plaintiff's claims of vicarious liability, there is no evidence creating a question of fact that defendants knew or should have known that Dueweke might sexually assault a camper. Because Dueweke's criminal conduct was not foreseeable, defendants did not and could not have had a duty of care to protect campers from Dueweke's unforeseeable criminal actions. *Brown,* 478 Mich. 552–559; see also *Babula v. Robertson,* 212 Mich.App. 45, 51–52,

536 N.W.2d 834 (1995) (holding a babysitter's general duty of care owed to her charge did not extend to protection from unforeseeable CSC committed by babysitter's husband). With respect to alleged agency rule violations, we note that none of the rules plaintiff cites are designed to protect campers from criminal conduct in general or sexual assault in particular. So, even if the trial court erred by ruling that the cited rules do not apply, they do not create a duty to protect campers from criminal sexual conduct. See *Klanseck v. Anderson Sales & Service, Inc.,* 426 Mich. 78, 87, 393 N.W.2d 356 (1986); *Rakowski v. Sarb,* 269 Mich.App. 619, 628 n. 4, 713 N.W.2d 787 (2005).

**\*5**  It is axiomatic that the tort of negligence consists of four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Henry v. Dow Chemical Co.,* 473 Mich. 63, 71–72, 701 N.W.2d 684 (2005). "Duty" is a legally recognized obligation to conform to a particular standard of conduct toward another so as to avoid unreasonable risk of harm. *Maiden,* 461 Mich. at 131, 597 N.W.2d 817. If defendants did not have a duty to protect A.S. from the risk of harm that occurred, plaintiff's negligence claim fails as a matter of law. *Id.* at 135, 597 N.W.2d 817; *Cook v. Bennett,* 94 Mich.App. 93, 98, 101, 288 N.W.2d 609 (1979) (unless the defendant owes a duty to the plaintiff, a negligence analysis can proceed no further). Generally, the law will not impose a duty on one party to protect another unless there is a special relationship between them, *Bailey v. Schaaf,* 494 Mich. 595, 604, 835 N.W.2d 413 (2013), or some other special circumstance exists, *Krass v. Tri–County Security, Inc.,* 233 Mich.App. 661, 668, 593 N.W.2d 578 (1999), and the protected party is readily identifiable as foreseeably endangered, *Bailey,* 494 Mich. at 614, 835 N.W.2d 413; *Marcelletti v. Bathani,* 198 Mich.App. 655, 665, 500 N.W.2d 124 (1993).

In this case, the trial court and the parties analyze plaintiff's claims on the basis that a special relationship existed between defendants and A.S. that was similar to that between teacher and student, *Gaincott v. Davis,* 281 Mich. 515, 518, 275 N.W. 229 (1937) ("the relation of a teacher to a pupil is that of one *in loco parentis* ") or that between babysitter and child, *Babula,* 212 Mich.App. at 49, 536 N.W.2d 834. "A teacher owes a duty to exercise reasonable care over students in his or her charge." *Cook,* 94 Mich.App. at 98, 288 N.W.2d 609.

Case 1:25-cv-00442-JMB-SJB    ECF No. 17-5, PageID.184    Filed 07/09/25    Page 6 of 11

Smith v. Bronson Lifestyle Imp. and Research Center Co..., Not Reported in N.W. Rptr....

2015 WL 8932816

And, "a baby-sitter is under a common-law duty to exercise prudent and reasonable care to protect from injury a child for whom she is caring." 🚩 *Babula,* 212 Mich.App. at 49, 536 N.W.2d 834. Accepting that a duty of care arises out of the special relationship between defendants while acting *in loco parentis* with respect to campers, the duty would not extend to protecting campers form unforeseeable criminal conduct. 🚩 *Id.* at 51–52, 536 N.W.2d 834. Consequently, plaintiff's claims that defendants are liable for negligence in hiring, training and supervising Dueweke fail because there is no evidence that defendants knew or should have known Dueweke might commit CSC on a camper. A survey of pertinent cases decided by our Supreme Court and this Court confirms this conclusion.

**[3]**   We first note, however, that as she did in the trial court, plaintiff presents no argument that defendants were negligent in training Dueweke. Further, the undisputed evidence shows that defendants trained Dueweke to not have physical contact with campers, and Dueweke knew that his conduct was wrong without such training. It appears that plaintiff's argument regarding negligent training is that defendants' managers and supervisors should have been trained to recognize behaviors that might identify persons prone to commit CSC. But plaintiff's complaint did not assert this theory and plaintiff cites no legal authority requiring such training or removes child sexual abuse from the rule requiring foreseeability before a duty will arise to protect against criminal conduct. Therefore, plaintiff's claim of negligent training is abandoned.

See 🚩 *Houghton v. Keller,* 256 Mich.App. 336, 339–340, 662 N.W.2d 854 (2003) (cursory treatment of an issue with little or no citation of supporting authority constitutes abandonment of an issue).

**\*6**   Case law makes clear that foreseeability of the risk or danger is a requisite to the existence of a duty to protect an identifiable person or class of people from criminal conduct.

In 🚩 *Hersh v. Kentfield Builders, Inc.,* 385 Mich. 410, 189 N.W.2d 286 (1971), the plaintiff alleged that the defendant was negligent in hiring and retaining an employee who assaulted the plaintiff. The trial court allowed the case to go to the jury on the basis that there was evidence from which the jury could find that the defendant knew or should have known of the employee's propensities and criminal record. 🚩 *Id.* at 413–414, 189 N.W.2d 286. Specifically, there was evidence that "the employer defendant [learned] of a prior criminal record during the time of his employment." 🚩 *Id.* at

413, 189 N.W.2d 286. Our Supreme Court held that whether the defendant-employer knew or should have known of the employee's vicious propensities was a question of fact for the jury. *Id.* Thus, the issue decided in *Hersh* was whether the evidence was sufficient to satisfy the long-standing requirement for claims alleging an employer negligently hired or retained an employee: " ' 'An employer who knew or should have known of his employee's propensities and criminal record before commission of an intentional tort by employee upon customer who came to employer's place of business would be liable for damages to such customer.' " 🚩 *Id.* at 412, 189 N.W.2d 286, quoting 🚩 *Bradley v. Stevens,* 329 Mich. 556, 46 N.W.2d 382 (1951) (headnote 2). Thus, *Hersh* provides that in a claim of negligence in hiring and retaining an employee by a plaintiff injured by the employee's criminal conduct, the plaintiff must show that the defendant-employer knew or should have known that the employee-actor had committed prior similar acts *and* had the propensity to do so again.

The same standard applies with respect to claims against an employer alleging negligent supervision of an employee.

In 🚩 *Millross v. Plum Hollow Golf Club,* 429 Mich. 178, 181, 413 N.W.2d 17 (1987), the Court addressed whether the exclusive remedy of the dramshop act precluded such a claim. The Court held that the plaintiff's "negligence claim that arose out of the selling, giving, or furnishing of alcoholic liquor by a liquor licensee" was "preempted by the exclusive remedy of the dramshop act," and further held "that the plaintiff has failed to assert a valid cause of action on the basis of negligent supervision of an employee[.]" *Id.* The Court addressed the latter claim because "the dramshop act does not control or abrogate actions arising out of conduct of a tavern owner other than the selling, giving, or furnishing of intoxicants, provided that the alleged unlawful or negligent conduct is in breach of a duty recognized as a basis for a cause of action at the common law." 🚩 *Id.* at 192–193, 413 N.W.2d 17. The plaintiff alleged that the defendant's employee had worked a 13–hour shift and consumed alcoholic beverages before attempting to drive home. The employee killed the plaintiff's husband in an auto accident. The Court held that these facts did not establish a common-law duty "because it has not been alleged that the defendant *knew or should have known* of the existence of any *special circumstances* regarding [the employee] that could establish a duty of care to third persons." 🚩 *Id.* at 197–198, 413 N.W.2d 17 (emphasis added). The Court also opined that the plaintiff did not allege

facts to show a foreseeable risk such that an independent duty to supervise would arise. 📁 *Id.* at 198, 413 N.W.2d 17.

**\*7** Then, in 📁 *Brown,* 478 Mich. 545, 739 N.W.2d 313, the Court made plain that the same requirement of foreseeability that applies to claims of vicarious liability also applies to claims of direct negligence. In *Brown,* the defendant Michael Brown (Brown), raped the plaintiff Lisa Brown (no relation), who was a security guard employed by the firm hired by Brown's employer to provide security. "Brown had no prior criminal record, no history of violent behavior, and certainly no history indicating that he harbored a propensity to commit rape." 📁 *Id.* at 547, 739 N.W.2d 313. The plaintiff sought to hold Brown's employer (Samuel–Whittar Steel) liable on the ground that Brown "routinely made crude, sexually explicit comments to her when they interacted at defendant's facility." 📁 *Id.* at 549, 739 N.W.2d 313. The plaintiff had complained to Brown's employer about Brown's lewd comments at least three times before the rape. 📁 *Id.* at 549, 739 N.W.2d 313. Plaintiff sued Brown's employer on theories of both vicarious liability and direct negligence asserting "that because she had complained about Brown's lewd comments, defendant had notice of Brown's propensity to commit violent acts and therefore defendant was negligent in failing to take reasonable steps to prevent the rape." 📁 *Id.* at 550, 739 N.W.2d 313. The trial court granted the defendant's motion for summary disposition because "there was no genuine issue of material fact concerning whether defendant was liable for the unforeseen criminal acts of Brown." *Id.* This Court reversed, opining that Brown's "language and the circumstances were sufficient to create a jury question regarding whether Whittar knew or should have known of Michael Brown's violent propensities." 🚩 *Brown v. Brown,* 270 Mich.App. 689, 700, 716 N.W.2d 626 (2006). Our Supreme Court reversed and reinstated the trial court's order granting summary disposition because the defendant-employer "could not reasonably have anticipated that Brown's vulgarities would culminate in a rape." 📁 *Brown,* 478 Mich. at 566, 739 N.W.2d 313.

Our Supreme Court in *Brown* further opined that a duty to prevent the rape never arose on the part of Brown's employer because it had no notice of Brown's propensity to commit rape. 📁 *Id.* at 552–562, 739 N.W.2d 313. The Court explained that the employee's lewd and offensive comments were insufficient and that prior acts or comments that would

"convey an unmistakable, particularized threat of rape" were required to provide such notice. 📁 *Id.* at 547–548, 566, 739 N.W.2d 313. The *Brown* Court incorporated the reasoning of 📁 *MacDonald v. PKT, Inc.,* 464 Mich. 322, 628 N.W.2d 33 (2001), concerning the liability of a premises possessor to invitees for the criminal conduct of third parties, that foreseeability of a specific risk is necessary for a duty to arise. *Brown,* 478 Mich. 553–554. The Court quoted from *MacDonald* that " '[a] merchant can assume that patrons will obey the criminal law ... until a specific situation occurs on the premises that would cause a *reasonable person to recognize a risk of imminent harm to an identifiable invitee.*' " 📁 *Id.* at 554, 📁 628 N.W.2d 33 (emphasis added). "As in *MacDonald,* similar concerns of foreseeability and duty arise in the negligent retention context when we consider whether an employer may be held responsible for its employee's criminal acts." *Id.* Thus, "an employer can assume that its employees will obey our criminal laws" until circumstances occur that "clearly and unmistakably ... would have put *a reasonable employer on notice of an imminent risk of harm to a specific victim.*" 📁 *Id.* at 555, 📁 628 N.W.2d 33 (emphasis added). In sum, "if an employee has not done or said anything that would afford a reasonable employer notice of a propensity to rape or commit some other type of criminal conduct, there is no ... basis for the imposition of tort liability on an employer." 📁 *Id.* at 563, 📁 628 N.W.2d 33.

**\*8** In this case, there is no evidence that Dueweke had ever engaged in criminal conduct in the past and no circumstance —including female campers jumping and pulling on Dueweke's clothing—that "clearly and unmistakably ... would have put a reasonable employer on notice of an imminent risk of harm to a specific victim." 📁 *Id.* at 555, 📁 628 N.W.2d 33. Furthermore, the *Brown* Court held that liability of an employer could not be based on a determination that an occurrence was foreseeable because, in hindsight, the "the harm could have been avoided." 📁 *Id.* at 555– 556, 739 N.W.2d 313. Thus, the horseplay incidents and the opinion of plaintiff's expert that specialized training might have helped defendants recognize that such activity might be grooming activity does not create a duty on the part of defendants that would support plaintiff's direct negligence claims. Horseplay does not "convey an unmistakable, particularized threat of rape," 📁 *id.* at 548, 739 N.W.2d 313, such that a reasonable employer (not a child sex

abuse expert), would have "clearly and unmistakably" been put on notice of "an imminent risk of harm" to campers. *Id.* at 555, 739 N.W.2d 313. Because Dueweke's criminal act was not reasonably foreseeable, no duty arose on defendants' part to protect A.S. from Dueweke's criminal assault. *Id.* 552–555, 739 N.W.2d 313.

This Court reached a similar result in *Babula,* 212 Mich.App. 45, 536 N.W.2d 834, decided a decade before *Brown.* The facts of *Babula,* in which the husband of a babysitter sexually molested the nine-year-old who was entrusted to the babysitter's care, are analogous to the present case. The husband pleaded guilty to a charge of second-degree criminal sexual conduct and the child's mother brought a civil action against him and his wife, the babysitter. *Id.* at 47, 536 N.W.2d 834. The trial court granted the babysitter's motion for summary disposition because a duty to protect the child from her husband's criminal conduct did not arise because she had no reason to suspect that her husband would molest the child. This Court discussed various factors that may give rise to a duty of care, including whether the harm was foreseeable, and noted that some "jurisdictions have held that a baby-sitter is under a common-law duty to exercise prudent and reasonable care to protect from injury a child for whom she is caring." *Id.* at 49, 536 N.W.2d 834. The Court also noted that duty of care may be imposed "where a defendant voluntarily assumed a function that he was under no legal obligation to assume." *Id.* at 50, 536 N.W.2d 834. The Court reasoned that the babysitter had "voluntarily assumed control over the child's safety and, thus, had a duty to use reasonable care in ensuring that the child's well-being was not endangered." *Id.* at 51, 536 N.W.2d 834. But because her husband's criminal conduct was "wholly unforeseeable," the Court held that the babysitter's "general duty of care while baby-sitting did not extend to the specific harm done in the immediate case." *Id.* at 51–52, 536 N.W.2d 834. The Court also held that the fact that the husband was intoxicated was not sufficient to put his wife, the babysitter, on notice that he might molest the child. *Id.* at 53, 536 N.W.2d 834. Similarly, in this case, the prior horseplay did not put defendants on notice that Dueweke would later commit CSC. Consequently, defendants' general duty of care regarding campers did not extend to protecting them from the unforeseeable criminal conduct of Dueweke. *Id.* at 51–52, 536 N.W.2d 834.

**\*9** Plaintiff's allegations of agency rule violations do not alter the conclusion that defendants did not have a duty to protect campers from the unforeseeable criminal conduct of Dueweke. While a duty may arise from a statutory obligation, *Cipri v. Bellingham Frozen Foods, Inc.,* 235 Mich.App. 1, 15, 596 N.W.2d 620 (1999), plaintiff did not allege that defendants breach of a statutory duty resulted in her injuries. Rather, plaintiff pleaded common-law negligence in hiring, training, and supervising Dueweke. She alleges that the purported statutory and rule violations are evidence of negligence and the violations tend to show that Dueweke's criminal conduct was foreseeable. See *Beals v. Walker,* 416 Mich. 469, 481, 331 N.W.2d 700 (1982) ("Violations of administrative rules and regulations are evidence of negligence.") But establishing negligence on the basis of a statutory violation requires showing that "[1] the statute is intended to protect against the result of the violation; [2] the plaintiff is within the class intended to be protected by the statute; and [3] the evidence will support a finding that the violation was a proximate contributing cause of the occurrence." *Klanseck,* 426 Mich. at 87, 393 N.W.2d 356. Here, the rules plaintiff cites are not intended to protect against child sexual abuse. Moreover, assuming that the rules plaintiff cites apply, we conclude their violation is not relevant to showing that defendants knew or should have known that Dueweke was prone to commit child sexual abuse. So, the alleged rule violations do not establish a pertinent statutory duty or provide evidence of circumstances giving rise to a common-law duty. In short, the alleged statutory and rule violations do not render Dueweke's conduct foreseeable.

Moreover, assuming that defendants' children's day camp was a "child care organization" under 1973 PA 116, MCL 722.115(1), the pertinent statutory duty that would arise is found in the child protection law, 1975 PA 238. In *Phillips v. Deihm,* 213 Mich.App. 389, 397398, 541 N.W.2d 566 (1995), this Court held "that a person over eighteen years of age who is responsible for a child, as defined by MCL 722.622(i); MSA 25.248(2)(i), has a duty to act reasonably to prevent the sexual abuse of that child." The plaintiff in *Phillips* brought a civil action alleging his grandfather (Duwayne Deihm) sexually abused him over an eight-year period of time and also sued Duwayne's wife (Opal) alleging that she "was aware of, but failed to prevent, the sexual abuse." *Phillips,* 213 Mich.App. at 392, 541 N.W.2d 566. The Court noted that generally "there is no duty to protect

Smith v. Bronson Lifestyle Imp. and Research Center Co., Not Reported in N.W. Rptr....

2015 WL 8932816

against the criminal acts of a third person absent a special relationship between the defendant and the plaintiff or the defendant and the third person." *Id.,* at 397, 541 N.W.2d 566, citing *Babula,* 212 Mich.App. at 49, 536 N.W.2d 834. In this case, however, the Court ruled "Opal's alleged failure to act could constitute criminal neglect," under then MCL 722.622(d)(ii), and held that a duty of protection arose by statute because Opal met the definition of a person responsible for the child's health or welfare under then MCL 722.622(i). *Phillips,* 213 Mich.App. at 397–398, 541 N.W.2d 566.

*10 Although MCL 722.622 has been amended several times over the years, the essence of the provisions the *Phillips* Court applied to impose a duty of protection remain essentially same and the current version of the statute, in pertinent part, provides:

As used in this act: ...

(g) "Child care organization" means that term as defined in section 1 of 1973 PA 116, MCL 722. 111.

* * *

(j) "Child neglect" means harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:

* * *

(*ii* ) Placing a child at an unreasonable risk to the child's health or welfare *by failure of* the parent, legal guardian, or other person responsible for the child's health or welfare *to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk.*

* * *

(u) "Person responsible for the child's health or welfare" means a parent, legal guardian, person 18 years of age or older who resides for any length of time in the same home in which the child resides, or, except when used in section 7(2)(e) or 8(8), nonparent adult; or an owner, operator, volunteer, or employee of 1 or more of the following:

(*i* ) A licensed or registered child care organization....

[ MCL 722.622 (Emphasis added).]

Consequently, the pertinent statutory duty with respect to a "child care organization" that is required to be licensed or registered under 1973 PA 116 is very similar to the common-law duty of care when acting *in loco parentis.* The common law duty does not extend to protection against unforeseeable risk of criminal conduct, even when one is acting *in loco parentis. Brown,* 478 Mich. 552–559; *Babula,* 212 Mich.App. at 49, 51–52, 536 N.W.2d 834. The statutory duty to prevent child abuse on the part of a child care organization or its employees does not arise unless the child care organization or its employee "has, or should have, knowledge of the risk" and has the ability to intervene to eliminate the risk. MCL 722.622(j)(*ii* ). A common-law duty did not arise in this case because Dueweke's criminal conduct was unforeseeable. See *Brown,* 478 Mich. 552–559; *Babula,* 212 Mich.App. at 49, 51–52, 536 N.W.2d 834. For the same reason, no duty arose under MCL 722.622(j)(*ii* ) because nothing showed that defendants knew, or should have known, of the risk.

Next, plaintiff argues that her claim should survive summary disposition because Bronson's Executive Director, Michael Rowe, expressed regret and agreed that Dueweke should not have been left alone with the campers and that defendants should have been licensed. This argument fails because Rowe's comments do not render Dueweke's conduct foreseeable. And, our Supreme Court has rejected allowing "a jury to impose liability on an employer if, in retrospect, somehow the harm was avoidable." *Brown,* 478 Mich. 555–556. The Court would "not transform the test of foreseeability into an 'avoidability' test that would merely judge in hindsight whether the harm could have been avoided." *Id.* at 556; see also *Hamed,* 490 Mich. at 14, 803 N.W.2d 237. Simply stated, Rowe's comments are not evidence that defendants knew or should have known of prior similar conduct by Dueweke or that Dueweke harbored a propensity to engage in such conduct. *Brown,* 478 Mich. at 547–548, 557, 563, 739 N.W.2d 313.

*11 [4] Finally, plaintiff cites no authority and presents no persuasive argument in support of her argument that liability may be imposed on employers of minors who commit criminal conduct without regard to whether the

Case 1:25-cv-00442-JMB-SJB ECF No. 17-5, PageID.188 Filed 07/09/25 Page 10 of 11

Smith v. Bronson Lifestyle Imp. and Research Center Co..., Not Reported in N.W. Rptr....

2015 WL 8932816

conduct is foreseeable. This argument is therefore abandoned.

*Houghton,* 256 Mich.App. at 339–340, 662 N.W.2d 854 (cursory treatment of an issue with little or no citation to authority constitutes abandonment of an issue).

In sum, the trial court properly granted defendants summary disposition regarding plaintiff's claims they were vicariously liable for Dueweke's intentional torts because there is no evidence that would permit a reasonable jury to find that defendants knew, or that a reasonable employer should have known, that (1) Dueweke had committed similar misconduct in the past, and (2) Dueweke had the propensity to commit criminal sexual conduct in the future. Furthermore, because Dueweke's criminal conduct was not foreseeable, a duty of care did not arise on the part of defendants to protect campers from Dueweke's unforeseeable criminal actions. Consequently, plaintiff's claims of direct negligence fail.

We affirm and remand for further proceedings. We do not retain jurisdiction. As the prevailing parties, defendants may tax costs pursuant to MCR 7.219.

STEPHENS, J. (concurring).

I agree with the majority conclusion to affirm and its analysis that defendants cannot be held vicariously liable for Dueweke's intentional torts when Dueweke's criminal conduct was not foreseeable, as defined in *Hamed v. Wayne Co.,* 490 Mich. 1, 12, 803 N.W.2d 237 (2011). I write separately because I believe that the Bronson Athletic Club (BAC) summer kids' camp program fell within the purview of the Child Care Organizations Act, MCL 722.111 *et seq.,* as a child caring institution.

Under MCL 722.111(b),

> "Child caring institution" means a child care facility that is organized for the purpose of receiving minor children for care, maintenance, and supervision, usually on a 24–hour basis, in buildings maintained by the child caring institution for that purpose, and operates throughout the year. An educational program may be provided, but the educational program shall not be the primary purpose of

the facility. Child caring institution includes a maternity home for the care of unmarried mothers who are minors and an agency group home, that is described as a small child caring institution, owned, leased, or rented by a licensed agency providing care for more than 4 but less than 13 minor children. Child caring institution also includes institutions for developmentally disabled or emotionally disturbed minor children. Child caring institution does not include a hospital, nursing home, or home for the aged licensed under article 17 of the public health code, 1978 PA 368, MCL 333.20101 to 333.22260, a boarding school licensed under section 1335 of the revised school code, 1976 PA 451, MCL 380.1335, a hospital or facility operated by the state or licensed under the mental health code, 1974 PA 258, MCL 330.1001 to 330.2106, or an adult foster care family home or an adult foster care small group home licensed under the adult foster care facility licensing act, 1979 PA 218, MCL 400.701 to 400.737, in which a child has been placed under section 5(6).

**\*12** The BAC program, while not a 24–hour operation, serves the purpose and operates in the manner described in the statute. The BAC's program was advertised as a five-day summer program for children aged 6–12. It operated from 9 a.m. to 3 p.m. with before and after care options. The program also operated during the school year for days when school was not in session. The program was open to both BAC members and to the general public. Parents who availed themselves of the program were not required to be onsite when their children were in the program.

Despite the guise of its program name as a "camp," the evidence indicates that the BAC operated an all-year round

childcare institution and as such, was subject to licensing rules and regulations appurtenant to childcare institutions.

It is for these reasons that I respectfully concur.

**All Citations**

Not Reported in N.W. Rptr., 2015 WL 8932816

---

### Footnotes

1    Plaintiff's claims against Dueweke via defendant Sherry Gesmundo, his mother and next friend, remain unaffected by these orders. Consequently, reference to defendants in this opinion means only the corporate defendants.

2    MedSport managed the BAC under contract with Bronson and employed Dueweke as a camp counselor. But for purposes of this appeal both Bronson and MedSport do not dispute that they were Dueweke's employer and present a unified position regarding plaintiff's claims.

3    From the excerpts of Dueweke's deposition that plaintiff cites, it appears that two Medsport employees (Lindsey Ralya, program director, and Valentine Tinker, head counselor) counseled Dueweke to not allow female campers to have physical contact with him but that this counseling was for the same incident. Dueweke testified that a similar instance with the same three campers had occurred the day before the incident for which he was counseled. Dueweke further testified that after being counseled, the same three girls attempted on at least one occasion to engage in horseplay with him, but that he discouraged their behavior by telling them "no" and "when they tried to grab up on me, I took their hands off me." None of these three campers were present at the after-camp session when the CSC incident occurred.

4    Our use of the term "horseplay" in this opinion refers to camper-initiated physical contact and is how the trial court consistently referenced the conduct. For consistency, we use this term in this opinion.

5    MCL 722.111(1)(a) defines a "child care organization" as "a governmental or nongovernmental organization *having as its principal function receiving minor children for care,* maintenance, training, and supervision, notwithstanding that educational instruction may be given." (Emphasis added). It is unclear whether defendants had as their "principal function receiving minor children for care." See e.g., *Barry Co. Probate Court v. Dep't of Social Services,* 114 Mich.App. 312, 318, 319 N.W.2d 571 (1982): "[T]he probate court is not a 'child care organization' ... [because] the probate court's principal function is not the receiving of minor children."

6    These rules have been rescinded effective January 2, 2014. See 2013 MR 13 (08/01/2013).

7    A "day camp" is a "camp," Mich. Admin Code, R 400.11101(1)(e), as defined by 1973 PA 116, MCL 722. 111. See n. 4, *supra.* A "children's camp" is defined as "a residential, day, troop, or travel camp that provides care and supervision and is conducted *in a natural environment* for more than 4 children, apart from the children's parents, relatives, or legal guardians, for 5 or more days in a 14–day period." MCL 722.111(d) (emphasis added). State investigator Carol Mullen noted "that the summer camp at Bronson Athletic Camp does not meet the definition of 'camp' under this statute. The definition of 'camp' in the State of Michigan requires that the camp be primarily an outdoor facility."

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.