# EXHIBIT A

U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JERMICHAEL BROWN, JR. | )Case No.: 1:25-cv-442 |
| | )HON. JANE M. BECKERING |
| Plaintiff, | ) |
| | ) |
| v | ) |
| | ) |
| MUSKEGON RIVER YOUTH HOME, | ) |
| LLC; MUSKEGON RIVER YOUTH | ) |
| HOME, INC.; MUSKEGON RIVER | ) |
| YOUTH HOME REAL ESTATE, LLC, | ) |
| d/b/a K & K LAND LLC; MUSKEGON | ) |
| RIVER PATHWAY OF HOPE LLC, | ) |
| formerly d/b/a YOUTH OPPORTUNITY | ) |
| CONTER FOR SUCCESS AND | ) |
| INDEPENDENCE; MECOSTA-OSCEOLA | ) |
| INTERMEDIATE SCHOOL DISTRICT; | ) |
| MECOSTA-OSCEOLA INTERMEDIATE | ) |
| SCHOOL DISTRICT BOARD OF | ) |
| EDUCATION; and JOHN/JANE DOES | ) |
| 1 – 10, in their official, professional, | ) |
| personal, and individual capacities, jointly | ) |
| and severally; | ) |
| | ) |
| Defendants. | ) |
| | ) |

| | |
|---|---|
| ELIZABETH K. ABDNOUR (P78203) | DAVID WESLEY CORNISH, ESQ. |
| Attorney for Plaintiff | Attorney for Plaintiff |
| 325 e. Grand River Ave., Ste. 250 | 230 South Broad St., 17th Floor |
| East Lansing, MI  48823 | Philadelphia, PA  19102 |
| (517) 994-1776 | (888) 313-1385 |
| liz@education-rights.com | dwesley24@gmail.com |
| | *Admission application to be filed |

GREGORY W. MAIR (P67465)
KAILEN C. PIPER (P82865)
Attorneys for Defendants Mecosta-Osceola
Intermediate School District and
Mecosta-Osceola Intermediate School
District Board of Education
300 St. Andrews Road, Suite 302
Saginaw, MI 48638
(989) 790-0960
gmair@owdpc.com
kpiper@owdpc.com
dmcclure@owdpc.com

JOHN GILLOOLY (P41948)
Attorney for Defendant Muskegon
River Youth Home, LLC, Muskegon
River Youth Home, Inc., Muskegon
River Youth Home Real Estate, LLC
Muskegon River Pathway of Hope, LLC
1155 Brewery Park Blvd., Suite 200
Detroit, MI 48207-2641
(313) 446-5501 / Fax: (313) 259-0450
jgillooly@garanlucow.com

## DEFENDANTS MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT AND MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT BOARD OF EDUCATION'S MOTION TO DISMISS PURSUANT TO FED R. CIV. P. 12(b)(6)

### **ORAL ARGUMENT REQUESTED**

NOW COME the above-named Defendants, MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT and MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT BOARD OF EDUCATION (collectively "MOISD"), by and through their attorneys, GREGORY W. MAIR and KAILEN C. PIPER, and for their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), state as follows:

1. That Plaintiff's Complaint alleges that he was subjected to unwelcomed illegal and sexual contact / conduct and physical abuse by employees of Co-Defendants, Muskegon River Youth Home, LLC, Muskegon River Youth Home,

Inc., Muskegon River Youth Home Real Estate, LLC, d/b/a K &K Land LLC's (collectively, "MRYH") in 2019.

2.      That Plaintiff filed his Complaint on April 21, 2025, alleging: (1) violations of Title IX 20 U.S.C. § 1681 *et seq.* against the MOISD (Counts I and II); (2) violations of Title 42 (42 U.S.C. § 1983 *et seq*) against the MOISD (Counts III and IV); (3) Negligence and Recklessness against the MOISD (Count V); (4) Negligent Retention against the MOISD (Count VI); (5) Negligent Supervision against the MOISD (Count VII); (6) Gross Negligence against the MOISD (Count VIII); and (7) violations of the Elliot-Larsen Civil Rights Act MCL § 37.2201, *et seq*. against the MOISD (Count XIII). (ECF No. 1, Page ID. 12-30, 35-36).

3.      That Plaintiff's federal and state law claims are barred by the applicable statute of limitations.

4.      That Plaintiff does not allege, and he cannot prove, that the MOISD was a party to or perpetrated the underlying unwelcomed illegal sexual contact / conduct or physical abuse which forms the subject of this dispute.

5.      That Plaintiff cannot prove that the statute of limitations should be tolled based upon Michigan's minor tolling provision as he failed to file his claims prior to his nineteenth (19th) birthday.

6.      That Plaintiff cannot prove that the statute of limitations should be tolled based upon MCL §§ 600.5851b and 600.5805.

7.    That MOISD and its staff are entitled to governmental immunity.

8.    That Plaintiff cannot prove that MOISD owed him a duty of protection from MRYH's employees' abuse.

9.    That the Instant Motion is further supported by the accompanying Brief in Support which is hereby incorporated in its entirety by reference.

WHEREFORE, Defendants, MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT and MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT BOARD OF EDUCATION, respectfully request that this Honorable Court Grant their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismiss Plaintiff's Complaint as to them in its entirety and with prejudice.

Respectfully Submitted,


Dated: July 9, 2025                    /s/ Gregory W. Mair
                                       GREGORY W. MAIR (P67465)
                                       Attorney for Defendants Mecosta-Osceola
                                       Intermediate School District and Mecosta-
                                       Osceola Intermediate School District Board
                                       of Education
                                       300 St. Andrews Road, Suite 302
                                       Saginaw, Michigan 48638
                                       (989) 790-0960
                                       gregmair@owdpc.com
                                       kpiper@owdpc.com

U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JERMICHAEL BROWN, JR. | )Case No.: 1:25-cv-442<br>)HON. JANE M. BECKERING |
| Plaintiff, | )<br>)<br>) |
| v | )<br>) |
| MUSKEGON RIVER YOUTH HOME,<br>LLC; MUSKEGON RIVER YOUTH<br>HOME, INC.; MUSKEGON RIVER<br>YOUTH HOME REAL ESTATE, LLC,<br>d/b/a K & K LAND LLC; MUSKEGON<br>RIVER PATHWAY OF HOPE LLC,<br>formerly d/b/a YOUTH OPPORTUNITY<br>CONTER FOR SUCCESS AND<br>INDEPENDENCE; MECOSTA-OSCEOLA<br>INTERMEDIATE SCHOOL DISTRICT;<br>MECOSTA-OSCEOLA INTERMEDIATE<br>SCHOOL DISTRICT BOARD OF<br>EDUCATION; and JOHN/JANE DOES<br>1 – 10, in their official, professional,<br>personal, and individual capacities, jointly<br>and severally; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

ELIZABETH K. ABDNOUR (P78203)
Attorney for Plaintiff
325 e. Grand River Ave., Ste. 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com

DAVID WESLEY CORNISH, ESQ.
Attorney for Plaintiff
230 South Broad St., 17th Floor
Philadelphia, PA 19102
(888) 313-1385
dwesley24@gmail.com
*Admission application to be filed

GREGORY W. MAIR (P67465)
KAILEN C. PIPER (P82865)
Attorneys for Defendants Mecosta-Osceola
Intermediate School District and
Mecosta-Osceola Intermediate School
District Board of Education
300 St. Andrews Road, Suite 302
Saginaw, MI  48638
(989) 790-0960
gmair@owdpc.com
kpiper@owdpc.com
dmcclure@owdpc.com

JOHN GILLOOLY (P41948)
Attorney for Defendant Muskegon
River Youth Home, LLC, Muskegon
River Youth Home, Inc., Muskegon
River Youth Home Real Estate, LLC
Muskegon River Pathway of Hope, LLC
1155 Brewery Park Blvd., Suite 200
Detroit, MI  48207-2641
(313) 446-5501 / Fax: (313) 259-0450
jgillooly@garanlucow.com

---

## BRIEF IN SUPPORT OF DEFENDANTS MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT AND MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT BOARD OF EDUCATION'S MOTION TO DISMISS PURSUANT TO FED R. CIV. P. 12(b)(6)

### **ORAL ARGUMENT REQUESTED**

PREPARED BY:
GREGORY W. MAIR (P67465)
Attorney for Defendants Mecosta-Osceola
Intermediate School District and
Mecosta-Osceola Intermediate School
District Board of Education
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
989/790-0960
gmair@owdpc.com

# TABLE OF CONTENTS

**PAGE**

Index of Authorities ……………………….………………………...….………..….iv

Questions Presented ……………….……..…….….…..….…..……….….……vii

Statement of Controlling or Most Appropriate Authority for the
Relief Requested…………..……………………….…..……………………viii

Introduction ……………………………………….………...………..…….…..1

Statement of Facts………………………………………...…...….……..2

Standard of Review…….……….…..……………………………...….……..4

Law and Argument…….….……………….……………...…...……….…..…..5

    I.      PLAINTIFF'S FEDERAL AND STATE CLAIMS OF
           INAPPROPRIATE CONDUCT ARE TIME-BARRED BY THE
           APPLICABLE STATUTE OF LIMITATIONS………………………6

    II.     PLAINTIFF'S FEDERAL AND STATE LAW CLAIMS FAIL
           AS THE MOISD IS ENTITLED TO GOVERNMENTAL
           IMMUNITY AND IT DOES NOT OWE PLAINTIFF A DUTY……13

Conclusion…………..…………………….………….…….……......……….…..……..20

# INDEX OF AUTHORITIES

## CASES

*Altman v. Meridian Twp.*
  439 Mich. 623 (1992)…………………………………………………………12
*Anderson v. Bd. Of Educ. of Fayette Cty.*
  616 F.Supp.2d 662, 668 (E.D. Ky. 2009)……………………………….…………6
*Britt v. Smith*
   9 Fed. Appx. 409, 411 (6th Cir. 2001) …………………….…………….………8
*Burnett v. Bruner*
  247 Mich. App. 365, 368 (2001)……………….……...........…………………17, 18
*Cook v. Bennett*
  94 Mich. App. 93, 100 (1979)……………………………………..x, 14, 18
*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*
  648 F.3d 365, 369 (6th Cir. 2011)………………………………..…….………4
*Dibenedetto v. West Shore Hosp.*
  461 Mich. 394, 402 (2002)……………………………………………………12
*Dixon v. Anderson*
  928 F.2d 212, 215 (6th Cir. 1991)……………………….………………………..…6
*Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*
  264 Mich. App. 632, 639 (2004)………………………………..………...…ix, 9
*Forrester v. Clarenceville School District*
  Dkt. No. 20-12727 at pgs. 2-3, (E.D. Mich. June 3, 2021)……….……viii, 7
*Gladych v. New Family Homes, Inc.*
  468 Mich. 594, 597 (2003)……………………………………………………12
*Graves v. Warner Bros.*
  253 Mich. App. 486, 494 (2002)………………………………….…………..18
*Hill v. Sears, Roebuck & Co.*
  492 Mich. 651, 660 (2012)………………………………….…………..17
*In re Doe v. University of Detroit Jesuit High School and Academy, et. al.*
  Dkt. No. 264679 at pg. 2, (Mich. Ct. App. Feb. 28, 2006)……….……xi, 18
*Jackson v. City of Detroit*
  449 Mich. 420, 433 (1995)……………………………………………x, 15
*JiQiang Xu v. Michigan State Univ.*
  Dkt. No. 05-1372 at pg. 3, (6th Cir.  Aug. 24, 2006)…….……………ix, 6
*Kreipke v. Wayne State Univ.*
  807 F.3d 768, 744 (6th Cir. 2015)………………………………..……5
*Mack v. City of Detroit*
  467 Mich. 186, 203 (2002)……………………………………………14

*Mais v. Allianz Life Ins. Co. of N. Am.*
    34 F. Supp. 3d 754, 765 (W.D. Mich. 2014…………………………………..17
*Maskery v. Univ. of Michigan Bd. Of Regents*
    468 Mich. 609, 614 (2003)………………….……….……..……..13, 14
*Monell v. Dep't of Social services or New York City*
    436 U.S. 658, 694 (1978)………………….…….…..…………x, 15
*Murphy v. Michigan Bell Telephone Co.*
    447 Mich. 93, 98 (1994)……………………………………………12
*Overall v. Oakland County*
    670 F.Supp. 3d 437, 447 (2023)………………………………….xi, 15, 16
*People v. Regts*
    219 Mich. App. 294, 297 (1996)……………….……….……...…………11
*Perreault v. Hostetler*
    884 F.2d 267, 270 (6th Cir. 1989)……………………….…..……….8
*Sevier v. Turner*
    742 F.2d 262, 273 (6th Cir. 1984)……………………………..………6
*Smith v. Bronson Lifestyle Imp. & Rsch. Ctr. Co.*
    Dkt. No. 321813 at pg. 5, 8 (Mich. Ct. App. Dec. 15, 2015)……...…….xi, 18
*Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*
    821 F.3d 780, 786 (6th Cir. 2016)………………………….…………viii, 4, 5
*Stringwell v. Ann Arbor Pub. Sch. Dist.*
    262 Mich. App. 709, 712 (2004)…………………………...…………13
*Tarlea v. Carbtree*
    263 Mich. App. 80, 92 (2004)…………………………………………17
*Turner v. Auto Club Ins. Ass'n*
    448 Mich. 22, 27 (1995)………………………………………………12
*Vance v. Henry Ford Health Sys.*
    272 Mich. App. 426, 432 (2006)…………………………………….9
*Williams v. Cunningham Drug Stores, Inc.*
    429 Mich. 495, 499 (1988)……………………………………………18

## COURT RULES AND STATUTES

20 U.S.C. § 1681………………………………...……………viii, 1, 5, 7

42 U.S.C. § 1983……………………….…………..viii, x, xi, 1, 2, 5, 7, 15

MCL § 37.2201……………………...…………………ix, 1, 2, 5

MCL § 600.5805………………………………………ix, x, 10, 11, 13

MCL § 600.5851……………………………………………...…ix, x, 8, 9, 10, 11, 13

MCL 691.1407……………………………………………………………………16

MCL § 750.520………………………………………………...………11, 13

FRCP 12(b)(6)........................................................................viii, 4, 5, 7, 20

## QUESTIONS PRESENTED

I.   Whether this Honorable Court should dismiss Plaintiff's claims because they are barred by the applicable statute of limitations?

       Defendants would answer, "Yes."
       This Honorable Court should answer "Yes."

II.  Whether this Honorable Court should dismiss Plaintiff's claims because Plaintiff cannot prove that the applicable statute of limitations should be tolled?

       Defendants would answer, "Yes."
       This Honorable Court should answer, "Yes."

III. Whether this Honorable Court should dismiss Plaintiff's Negligence claims because Plaintiff was not owed a duty of protection?

       Defendants would answer, "Yes."
       This Honorable Court should answer, "Yes."

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF REQUESTED

The Federal Rule of Civil Procedure 12(b)(6) allows a claim to be dismissed when the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). If a claim is time-barred, it is appropriate for the court to dismiss the claim under Fed. R. Civ. Pro. 12(b)(6). *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 786 (6th Cir. 2016) (internal citations, quotations and brackets omitted).

Plaintiff alleges violations of Title IX, 20 U.S.C. § 1681 *et seq.* (Counts I and II) and violations of Title 42 (42 U.S.C. § 1983 *et seq*) (Counts III and IV) against the Mecosta-Osceola Intermediate School District and Mecosta-Osceola Intermediate School District Board of Education (collectively, the "MOISD"). Consistent with the previous opinions of the U.S. District Court for the Eastern District of Michigan, Plaintiff's claims arising under federal law are subject to a three (3) year statute of limitations that accrues at the time of the alleged inappropriate conduct / abuse and Michigan's Criminal Sexual Conduct Statutes do not apply to the federal law claims pled. *Forrester v. Clarenceville School District*, Dkt. No. 20-12727 at pgs. 2-3, (E.D. Mich. June 3, 2021) (Exhibit 3). Therefore, all of Plaintiff's federal law claims are time-barred and thus relief cannot be granted and this Honorable Court should decline to exercise supplemental jurisdiction.

In Michigan, a plaintiff may bring a cause of action for personal injury within three (3) years of the injury.  MCL § 37.2201.  The three (3) year limitations period begins when the "plaintiff knows or has reason to know of the injury."  *JiQiang Xu v. Michigan State Univ.*, Dkt. No. 05-1372 at pg. 3, (6th Cir.  Aug. 24, 2006) (Exhibit 2).  The alleged injury in this case occurred in 2019, however, Plaintiff did not file his claim until 2025, three (3) years beyond the statute of limitations.  Therefore, Plaintiff's claims are time-barred, and relief cannot be granted.

In some instances, minors may have the statute of limitations tolled if they were under the age of eighteen (18) years old when the claims accrued and they file their claims when they turn nineteen (19).  MCL § 600.5851(1); *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich. App. 632, 639 (2004).  Herein, the minor tolling provision does not save Plaintiff's claim because he did not bring these claims when he was nineteen (19) in 2023.  Plaintiff did not file his Complaint until he was twenty (20) years old. (Jermichael Brown MDOC—Exhibit 1).

Likewise, MCL § 600.5805(6) also extends the period of limitations to ten (10) years for an action to recover damages sustained because of criminal sexual conduct.  *Id.*  MCL § 600.5805(6) defines criminal sexual conduct as the actions or inactions of an alleged perpetrator / actor in performing an illegal sexual act.  Herein, Plaintiff is not alleging that MOISD was the alleged perpetrator or actor that

performed the alleged illegal sexual act.   Rather, the allegations against MOISD include failure to report child abuse, provide treatment, supervision, and rehabilitation in accordance with the law.  (ECF No. 1, PageID. 12-30, 35-36).  Therefore, MCL § 600.5805(6) does not toll the statute of limitations.

Further, MCL § 600.5851b(3) provides that a minor victim of "criminal sexual conduct" between December 31, 1996 and June 18, 2016 may commence an action to recover damages for "criminal sexual conduct" by September 16, 2018 if the person alleged to have committed the "criminal sexual conduct" is convicted of same and was the victim's physician or offered the victim medical treatment.  However, this statute does not extend Plaintiff's claims in this case because the MOISD was not convicted of criminal sexual conduct, it was not Plaintiff's physician, and it did not offer Plaintiff medical treatment.  Additionally, Plaintiff's claims accrued and were brought after 2018.

Under Michigan law, governmental agencies are immune from tort liability when they are engaged in the exercise of a governmental function.  Michigan has not held that governmental immunity is inapplicable to school districts.  *Cook v. Bennett*, 94 Mich. App. 93, 100 (1979).  Importantly, "a governmental entity cannot be found liable under § 1983 on respondent superior theory."  *Jackson v. City of Detroit*, 449 Mich. 420, 433 (1995) (citing *Monell v. Dep't of Social Services or New York City*, 436 U.S. 658, 694 (1978).   In the instant case, the MOISD is a

x

governmental agency and is entitled immunity against Plaintiff's claims.  Further, Plaintiff's claims under § 1983 (Count III and IV) are based on respondent superior. Additionally, for the MOISD employees to be liable, Plaintiff must prove that the defendant's gross negligence was "'the proximate cause [,]' [which]... means the one most immediate, efficient, and direct cause preceding an injury, not 'a proximate cause.'"  *Overall v. Oakland County*, 670 F. Supp. 3d 437, 447  (2023).  Here, the MOISD's employees are entitled to governmental immunity as their conduct was not grossly negligent as their actions were not "the" proximate cause of Plaintiff's injuries.

Similarly, Michigan law has long recognized that a defendant does not owe the plaintiff a duty to protect them from criminal conduct from a third party unless a special relationship exists between the defendant and the plaintiff. *Smith v. Bronson Lifestyle Imp.& Rsch. Ctr. Co.,* Dkt. No. 321813 at pg. 5, 8, (Mich. Ct. App. Dec. 15, 2015) (Exhibit 4) (citations omitted).  A special relationship exists between a school agent and a student; the school agent is responsible for the oversight of the student's activity and is "present to observe and control." *In re Doe,* Dkt. No. 264679 at pg. 2, (Mich. Ct. App. Feb. 28, 2006) (Exhibit 5) (citations omitted).  Here, MOISD did not owe Plaintiff a duty to protect him from harm caused by MRYH's employees because Plaintiff does not allege that Plaintiff was entrusted to MOISD at the time of the alleged abuse.  Further, the Complaint does not allege that MOISD was in

control of Plaintiff during the alleged abuse, therefore, a special relationship did not exist between Plaintiff and the MOISD.

For the reasons set forth in more detail herein, MOISD respectfully requests that this Honorable Court Grant their Motion to Dismiss pursuant to FRCP 12(b)(6) and dismiss Plaintiff's Complaint as to them, in its entirety, and with prejudice.

## **INTRODUCTION**

Jermichael Brown Jr.'s ("Plaintiff's") Complaint alleges that he was court-ordered to live at Co-Defendants, Muskegon River Youth Home, LLC, Muskegon River Youth Home, Inc., Muskegon River Youth Home Real Estate, LLC, d/b/a K &K Land LLC's (collectively, "MRYH") facility.  During his stay, he claims he was subjected to unwelcomed illegal sexual contact / conduct and physical abuse by MRYH's employees in 2019.  (*See Plf.'s Complaint,* ECF No. 1, PageID. 7, ¶ 35, 38a).   Mecosta-Osceola Intermediate School District and Mecosta-Osceola Intermediate School District Board of Education (collectively, the "MOISD") provided educational services at MRYH's facility.  (ECF No. 1, PageID. 7, ¶ 34).

Plaintiff filed his Complaint on April 21, 2025.  As to the MOISD, Plaintiff's Complaint alleges:

1. Violations of Title IX 20 U.S.C. § 1681 *et seq.*  (Counts I and II).
2. Violations of Title 42 (42 U.S.C. § 1983 *et seq*) (Counts III and IV).
3. Negligence and Recklessness (Count V).
4. Negligent Retention (Count VI).
5. Negligent Supervision (Count VII).
6. Gross Negligence (Count VIII).
7. Violations of the Elliot-Larsen Civil Rights Act MCL § 37.2201, *et seq.* (Count XIII).

(ECF No. 1, Page ID. 12-30, 35-36).

Additionally, Plaintiff's Complaint alleges:

1. Violations of Title IX 20 U.S.C. § 1681 *et seq.* against MRYH.  (Counts I and II).

1

2. Violations of Title 42 U.S.C. § 1983 against MRYH and John/Jane Doe 1-10. (Counts III and IV).
3. Negligence and Recklessness against MRYH and John/Jane Doe 1-10. (Count V).
4. Negligent Retention against MRYH and John/Jane Doe 1-10. (Count VI).
5. Negligent Supervision against MRYH and John/Jane Doe 1-10. (Count VII).
6. Gross Negligence against MRYH and John/Jane Doe 1-10. (Count VIII).
7. Vicarious Liability against MRYH. (Count IX).
8. Negligent Infliction of Emotional Distress against MRYH. (Count X).
9. Intentional Infliction of Emotional Distress against MRYH. (Count XI).
10. Breach of Fiduciary Duty against MRYH. (Count XII).
11. Violations of the Elliot-Larsen Civil Rights Act MCL § 37.2201, *et seq.* against MRYH and John/Jane Doe 1-10. (Count XIII).

(ECF No. 1, Page ID. 12-36).

However, Plaintiff's federal and state law claims against the MOISD are barred by the applicable statute of limitations. Further, Plaintiff's federal and state law claims should be dismissed because the MOISD is entitled to governmental immunity, and it did not owe Plaintiff a duty of protection against MRYH's employees. Therefore, the claims within Plaintiff's Complaint against MOISD must be dismissed in their entirety and with prejudice.

## **STATEMENT OF FACTS**

Plaintiff turned twenty-one (21) years old on April 22, 2025, one day prior to filing his Complaint. (Jermichael Brown MDOC—Exhibit 1). His Complaint notes that he was a minor at the time that the alleged causes of action accrued in this matter. (ECF No. 1, PageID. 7, ¶ 38a). The Complaint states that he was approximately

2

fifteen (15) when he was court-ordered to live at MRYH's facility in 2019, when the alleged abusive events took place.  (ECF No. 1, PageID. 7, ¶ 35, 38a).

Specifically, while at the facility, Plaintiff alleges that he was abused by MRYH's employees.  (ECF No. 1, PageID. 8, ¶ 38b-38h).  This includes MRYH employee, Ms. Nicole, who allegedly engaged in inappropriate sexual behaviors with Plaintiff.  (ECF No. 1, PageID. 8, ¶ 38f-h).  Further, the Complaint alleges physical abuse by MRYH employees Dewey, Beard, and Cast.  (ECF No. 1, PageID. 8, ¶ 38b-e).

Accepting all of the factual allegations of the Plaintiff's Complaint as true[1], as the MOISD must for the purpose of this Motion, the last alleged inappropriate conduct attributed to MRYH took place in 2019, six (6) years prior to the filing of Plaintiff's Complaint in this matter on April 21, 2025.  (ECF No. 1, PageID. 7, ¶ 38a).  Additionally, given that Plaintiff was fifteen (15) in 2019, he would have reached the age of majority, eighteen (18), by 2022.  (Exhibit 1).

With respect to the MOISD, Plaintiff alleges that it, through its staff, are mandated reporters pursuant to MCL 722.623 and required to report any suspected child abuse.  (ECF No. 1, PageID. 9, ¶ 42).  Additionally, Plaintiff alleges that the

---

[1] Only accepting for purposes of this Motion and reserve the right to dispute the allegations pertaining to liability and/or damages should this Motion not prevail in full.

MOISD had a duty to provide treatment, supervision, and rehabilitation in accordance with the law and failed to do so. (ECF No. 1, PageID. 12, ¶ 57).

However, Plaintiff does not allege specifically how or when the MOISD or its staff suspected or knew of any abuse nor when it failed to take any remedial steps. The Complaint does not allege that the MOISD participated in the alleged inappropriate conduct or physical abuse. Rather, Plaintiff alleges only that MOISD provided educational services for MRYH.  (ECF No. 1, PageID. 7, ¶ 34). Importantly, Plaintiff does not allege that the MOISD employed, controlled or supervised Ms. Nicole, Dewey, Beard, or Cast.  Notably, there are no allegations that the MOISD even knew Ms. Nicole, Dewey, Beard, or Cast or had any control over their employment.

## STANDARD OF REVIEW

In reviewing a motion to dismiss brought pursuant to Fed. R. Civ. Pro. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 785-86 (6th Cir. 2016) (internal citations, quotations and brackets omitted).  However, a court need not accept any legal conclusions when considering a motion to dismiss.  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).  To survive a motion to dismiss under Rule 12(b)(6), "[t]he complaint must contain either direct or

4

inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 744 (6th Cir. 2015) (citation omitted). "[W]hen the allegations in the complaint affirmatively show that the claim is time-barred. . . dismissing the claim under Rule 12(b)(6) is appropriate." *Stein*, 821 F.3d at 786 (citations omitted).

## LAW AND ARGUMENT

Plaintiff's Complaint alleges nine (9) claims against the MOISD, which can be categorized into federal law claims and state law claims as follows:

### Federal Law Claims

1. Violations of Title IX 20 U.S.C. § 1681 *et seq.* (Counts I and II).
2. Violations of Title 42 (42 U.S.C. § 1983 *et seq*) (Counts III and IV).

### State Law Claims

3. Negligence and Recklessness (Count V).
4. Negligent Retention (Count VI).
5. Negligent Supervision (Count VII).
6. Gross Negligence (Count VIII).
7. Violations of the Elliot-Larsen Civil Rights Act MCL § 37.2201, *et seq.* (Count XIII).

(ECF No. 1, Page ID. 12-30, 35-36). For the reasons set forth below, Plaintiff's Complaint as it relates to the MOISD must be dismissed in its entirety and with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    PLAINTIFF'S    FEDERAL    AND    STATE    CLAIMS    OF INAPPROPRIATE CONDUCT ARE TIME-BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

A three (3) year statute of limitations applies to all of Plaintiff's claims alleged in his Complaint against the MOISD. While state law governs the limitations period, "federal law is used to determine 'when the statute of limitations begins to run, that is, when the cause of action accrues.'" *JiQiang Xu v. Michigan State Univ.*, Dkt. No. 05-1372 at pg. 3, (6th Cir. Aug. 24, 2006) (Exhibit 2) (citing *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)). "The limitation period is triggered 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Id.* at 455-456. "The key date for accrual of the limitations period is the injury." *Id.*

In determining when Plaintiff's claims accrued, then, the key date is when he was allegedly injured, *i.e.*, when the alleged inappropriate relationship / conduct occurred. *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984); see also *Anderson v. Bd. Of Educ. of Fayette Cty.*, 616 F.Supp.2d 662, 668 (E.D. Ky. 2009) (plaintiffs' allegations of sexual abuse accrued "at the time [the sexual abuse] was allegedly inflicted"). This is to say that plaintiffs' cause of action accrued at the time of the alleged abusive acts. Plaintiff alleges that the inappropriate relationship / conduct and physical abuse at issue occurred in 2019. (ECF No. 1, PageID. 9, ¶ 38a). Therefore, his claims accrued in 2019.

6

**A.**    **The Eastern District of Michigan Court's Recent Decision in** *Forrester v. Clarenceville School District* **Bars all of Plaintiff's Federal Claims.**

In *Forrester v. Clarenceville School District,* Dkt. No. 20-12727 at pgs. 2-3, (E.D. Mich. June 3, 2021) (Exhibit 3), the Eastern District of Michigan Court recently granted the defendant's Fed. R. Civ. P. 12(b)(6) motion to dismiss on statute of limitations grounds as it related to the plaintiffs' federal law claims. Therein, the plaintiffs alleged federal law claims, much like the Plaintiff in this action, including alleged violations of 42 U.S.C. § 1983 and violations of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.* (Exhibit 3). The court ultimately dismissed these claims finding that plaintiffs, all of which were students at the defendant school district and alleged that they had been abused as early as 2008 who had filed their complaint on October 7, 2020 had filed their complaint within the statute of limitations applicable to their federal law claims. (Exhibit 3). In this regard, the court found that their actions accrued at the time that the alleged abuse occurred in relation to their federal law claims which were subject to a three (3) year statute of limitations. (Exhibit 3). Thereafter, the court declined to exercise supplemental jurisdiction over the pendent state law claims, dismissing same without prejudice. (Exhibit 3).

The *Forrester* opinion is instructive as it relates to Plaintiff's federal law claims herein. In this regard, this Honorable Court should follow the Eastern District

7

of Michigan's decision that same are subject to a three (3) year statute of limitations that accrues at the time of the alleged inappropriate conduct / abuse and Michigan's Criminal Sexual Conduct Statutes do not apply to the federal law claims pled. Therefore, Plaintiff's federal law claims against the MOISD– alleged in Counts I, II, III, and IV of Plaintiff's Complaint, must be dismissed as same are barred by the three (3) year statute of limitations.   Furthermore, this Honorable Court should refrain from exercising supplemental jurisdiction over Plaintiff's remaining state law claims as same are likewise time-barred for the reasons set forth herein.

### B.    Plaintiff Cannot Prove That The Statute Of Limitations Should Be Tolled Based Upon Michigan's Minor Tolling Provision.

Michigan law applies in determining whether Plaintiff's claims may be tolled. *Perreault v. Hostetler*, 884 F.2d 267, 270 (6th Cir. 1989) ("Whether a limitations period is tolled is an inherent aspect of a state's statute of limitations and, therefore, federal courts are obligated to apply state tolling statutes").   Plaintiff cannot invoke the minor tolling provision contained within MCL § 600.5851 to overcome the untimeliness of his claims.   "***The burden of demonstrating that an action is not barred by the applicable statute of limitations rests with the plaintiff.***"   *Britt v. Smith*, 9 Fed. Appx. 409, 411 (6th Cir. 2001) (internal citations omitted) (emphasis added).   MCL § 600.5851 (1), provides:

> Except as otherwise provided in subsections (7) and (8), if the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or

8

those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. This section does not lessen the time provided for in section 5852.

To obtain the benefit of tolling based upon minor status, Plaintiff must prove that he was a minor under the age of eighteen (18) years old when the claims accrued and that he filed his claims within one (1) year after his eighteenth birthday, or before he turned nineteen (19). MCL § 600.5851(1); *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich. App. 632, 639 (2004) (finding that the plaintiff had one year after reaching the age of majority (18 years old) to file his claims). The Court in *Vance v. Henry Ford Health Sys.*, 272 Mich. App. 426, 432 (2006), explained that MCL § 600.5851(1) "does not toll the running of the general period of limitations applicable to the action; rather, *it exempts certain claims from the bar of the general statute of limitations and allows the filing of a claim within one year after the disability is removed*." (emphasis added).

Plaintiff alleges that while he was a minor while living at MRYH's facility, Ms. Nicole, Dewey, Beard, and Cast allegedly engaged in an inappropriate relationship / conduct directed toward him. (ECF No. 1, PageID. 7-8, ¶ 35, 38a-h). Plaintiff does not allege that he initiated any action to pursue his claims within one (1) year after reaching eighteen (18) years old, the age of majority. To the contrary, based upon the allegations within Plaintiff's Complaint, he did not initiate his claims by his nineteenth (19th) birthday, or one year after reaching the age of majority.

9

(ECF No. 1). Rather, he waited until April 21, 2025, to file his Complaint; even though, he turned eighteen (18) in 2022. (ECF No. 1) (Exhibit 1). As such, MCL § 600.5851 does not serve to toll Plaintiff's claims against the MOISD and his claims against them are barred by the applicable statute of limitations.

### C. MCL §§ 600.5851b(3) and 600.5805(6) Do Not Save Plaintiff's Claims.

MCL §§ 600.5851b(3) and 600.5805(6) are two (2) recently enacted statutes of limitations applicable to criminal sexual conduct claims. However, same do not apply and cannot be applied to extend the statute of limitations in this case.

In this regard, MCL § 600.5851b(3) states:

(3) Regardless of any period of limitation under subsection (1) or sections 5805 or 5851, an individual who, while a minor, was the victim of criminal sexual conduct after December 31, 1996 but before 2 years before the effective date of the amendatory act that added this section may commence an action to recover damages [until 2016] sustained because of the criminal sexual conduct within 90 days after the effective date of the amendatory act that added this section if the person alleged to have committed the criminal sexual conduct was convicted of criminal sexual conduct against any person under section 520b of the Michigan penal code, 1931 PA 328, MCL 750.520b, and the defendant admitted either of the following:

(a) That the defendant was in a position of authority over the victim as the victim's physician and used that authority to coerce the victim to submit.
(b) That the defendant engaged in purported medical treatment or examination of the victim in a manner that is, or for purposes that are, medically recognized as unethical or unacceptable.

In this regard, MCL § 600.5851b(3) provides that an individual, who is a minor victim of "criminal sexual conduct" as defined by this statute, between December 31, 1996 and June 18, 2016 may commence an action to recover damages for "criminal sexual conduct" by September 16, 2018 if the person alleged to have committed the "criminal sexual conduct" is convicted of same as defined by MCL § 750.520b and was the victim's physician or offered the victim medical treatment – the Larry Nassar Exception.  The Michigan Court of Appeals has stated that "medical treatment" in criminal sexual conduct cases, applies to all healthcare professionals.  *People v. Regts*, 219 Mich. App. 294, 297 (1996).  However, this exception is not applicable to Plaintiff's claims in this case because the MOISD was not Plaintiff's physician nor is there any allegation that it provided Plaintiff medical treatment.  Likewise, the MOISD is not a healthcare professional.  Additionally, Plaintiff's claims accrued and were brought after 2018.

Next, MCL § 5805(6), likewise amended in 2018, provides that the period of limitations is ten (10) years for an action to recover damages sustained because of criminal sexual conduct.  Furthermore, MCL § 5805(16)(b) defines "criminal sexual conduct" as "conduct prohibited under section 520b, 520c, 520d, 520e, or 520g of the Michigan penal code, 1931 PA 328, MCL 750.520b, 750.520c, 750.520d, 750.520e, and 750.520g."  MCL §§ 750.520b, 750.520c, 750.520d, 750.520e and 750.520g all define "criminal sexual conduct" in reference to the actions or inactions

of an alleged perpetrator / actor in performing an illegal sexual act, allegedly Ms. Nicole in this instance, as opposed to the MOISD, a non-party to the act. Indeed, all of the above-mentioned, penal statutes reference an actor who engages in a sexual act in support of their definition of "criminal sexual conduct."

The goal of statutory interpretation is to give effect to the Legislature's intent as expressed in the statutory language. *Gladych v. New Family Homes, Inc.*, 468 Mich. 594, 597 (2003); *Murphy v. Michigan Bell Telephone Co.*, 447 Mich. 93, 98 (1994). "If the language is unambiguous, we presume that the Legislature intended the meaning clearly expressed – no further judicial construction is required or permitted, and the statute must be enforced as written." *Id.* (quoting *Dibenedetto v. West Shore Hosp.*, 461 Mich. 394, 402 (2002) (internal quotations omitted)). When construing a statute, the court must presume that every word has some meaning and should avoid any construction that would render any part of the statute nullified. *Altman v. Meridian Twp.*, 439 Mich. 623 (1992). The words used by the legislature shall be given their common and ordinary meaning, and only where the statutory language is ambiguous may this Honorable Court look outside the statute to ascertain the Legislature's intent. *Turner v. Auto Club Ins. Ass'n*, 448 Mich. 22, 27 (1995). The above-quoted language is unambiguous; therefore, no further judicial interpretation is permitted.

Furthermore, there are no allegations, perhaps because there is no proof, that

the MOISD, was accused or convicted of "criminal sexual conduct" as defined by MCL § 750.520b.  As such, pursuant to the plain and unambiguous language of the above-quoted statute, and the allegations contained within Plaintiff's Complaint, the actions or inactions of the MOISD, all non-parties to the alleged sexual conduct that forms the basis of Plaintiff's Complaint, do not meet the definition of "criminal sexual conduct" under MCL §§ 600.5851b(3) and 600.5805(6) and Plaintiff's claims cannot be tolled pursuant to same.  Therefore, these statutes do not invoke tolling nor does it save Plaintiff's time-barred claims.  Therefore, Plaintiff's state law claims against the MOISD–alleged in Counts V, VI, VII, VIII, and XIII of Plaintiff's Complaint, must be dismissed as same are barred by the three (3) year statute of limitations.

## II.    PLAINTIFF'S FEDERAL AND STATE LAW CLAIMS FAIL AS THE MOISD IS ENTITLED TO GOVERMENTAL IMMUNITY AND IT DOES NOT OWE PLAINTIFF A DUTY.

### A.    The MOISD is Entitled to Governmental Immunity.

Under Michigan law, government agencies are immune from tort liability when they are engaged in the exercise of a governmental function.  It is undisputed that operating a school is considered to be a governmental function.  *See Stringwell v. Ann Arbor Pub. Sch. Dist.*, 262 Mich. App. 709, 712 (2004); MCL 691.14017(1). However, the governmental immunity act sets forth exceptions to immunity, which must be narrowly construed.  *See Maskery v. Univ. of Michigan Bd. of Regents,* 468

Mich. 609, 614 (2003). A governmental agency is immune from liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Mich. Comp. Laws Ann. § 691.1407. No majority of our Supreme Court has held governmental immunity inapplicable to school districts. *Cook v. Bennett*, 94 Mich. App. 93, 100 (1979).

A "plaintiff must plead [his] case in avoidance of immunity." *Mack v. City of Detroit*, 467 Mich. 186, 203, (2002). "[A] plaintiff pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function." *Id.* A "governmental function" is defined as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." *Id.* As previously noted, the operation of a school's educational services is a government function.

Here, Plaintiff failed to plead this action in avoidance of governmental immunity. Plaintiff's Complaint did not assert any exception to the governmental immunity enjoyed by the MOISD. Without asserting facts to justify an exception to governmental immunity, and because Plaintiff failed to plead in this action in avoidance of same, MOISD is entitled to continue to enjoy the immunity granted by law. MOISD is protected by governmental immunity because MOISD is a school

14

district engaged in the exercise of a governmental function by providing educational services.

### B.    The MOISD Cannot be Liable under § 1983.

Further, for Plaintiff to prevail under § 1983, Counts III and IV, he must prove "1) the deprivation of right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law." *Overall v. Oakland County*, 670 F. Supp. 3d 437, 449 (2023). However, "*a governmental entity cannot be found liable under § 1983 on respondent superior theory.* Rather, such liability can be imposed only for injuries inflicted pursuant to a governmental 'policy or custom.'" *Jackson v. City of Detroit*, 449 Mich. 420, 433 (1995) (citing *Monell v. Dep't of Social Services or New York City*, 436 U.S. 658, 694 (1978). "There must be an affirmative link between the policy or custom and the particular constitutional violation alleged. The alleged policy or custom must be the 'moving force' of the constitutional violation to establish liability." *Id.*

Here, Plaintiff's claims under § 1983 fail as a matter of law because the MOISD cannot be found liable on respondeat superior theory. The MOISD did not have a governmental policy or custom that was an affirmative link between the policy and Plaintiff's harm. The MOISD provided educational services at MYRH's facility. It did not have any policies or customs regarding controlling or supervising Ms. Nicole, Dewey, Beard, and Cast. Therefore, Plaintiff's claims must fail as a

matter of law and Plaintiff's claim must be dismissed.

### C.    The MOISD's Staff are also Entitled to Governmental Immunity.

Under the Governmental Tort Liability Act (GTLA), MCL 691.1407(2), a governmental officer or employee is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority; (b) The governmental agency is engaged in the exercise or discharge of a governmental function; and (c) The officer's, employee's, member's, or volunteer's conduct does not amount to **gross negligence** that is the **proximate cause** of the injury or damage.

MCL 691.1407(2). "In Michigan, to overcome governmental immunity, a plaintiff must prove that the defendant's gross negligence was '"the proximate cause [,]' [which]… means the one most immediate, efficient, and direct cause preceding an injury, not 'a proximate cause.'" *Overall*, 670 F. Supp. 3d 437, 447 (2023). Under GTLA, "gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted." Mich. Comp. Laws § 691.1407(8)(a). To be considered grossly negligent, "a human actor's conduct must meet the 'high bar' of being 'the' proximate cause of the injury." *Overall*, 670 F. Supp. 3d 437, 447 (2023). The defendant's conduct being "a" proximate cause of

the injury is not enough to prove gross negligence. *Tarlea v. Carbtree*, 263 Mich.App. 80, 92 (2004).

Here, Plaintiff bears the burden to establish that the MOISD staff were grossly negligent. However, Plaintiff has failed to allege facts showing that the MOISD staff's conduct amounted to gross negligence. Further, the staff's alleged failure to report the abuse, was not "the" proximate cause of Plaintiff's injury. Plaintiff's injury was caused by the abuse from Ms. Nicole, Dewey, Beard, and Cast. Based on the foregoing, any claim Plaintiff has against the MOISD's staff will fail as a matter of law and Plaintiff's claims against the MOISD must be dismissed.

### D.    MOISD Did Not Owe a Duty to Protect from the Criminal Conduct of Another.

Plaintiff cannot meet his burden of proving that the MOISD was directly negligent, or that it engaged in Negligent Retention or Negligent Supervision. For a plaintiff to recover damages for negligence, the plaintiff must prove: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the defendant's breach was a proximate cause of the plaintiff's damages, and (4) the plaintiff suffered damages." *Mais v. Allianz Life Ins. Co. of N. Am.*, 34 F. Supp. 3d 754, 765 (W.D. Mich. 2014) (citing *Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 660 (2012)). The defendants have a duty to "conform to a particular standard of conduct to protect others against unreasonable risks of harm." *Mais v. Allianz Life Ins. Co. of N. Am.*, 34 F. Supp. 3d 754, 765-66 (W.D. Mich. 2014) (citing *Burnett v.*

17

*Bruner*, 247 Mich. App. 365, 368 (2001)). Under Michigan law, there is not a duty to protect against the criminal conduct of another, unless there is a special relationship between the plaintiff and the defendant and "the protected party is readily identifiable as foreseeably endangered." *Smith v. Bronson Lifestyle Imp.& Rsch. Ctr. Co.,* Dkt. No. 321813 at pg. 5, 8, (Mich. Ct. App. Dec. 15, 2015) (Exhibit 4) (citations omitted).

A special relationship "is based on control; in each circumstance one person entrusts his care to another person, who is in control and best able to provide a place of safety." *In re Doe,* Dkt. No. 264679 at pg. 2, (Mich. Ct. App. Feb. 28, 2006) (Exhibit 5) (citing *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 499 (1988)). Special relationships exist between "landlord-tenant, proprietor-patron, employer-employee, residential invitor-invitee, psychiatrist-patient, doctor-patient, common carrier-passenger, and innkeeper-guest" relationships. (Exhibit 5 at pg. 2) (citing *Graves v. Warner Bros.*, 253 Mich. App. 486, 494 (2002)). Michigan Courts have recognized that there may be a special relationship between a school agent and a student if the school agent is responsible for the oversight of the student's activity and is "present to observe and control." (Exhibit 5 at pg. 2) (citing *Cook v. Bennett*, 94 Mich. App. 93, 98 (1979)).

*In re Doe*, a student claimed that the school was negligent because an individual, a non-student, entered the building after school hours and sexually

18

assaulted a student. (Exhibit 5 at pg. 2). The court affirmed the trial court's decision to grant the school's motion for summary disposition finding that the school did not owe the student a duty. (Exhibit 5 at pg. 3). The court reasoned that the school did not owe the student a duty because when the incident occurred, it was not during school hours nor was the student participating in a school-sponsored event. (Exhibit 5 at pg. 3). Further, the court reasoned that the student was not entrusted nor in control of the student when the assault occurred. (Exhibit 5 at pg. 3).

In *Smith*, a camp attendee claimed negligence and negligent retention against a summer camp for the criminal sexual conduct of their employee. (Exhibit 4 at pg. 2). The court affirmed the trial court's decision to grant the defendant's motion for summary disposition finding that the camp did not owe the plaintiff any duty. (Exhibit 4 at pg. 10). The court reasoned that the employee's conduct was unforeseeable, and the camp did not owe a duty to protect camp attendees from unforeseeable acts. (Exhibit 4 at pg. 5). Further, the court found that there was no evidence that the camp knew or should have known the employee would commit criminal sexual conduct. (Exhibit 4 at pg. 6).

Herein, Plaintiff did not allege that the MOISD was entrusted or had control over Plaintiff at any time, let alone during the alleged abuse. Therefore, there was not a special relationship formed between the MOISD and Plaintiff that would create a duty to protect Plaintiff from MRYH employees' conduct.

Further, the Complaint does not allege that the MOISD even knew Ms. Nicole, Dewey, Beard, or Cast, much less that the MOISD knew or should have known that they would commit criminal sexual conduct and physical abuse. Therefore, it was unforeseeable to the MOISD that MRYH's employees would allegedly abuse Plaintiff. Since the abuse was unforeseeable, the MOISD did not owe Plaintiff a duty to protect him from MRYH employees' conduct. Based upon the foregoing, Plaintiff's negligence claims against the MOISD– alleged in Counts V, VI, and VII of Plaintiff's Complaint must be dismissed because the MOISD did not owe a duty to protect Plaintiff from MRYH's employees' abuse.

## CONCLUSION

WHEREFORE, Defendants, MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT and MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT BOARD OF EDUCATION, respectfully request that this Honorable Court Grant their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(B)(6) and dismiss Plaintiff's Complaint as to them in its entirety and with prejudice.

Respectfully Submitted,

Dated: July 9, 2025

/s/ Gregory W. Mair
GREGORY W. MAIR (P67465)
Attorney for Defendants MOISD and
MOISD Board of Education
300 St. Andrews Road, Suite 302
Saginaw, Michigan 48638
gmair@owdpc.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing paper with the Clerk

of the Court using the ECF system which will send confirmation of such filing to the

following:

Elizabeth K. Abdnour          liz@education-rights.com
                              abdnoure@recap.email
                              jennifer@education-rights.com
                              elisabeth@education-rights.com

Gregory W. Mair               gmair@owdpc.com
                              dmcclure@owdpc.com
                              jmconnolly@owdpc.com

Kailen C. Piper               kpiper@owdpc.com

John Gillooly                 jgillooly@garanlucow.com
                              dshealy@garanlucow.com

                              Respectfully submitted,


Dated: July 9, 2025           /s/ Gregory W. Mair
                              GREGORY W. MAIR (P67465)
                              Attorney for Defendants Saginaw ISD
                              & Saginaw ISD Board of Education
                              300 St. Andrews Road, Suite 302
                              Saginaw, Michigan 48638
                              (989) 790-0960
                              gmair@owdpc.com

# U.S. DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| JERMICHAEL BROWN, JR. | )Case No.: 1:25-cv-442<br>)HON. JANE M. BECKERING<br>) |
| Plaintiff, | )<br>) |
| v | )<br>) |
| MUSKEGON RIVER YOUTH HOME,<br>LLC; MUSKEGON RIVER YOUTH<br>HOME, INC.; MUSKEGON RIVER<br>YOUTH HOME REAL ESTATE, LLC,<br>d/b/a K & K LAND LLC; MUSKEGON<br>RIVER PATHWAY OF HOPE LLC,<br>formerly d/b/a YOUTH OPPORTUNITY<br>CONTER FOR SUCCESS AND<br>INDEPENDENCE; MECOSTA-OSCEOLA<br>INTERMEDIATE SCHOOL DISTRICT;<br>MECOSTA-OSCEOLA INTERMEDIATE<br>SCHOOL DISTRICT BOARD OF<br>EDUCATION; and JOHN/JANE DOES<br>1 – 10, in their official, professional,<br>personal, and individual capacities, jointly<br>and severally; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

ELIZABETH K. ABDNOUR (P78203)
Attorney for Plaintiff
325 e. Grand River Ave., Ste. 250
East Lansing, MI  48823
(517) 994-1776
liz@education-rights.com

DAVID WESLEY CORNISH, ESQ.
Attorney for Plaintiff
230 South Broad St., 17th Floor
Philadelphia, PA  19102
(888) 313-1385
dwesley24@gmail.com
*Admission application to be filed

GREGORY W. MAIR (P67465)
KAILEN C. PIPER (P82865)
Attorneys for Defendants Mecosta-Osceola
Intermediate School District and
Mecosta-Osceola Intermediate School
District Board of Education
300 St. Andrews Road, Suite 302
Saginaw, MI  48638
(989) 790-0960
gmair@owdpc.com
kpiper@owdpc.com
dmcclure@owdpc.com

JOHN GILLOOLY (P41948)
Attorney for Defendant Muskegon
River Youth Home, LLC, Muskegon
River Youth Home, Inc., Muskegon
River Youth Home Real Estate, LLC
Muskegon River Pathway of Hope, LLC
1155 Brewery Park Blvd., Suite 200
Detroit, MI  48207-2641
(313) 446-5501 / Fax: (313) 259-0450
jgillooly@garanlucow.com

---

## INDEX OF EXHIBITS FOR DEFENDANTS MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT AND MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT BOARD OF EDUCATION'S MOTION TO DISMISS PURSUANT TO FED R. CIV. P. 12(b)(6)

Exhibit 1……………………………………….…………………………….MDOC

Exhibit 2………………………….…………Case Law-Xu v. Michigan State University

Exhibit 3……………………………Case Law-Forrester v. Clarenceville School District

Exhibit 4..…Case Law-Smith v. Bronson Lefestyle Improvement & Research Center Co.

Exhibit 5………..Case Law-Doe v. University of Detroit Jesuit High School & Academy

## MDOC
**Department of Corrections**

Michigan.gov Home | Contact MDOC | OTIS Help | MDOC's Most Wanted | Glossary | Disclaimer | MDOC Home

# BIOGRAPHICAL INFORMATION



JERMICHAEL DIONNE BROWN JR.

Image Date:
12/7/2023

MDOC Number:
**772482**

SID Number:
**5003339X**

Name:
**JERMICHAEL DIONNE BROWN JR.**

Racial Identification:
**Black**

Gender:
**Male**

Hair:
**Black**

Eyes:
**Brown**

Height:
**5' 6"**

Weight:
**150 lbs.**

Date of Birth:
**04/22/2004  (21)**

# MDOC STATUS

Current Status:
Prisoner

Assigned Location:
Baraga Maximum Facility

Security Level:
V

Earliest Release Date:
03/19/2028

Maximum Discharge Date:
09/05/2034

## ALIASES

MIKE MIKE

JERMICHAEL DIONE BROWN

MIKE BROWN

MIKE JONES

## MARKS, SCARS & TATTOOS

Tattoo- Abdomen - right-side angel profile, left-side angel back view

Tattoo- Left Arm - Chuckie from Rugrats

Tattoo- Left Arm - broken heart, "loyalty made" "05-15-2020" "long live Lynn"

Tattoo- Left Arm - full sleeve - multiple designs

Tattoo- Left Finger - index finger - indistinguishable words

Tattoo- Right Chest - '2004 BABY' Unknown design betweeen Cat and Devil head

Tattoo- Right Forearm - Female with crown, 'Loyalty Made', 'Loyalty'

Tattoo- Right Hand - dollar sign

Tattoo- Right Neck - flames, stars and money - '4 EVA PAID'

Tattoo- Right Shoulder - 'North Side US 131' sign

# PRISON SENTENCES

## ACTIVE

### Sentence 1

Offense:
Prosecutors Investigative Subpoenas - Life Offense - Perjury

MCL#:
767A.91B

Court File#:
2303893-FC

County:
Kent

Conviction Type:
Plea

Minimum Sentence:
5 years 0 months 0 days

Maximum Sentence:
10 years 0 months

Date of Offense:
09/15/2022

Date of Sentence:
10/25/2023

### Sentence 2

Offense:
Weapons - Carrying Concealed

MCL#:
750.227

Court File#:
2300961-FH

County:
Kent

Conviction Type:
Plea

Minimum Sentence:
1 year 6 months 0 days

Maximum Sentence:
5 years 0 months

Date of Offense:
07/03/2022

Date of Sentence:
10/25/2023

### Sentence 3

Offense:
Weapons-Firearm- Discharge From Vehicle

MCL#:
750.234A

Court File#:
2300961-FH

County:

Minimum Sentence:
1 year 6 months 0 days

Maximum Sentence:
10 years 0 months

Date of Offense:
07/03/2022

Conviction Type:
    Plea

## Sentence 4

Offense:
    Weapons - Felony Firearms

MCL#:
    750.227BA

Court File#:
    2300961-FH

County:
    Kent

Conviction Type:
    Plea

Minimum Sentence:
    2 years 0 months 0 days

Maximum Sentence:
    2 years 0 months

Date of Offense:
    07/03/2022

Date of Sentence:
    10/25/2023

## Sentence 5

Offense:
    Breaking & Entering a Building With Intent

MCL#:
    750.110

Court File#:
    2209857-FH

County:
    Kent

Conviction Type:
    Plea

Minimum Sentence:
    1 year 6 months 0 days

Maximum Sentence:
    10 years 0 months

Date of Offense:
    09/16/2021

Date of Sentence:
    10/25/2023

### INACTIVE

None

# PROBATION SENTENCES

### ACTIVE

None

### INACTIVE

None

# SUPERVISION CONDITIONS

None

Copyright © 2001-2025 State of Michigan

214 Ed. Law Rep. 568, 2006 Fed.App. 0640N

195 Fed.Appx. 452
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. 6th Cir. Rule 32.1.
United States Court of Appeals,
Sixth Circuit.

JIQIANG XU, Plaintiff–Appellant,

v.

MICHIGAN STATE UNIVERSITY; Michigan State
University College of Education; Dr. Kenneth A.
Frank; Dr. Betsy J. Becker; Dr. David E. Wright;
Dr. Cassandra Book, Defendants–Appellees.

No. 05–1372.
|
Aug. 24, 2006.

**Synopsis**
**Background:** Doctoral student brought § 1983 claims against
state university, its college of education, and university and
college officials, asserting violations of First Amendment free
speech rights and Fourteenth Amendment due process and
equal protection rights, based on allegations that academic
adviser took credit for student's work, that defendants failed
to award a doctoral degree to student, and that student was
denied a full and fair grievance hearing. The United States
District Court for the Western District of Michigan granted
summary judgment to defendants. Plaintiff appealed.

**Holdings:** The Court of Appeals, Julia Smith Gibbons,
Circuit Judge, held that:

[1] for limitations purposes, § 1983 claims relating to
academic adviser and failure to award doctoral degree accrued
at the latest when college official informed student that he
would not be granted a formal grievance hearing and that she
considered the matter closed, and

[2] university did not violate student's procedural due process
rights.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment.

West Headnotes (3)

[1]  **Civil Rights**  ⬟ Education

Statute of limitations for doctoral student's §
1983 claims against Michigan state university,
its college of education, and university and
college officials, asserting violations of First
Amendment free speech rights and Fourteenth
Amendment due process and equal protection
rights, based on allegations that academic
adviser took credit for student's work, that
defendants failed to award a doctoral degree to
student, and that student was denied a full and
fair grievance hearing, was Michigan's three-year
statute of limitations for personal injury claims. U.S.C.A.
Const.Amends. 1, 14; 42 U.S.C.A. § 1983;
M.C.L.A. § 600.5805(10).

14 Cases that cite this headnote

[2]  **Limitation of Actions**  ⬟ Civil rights

Doctoral student's § 1983 claims against
state university, its college of education,
and university and college officials, asserting
violations of First Amendment free speech rights
and Fourteenth Amendment due process and
equal protection rights, based on allegations that
academic adviser took credit for student's work
and that defendants failed to award a doctoral
degree to student, accrued, for limitations
purposes, at the latest when college official
informed student that he would not be granted a
formal grievance hearing and that she considered
the matter closed. U.S.C.A. Const.Amends. 1,
14; 42 U.S.C.A. § 1983.

5 Cases that cite this headnote

[3]  **Constitutional Law**  ⬟ Notice and Hearing;
Proceedings and Review
**Education**  ⬟ Graduate students

214 Ed. Law Rep. 568, 2006 Fed.App. 0640N

State university did not violate doctoral student's procedural due process rights, as to student's grievance regarding academic adviser taking credit for student's work; college department within university thoroughly investigated the grievance filed with department, department's investigator proposed at least four different solutions, all of which the student rejected, and student later met with a university official responsible for research ethics and college's associate dean, but student failed to take advantage of university-level formal grievance procedures and did not respond to correspondence from associate dean for five months, resulting in associate dean informing student the matter would be closed. U.S.C.A. Const.Amend. 14.

6 Cases that cite this headnote

**\*453** On Appeal from the United States District Court for the Western District of Michigan.

Before: COLE, GIBBONS, and ROGERS, Circuit Judges.

**Opinion**

JULIA SMITH GIBBONS, Circuit Judge.

**\*\*1** JiQiang Xu appeals a district court order dismissing on statute of limitations grounds three claims brought pursuant to 42 U.S.C. § 1983. Xu argues on appeal **\*454** that the district court erred in finding that the injuries giving rise to his cause of action occurred more than three years prior to the filing of the instant lawsuit. We affirm the grant of summary judgment as to the first two claims on statute of limitations grounds. Although the third claim was possibly brought within the applicable limitations period, summary judgment is appropriate as there is no genuine issue for trial.

I.

Xu was a doctoral student in the Department of Counseling, Educational Psychology and Special Education ("Department"), which is part of the College of Education ("College") at Michigan State University ("University"). In the spring of 1998, Xu learned that his academic adviser,

Dr. Kenneth Frank, had listed himself as a second author on one of Xu's research papers. Though his rationales for doing so are not clear, it appears that Frank believed he deserved credit for assisting Xu, who has some difficulty with the English language, in making his papers more "publishable." In December 1998, Xu submitted his final dissertation to complete his graduation requirements. Six months later, Xu learned that his degree had not been awarded because Frank had not processed his dissertation. In October 1999, Xu filed a complaint with the Department, claiming that Frank had taken credit for his work and that he had completed the requirements for his program but had not been granted a degree. The Department asked Dr. Betsy Becker to investigate. Becker proposed at least four different solutions in 2000 and early 2001, all of which were rejected by Xu. Becker summarized her attempts to resolve the matter in a written report in January 2001. Xu objected to this report, and in March 2001, he filed a grievance against Becker. Dr. David Wright, the University's Assistant Vice President for Research Ethics and Standards, met with Xu in March 2001. Xu claims that Wright "proved to be more of an obstruction," and no solution resulted from the meeting. Xu next complained to Dr. Cassandra Book, the Associate Dean of the College of Education, and stated his intent to take advantage of the University's formal grievance procedures. However, he failed to follow up on this request and did not respond to later correspondence sent by Book. On August 13, 2001, Book sent a letter to Xu stating:

> I have reviewed my correspondence with you over the last five months and find that you have not responded to the opportunity to obtain assistance in clarifying your proposed grievance so that your claim of violation of your rights as a graduate student can be heard by a college panel. Since you have not responded to my email of June 5, 2001 nor my letter of July 3, 2001, I will consider this matter closed.

Six months later, Xu renewed his complaint, sending letters to the President of the University and other University Executive Officers. On August 15, 2002, Book again wrote Xu to reaffirm the University's position: "President McPherson and Dr. Simon concur with my letter to you dated August 13, 2001 in which I indicated that the University considers the matter

closed." Again on February 17, 2003, Wright wrote Xu and informed him that as of August 13, 2001, "the University considered the matter closed." In September 2003, Book informed Xu that his diploma would be awarded "upon [his] signature" but since he was "no longer a student at MSU," she had "no more information ... to share with him."

**\*\*2** Xu took no further action until December 7, 2004, when he filed this lawsuit claiming that the defendants had violated **\*455** his constitutional rights. In addition to the University and its College of Education, Xu sued Frank, Becker, Wright, and Book. Specifically, Xu argued that the University infringed his right to free speech under the First Amendment and violated his rights to due process and equal protection under the Fourteenth Amendment. Defendants filed a motion to dismiss, which the court converted into a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The district court granted the motion, dismissing the First Amendment claims on the merits and the Fourteenth Amendment claims as untimely. The court ruled that the three-year statute of limitations on his claim began to run no later than August 13, 2001, the date on which he received the letter from Book. Xu did not file his claim until December 2004, four months after the expiration of the limitations period. As all of the federal claims were dismissed, the court exercised its discretion under 28 U.S.C. § 1367(c)(3) and dismissed the state law claims without prejudice. Xu filed a timely appeal, challenging only the dismissal of the Fourteenth Amendment claims on statute of limitations grounds.

## II.

A district court's grant of summary judgment is reviewed *de novo. McWane, Inc. v. Fidelity & Deposit Co. of Md.,* 372 F.3d 798, 802 (6th Cir.2004). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We view the evidence, and draw all reasonable inferences, in favor of Xu, the non-moving party.

*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Xu's complaint, while somewhat ambiguous, appears to raise three claims under the Fourteenth Amendment: (1) that Frank took credit for some of his work, thereby depriving him of his intellectual property; (2) that the defendants have failed

to award him his degree, for which he has met all of the requirements; and (3) that the defendants have denied him his due process right to a "full and fair hearing" through the university grievance procedure. The first two claims are barred by the statute of limitations; the third claim, even if not barred by the limitations period, is meritless. [1]

### A.

**[1]** The parties do not dispute that the relevant limitations period is three years. The Supreme Court held in *Wilson v. Garcia* that the statute of limitations for § 1983 actions is the same as the limitations period for personal injury claims under state law. 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Under Michigan law, the limitations period is three years. Mich. Comp. Laws § 600.5805(10) (2005); *see also Carroll v. Wilkerson,* 782 F.2d 44, 45 (6th Cir.1986) (finding the relevant limitations period in Michigan to be three years). As Xu filed his complaint on December 7, 2004, his cause of action must have accrued no earlier than December 7, 2001.

**\*\*3** Federal law is used to determine "when the statute of limitations begins to run, that is, when the cause of action accrues." *Dixon v. Anderson,* 928 F.2d 212, 215 (6th Cir.1991). The limitation period is triggered **\*456** "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir.1984)). For cases arising under § 1983, this court has looked to "what event should have alerted the typical lay person to protect his or her rights." *Id.* (citing *Conlin v. Blanchard,* 890 F.2d 811, 815 (6th Cir.1989)). The key date for the accrual of the limitations period is the injury, not the completion of any grievance process. The Supreme Court has stated that "[t]he grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made...." *Delaware State College v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (emphasis in original). Although *Ricks* involved an employment decision—a denial of tenure—its reasoning is applicable to the case at hand. Like the adverse decision in *Ricks,* Xu's injuries were not "tentative"—they had already occurred and the administrative hearing was only one possible avenue to remedy them. *Id.* at 260–61, 101 S.Ct. 498. The

existence of the grievance procedure did not change the fact that Xu became aware of the injuries which are the basis of his action and the need to protect his rights prior to December 7, 2001.

[2] Viewing the facts in his favor, Xu became aware that he had suffered an injury that could give rise to a cause of action at the hands of each of the defendants prior to December 2001. In his complaint, Xu acknowledges that he learned as early as April 1998 that Frank had put his own name on one of Xu's papers. Xu also learned in 1999 that his degree had not been awarded because Frank had not processed his dissertation. He raised these two concerns in his complaint with the Department that was filed in October 1999. Xu's injuries at the hands of Becker occurred in 2000 and early 2001, as he found her to be obstructing his claim against Frank and rejected all of her proposed solutions. Xu filed a grievance against Becker in March 2001. Xu also stated in his complaint that Wright injured him in March 2001, by being "an obstruction" who was completely unhelpful and was not interested in resolving Xu's problem. Finally, Book injured Xu on August 13, 2001, when she informed him that the College would not grant him a hearing and that she "consider[ed] this matter closed." By the date of each of these events, if not earlier, Xu was alerted of the need to protect his rights regarding the deprivation of his intellectual property and the withholding of his degree. All of the events occurred prior to December 7, 2001. As the availability of a grievance remedy does not change the calculus, *see* *Ricks,* 449 U.S. at 261, 101 S.Ct. 498, the claims were brought outside of the three-year limitations period, and the ruling of the district court granting summary judgment for counts 1 and 2 on statute of limitations grounds is affirmed.[2]

## B.

**\*\*4** Xu's third claim is that the University's grievance procedure did not conform with due process. As noted above, the existence of a grievance procedure does not postpone the accrual of the limitations period for a separate injury. A claim that the grievance process itself resulted in an injury, however, necessarily cannot accrue until the completion of that process. *See* **\*457** *Kelly v. Burks,* 415 F.3d 558, 561 (6th Cir.2005). The university grievance procedure likely concluded no later than Book's August 13, 2001, letter, which should have alerted Xu to the fact that he was already tardy in the protection of his rights and that any further action

should be immediately undertaken. But because the date of conclusion is not entirely clear, we assume *arguendo* that it was not until February 17, 2003, when Wright, a University Vice President, notified Xu that the University considered the matter closed. Under this assumption, Xu's third claim was brought within the three-year limitations period.

In this claim, Xu argues that after his grievance was denied by Book at the college level, he was due one final review at the higher, "university" level. He thus claims that the University deprived him of his due process rights by not following its own procedures. Whether Michigan State followed its own internal procedures, however, is not the proper inquiry. "Violation of a state's formal procedure ... does not in and of itself implicate constitutional due process concerns." *Purisch v. Tenn. Tech. Univ.,* 76 F.3d 1414, 1423 (6th Cir.1996) (citing *Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir.1993), *overruled in part on other grounds by* *Thompson v. Keohane,* 516 U.S. 99, 111, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine,* 986 F.2d at 1515. Thus, the inquiry is not whether the University conformed to its own internal grievance procedures, but rather if Xu was afforded the due process guaranteed under the Fourteenth Amendment.

[3] Viewing the facts in the light most favorable to Xu, we find that the University's investigation into the matter complied with the requirements of due process. After learning of Xu's complaints, the Department conducted a thorough investigation of the claim. On at least three occasions, Becker shared her findings and proposed resolutions with Xu, allowed him to respond and followed-up with modified proposals. The fact that Xu found these solutions unsatisfactory does not alone give rise to a due process concern. The Department finally summarized its conclusions in a written report in January 2001. Xu responded to this report in writing and was given a chance to meet with Wright and Book. After these meetings, Xu stopped corresponding with Book and the matter was closed. This court has held that due process does not always require a "full evidentiary hearing" and that the formality and exact procedures required can vary depending on the nature of the interests asserted. *Purisch,* 76 F.3d at 1423–24 (internal citations omitted). Rather, due process requires " 'that an individual be given

214 Ed. Law Rep. 568, 2006 Fed.App. 0640N

an opportunity for a hearing before he is deprived of any significant property interest.' " *Id.* at 1423 (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). Xu cannot claim that he was denied such an opportunity. The University, through Book, offered to arrange for Xu's grievance to be heard by a college panel in the spring and early summer of 2001, and Xu failed to respond to these overtures. Only after five months of hearing nothing from Xu did Book inform him that the matter would be closed. This decision, and the University's refusal to reopen the matter, do not violate due process. *Cf. Wilson v. Bd. of Trustees of Comm. Coll. of Balt. Cty.,* 333 F.Supp.2d 392, 398 (D.Md.2004) (finding that a lack of a hearing does not violate due process if one is not requested). Given the circumstances and the nature of the claim, **\*458** the University afforded Xu all of the process he was due.

**\*\*5** As there is no genuine issue of material fact for trial, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), we affirm the grant of summary judgment on the third count.

### III.

The judgment of the district court is affirmed for the reasons stated above.

**All Citations**

195 Fed.Appx. 452, 2006 WL 2456925, 214 Ed. Law Rep. 568, 2006 Fed.App. 0640N

---

## Footnotes

1    The merits of Xu's second claim are also suspect, as Xu's failure to have his degree awarded appears to be of his own doing. The record reflects numerous messages from University officials to Xu that his degree will be awarded if he signs the proper paperwork. Counsel for the University reaffirmed this position at oral argument.

2    Xu also attempts to argue that the statute of limitations should be tolled under Michigan's fraudulent concealment statute, Mich. Comp. Laws § 600.5855 (2005). As he did not make this argument to the district court, it is waived. *See Foster v. Barilow,* 6 F.3d 405, 407–08 (6th Cir.1993).

---

**End of Document**                                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 2253271
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Emmalee FORRESTER, et al., Plaintiffs,
v.
CLARENCEVILLE SCHOOL
DISTRICT, et al., Defendants.

Case No. 20-12727
|
Signed 06/03/2021

**Attorneys and Law Firms**

Andrew Kochanowski, Elaina S. Bailey, Robert B. Sickels, Lisa M. Esser, Sommers Schwartz, P.C., Southfield, MI, for Plaintiffs Emmalee Forrester, Justyse Perry, Holly Messerschmitt, Alyssa Craigie.

Andrew Kochanowski, Robert B. Sickels, Lisa M. Esser, Sommers Schwartz, P.C., Southfield, MI, for Plaintiff Megan Haddad.

Gouri G. Sashital, Kathryn E. Jones, Keller Thoma PC, Southfield, MI, for Defendants Clarenceville School District, Paul Shepich, Troy Nelson, Alan Kantor, David Bergeron, Renee Valentine, Troy School District.

Amanda Marie Zdarsky, Craig R. Noland, McGraw Morris PC, Grand Rapids, MI, James D. Reno, Ruggirello, Velardo, Novara & Ver Beek, P.C., Mount Clemens, MI, Michael T. Ryan, Merry, Farnen & Ryan, St. Clair Shores, MI, for Defendant Jason Debandt.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DEBANDT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

ROBERT H. CLELAND, UNITED STATES DISTRICT JUDGE

**\*1** Plaintiffs are nine former students at Defendant Clarenceville School District who allege that, between 2008 and 2018, they were abused by a choir and theater teacher, Defendant Jason Debandt. They filed a complaint in October 2020 bringing claims against the school district, school administrators, and Defendant Debandt. (ECF No. 13.) Plaintiffs alleged violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., the Fourteenth Amendment, 42 U.S.C. § 1983, Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq., the Due Process Clause of the Michigan Constitution, and Michigan's Child Protection Law, Mich. Comp. Laws § 722.621, et seq. (Id.) They also brought claims under gross negligence, negligence, invasion of privacy, and assault and battery. (Id.)

On December 23, 2020, the Defendant school district and school administrators filed a motion to dismiss. (ECF No. 21.) On May 6, 2021, after the matter was thoroughly briefed, the court granted in part the motion to dismiss. (ECF No. 44.)

In the May 6 opinion, the court held that claims under Title IX and § 1983 against the Defendant school district and school administrators were barred by the applicable statute of limitations insofar as the claims arose from abuse alleged to have occurred before October 7, 2017, three years before the complaint was filed. (ECF No. 44, PageID.628-29.) The federal claims against the Defendant school district and school administrators brought by five Plaintiffs—Katelyn Estepp, Victoria Langlois, Taylor Seymour, Madison Bevak, and Shelby Underwood—were completely time-barred. (Id.) The court dismissed those claims. (Id.) However, four Plaintiffs—Emmalee Forrester, Justyse Perry, Holly Messerschmitt, and Alyssa Craigie—brought federal claims against the Defendant school district and school administrators that survived the motion to dismiss. (Id.)

In addition, "[c]onsidering factors such as federal-state comity, judicial expertise, the need to avoid unnecessary resolution of novel and complex issues of state law, and fairness to the parties," the court declined supplemental jurisdiction over Plaintiffs' state claims against the Defendant school district and school administrators. (Id., PageID.627-29.) The court also declined supplemental jurisdiction over Plaintiffs' state claims against Defendant Debandt. (Id.)

Defendant Debandt has filed a motion for partial judgment on the pleadings. (ECF No. 43.) He argues that, even accepting as true all allegations contained in the complaint, the federal and state claims against him are barred, at least in part, by the applicable statute of limitations.[1] (Id., PageID.568-69,

580 (stating that a "Rule 12(c) [motion for judgment on the pleadings] applies the same standard applicable to a Rule 12(b)(6) motion to dismiss").) In addition, he argues that Plaintiffs do not have a private right of action under the Due Process Clause of the Michigan Constitution. (*Id.*, PageID.569.)

**\*2** Plaintiffs filed a response noting that the court on May 6 declined to exercise supplemental jurisdiction over their state claims against Defendant Debandt. (ECF No. 47, PageID.635-36.) They also argue that the statute of limitations standards for Plaintiffs' federal claims against the Defendant school district and school administrators are the same as the standards used for the 🚩 § 1983 claims against Defendant Debandt. (*Id.*, PageID.636-37.) In their response, Plaintiffs "stipulate ... that the [c]ourt would have the same analysis for the 🚩 Section 1983 claim against Debandt as to those Plaintiffs and claims to which the May 6th Order applied for the same reasons as set forth in the May 6th Order." (*Id.*)

In its May 6 opinion, the court dismissed Plaintiffs' state claims against Defendant Debandt without prejudice. (ECF No. 44, PageID.629.) Those state claims are no longer before the court, and the court will deny Defendant Debandt's motion to dismiss those claims with prejudice under the applicable statutes of limitations. The court will also decline to resolve whether Plaintiffs have valid private rights of action under the Due Process Clause of the Michigan Constitution. If Plaintiffs chose to bring their claims in state court, Defendant Debandt may raise his arguments in that venue.

As Plaintiffs accept in their response, (ECF No. 47, PageID.636-37), the statute of limitations analysis for the federal claims against the Defendant school district and school administrators stated in the court's May 6 opinion, (ECF No. 44, PageID.608-25), applies equally to the 🚩 § 1983 claims against Defendant Debandt. As the court held in the May 6 opinion, Plaintiffs' federal claims accrued at the time the alleged abuse occurred. (*Id.*, PageID.608-14.) In Michigan, the claims under 🚩 § 1983 have a three-year statute of limitations, and the doctrine of fraudulent concealment does not apply. 🚩 *Wolfe v. Perry,* 412 F.3d 707, 714 (6th Cir. 2005) (citing 🚩 Mich. Comp. Laws § 600.5805) ("[T]he appropriate statute of limitations to be borrowed for

🚩 § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims."). (ECF No. 44, PageID.605-07, 614-623.) Furthermore, because 🚩 § 1983 claims must "borrow [a state's] general or residual statute [of limitations] for personal injury actions," 🚩 *Owens v. Okure,* 488 U.S. 235, 250 (1989), Michigan's special statutes of limitations for criminal sexual assault, 🚩 Mich. Comp. Laws §§ 600.5805(6), 🚩 § 600.5851b, do not apply to the 🚩 § 1983 claims. (*See* ECF No. 44, PageID.623-25.) For the same reasons as those stated in the May 6 opinion, Plaintiffs' 🚩 § 1983 claims against Defendant Debandt are time barred to the extent that they arise from abuse occurring prior to October 7, 2017. (*Id.*, PageID.605-25.)

Thus, the 🚩 § 1983 claims of Plaintiffs Estepp, Langlois, Seymour, Bevak, and Underwood against Defendant Debandt are completely time barred, and those claims will be dismissed. (ECF No. 43, PageID.569, 600, Motion for Partial Judgment on the Pleadings; ECF No. 47, PageID.636-37, Plaintiffs' Response.) The 🚩 § 1983 claims of Plaintiffs Forrester, Perry, Messerschmitt, and Craigie against Defendant Debandt survive, but only to the extent that such claims arise from abuse occurring after October 6, 2017. As the court held in the May 6 opinion, the federal claims of Plaintiffs Forrester, Perry, Messerschmitt, and Craigie against the Defendant school district and school administrators accruing after October 6, 2017, also survive. (ECF No. 44, PageID.628.) Accordingly,

IT IS ORDERED that Defendant Debandt's "Motion for Partial Judgment on the Pleadings" (ECF No. 43) is GRANTED IN PART and DENIED IN PART. It is GRANTED as to Plaintiffs' federal claims. IT IS DENIED as to Plaintiffs' state claims.

**\*3** IT IS FURTHER ORDERED that the claims of Plaintiffs Estepp, Langlois, Seymour, Bevak, and Underwood against Defendant Debandt under bodily integrity (Count 2) are DISMISSED.

### All Citations

Not Reported in Fed. Supp., 2021 WL 2253271

---

### Footnotes

1    Plaintiffs bring their federal claims against Defendant Debandt under 🚩 § 1983. (ECF No. 13, PageID.185-89.) They do not bring claims under Title IX against Defendant Debandt. (*See id.*, PageID.181-85 (naming only the school district and school administrators as defendants for the Title IX claims).)

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00442-JMB-SJB ECF No. 25-1, PageID.1779 Filed 07/09/25 Page 52 of 66
Smith v. Bronson Lifestyle Imp. and Research Center Co., Not Reported in N.W. Rptr....
2015 WL 8932816

2015 WL 8932816
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

Kristen SMITH, next friend of
A.S., minor, Plaintiff–Appellant,

v.

BRONSON LIFESTYLE IMPROVEMENT AND
RESEARCH CENTER CO, a/k/a Bronson Athletic
Club, Medsport Enterprise, Inc, a/k/a Medsport Athletic
Clubs, LLC, and Sherry Gesmundo, next friend
of Allen Dueweke, minor, Defendants–Appellees.

Docket No. 321813
|
Dec. 15, 2015.

**Synopsis**
**Background:** Individual, as next friend of seven-year-old
camp attendee, brought negligence and vicarious liability
action against camp operators for criminal act of their
employee, who sexually abused attendee. The Circuit
Court, Kalamazoo County, granted summary disposition for
operators. Individual appealed.

**Holdings:** The Court of Appeals held that:

[1] operators were not vicariously liable for employee's
criminal act, and

[2] operators did not have duty to protect attendee from
employee's criminal act.

Affirmed.

Stephens, J., concurred with opinion.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment.

West Headnotes (4)

[1]     **Labor and Employment** 🔑 Particular cases

Camp operators were not vicariously liable for
criminal act of their employee, who sexually
abused seven-year-old camp attendee, despite
claim that operators should have known of
employee's propensity to commit sexual contact;
employee's permitting female campers to jump
on him and pull at his clothing was not
at all similar to his future commission of
criminal sexual contact against attendee in
locked closet that would have placed operators
on notice of imminent risk of harm to campers,
operators performed criminal background check
on employee and were familiar with him from
his past attendance as camper, and nothing
showed that operators had actual or constructive
knowledge that employee committed similar
conduct in past or that he had propensity to
commit criminal sexual conduct.

2 Cases that cite this headnote

[2]     **Negligence** 🔑 Protection against acts of third
persons in general

**Parent and Child** 🔑 Liability for injuries to
child

Camp operators did not have duty to protect
seven-year-old female camp attendee from
criminal act of their 16-year-old male employee,
who sexually abused attendee; employee's
act was unforeseeable, as nothing showed
that employee had ever engaged in criminal
conduct in past and no circumstance clearly
and unmistakably would have put reasonable
employer on notice of imminent risk of harm
to specific victim, employee's prior horseplay,
during which he allowed female campers to
jump on him and pull at his clothing, did not
put operators on notice that employee would
later commit criminal sexual conduct against
attendee, and comments by camp's executive
director, in which he expressed regret and agreed
that employee should not have been left alone

with campers, did not render employee's conduct foreseeable.

1 Case that cites this headnote

**[3]**    **Appeal and Error** ⚷ In general; adhering to theory pursued below

Individual, as next friend of seven-year-old camp attendee, abandoned for appellate review claim that camp operators were negligent in training their employee, who sexually abused attendee, in individual's negligence action against operators; individual's complaint did not assert theory that camp's managers and supervisors should have been trained to recognize behaviors that might identify persons prone to commit criminal sexual conduct, and individual cited no legal authority requiring such training or removing child sexual abuse from rule requiring foreseeability before duty would arise to protect against criminal conduct.

1 Case that cites this headnote

**[4]**    **Appeal and Error** ⚷ Particular Cases and Contexts

Individual, as next friend of seven-year-old camp attendee, abandoned for appellate review claim that liability could be imposed on employers of minors who committed criminal conduct without regard to whether conduct was foreseeable, in individual's negligence action against camp operators for criminal act of their 16-year-old employee, who sexually abused attendee; individual cited no authority and presented no persuasive argument in support of claim.

Kalamazoo Circuit Court; LC No.2013–000234–NO.

Before: MARKEY, P.J., and MURPHY and STEPHENS, JJ.

**Opinion**

PER CURIAM.

**\*1**  Plaintiff Kristen Smith, as next friend of A.S., appeals by leave granted the trial court's orders granting summary

disposition to defendants, Bronson Lifestyle Improvement and Research Center Company, a/k/a, Bronson Athletic Club (Bronson or BAC), and MedSport Enterprise Inc, a/k/a, MedSport Athletic Clubs, LLC (MedSport).[1] Plaintiff asserted claims of direct negligence and vicarious liability for the criminal act of defendants' employee,[2] 16–year–old Allan Dueweke, who sexually abused seven-year-old A.S. while she attended defendants' camp. The trial court entered its first order on April 25, 2014, granting defendants summary disposition on plaintiff's claims of vicarious liability because plaintiff presented no evidence that would permit a reasonable jury to find that defendants knew, or that a reasonable employer should have known, that (1) Dueweke had committed similar misconduct in the past, and (2) Dueweke had the propensity to commit such criminal acts in the future. On May 6, 2014, the trial court granted defendants' summary disposition as to plaintiff's claims that defendants were negligent in the hiring, supervision and training of Dueweke. The trial court reasoned that because Dueweke's criminal conduct was not foreseeable, a duty of care did not arise on the part of defendants to protect campers from Dueweke's unforeseeable actions. We affirm.

**[1]**    This Court reviews de novo the trial court's grant or denial of a motion for summary disposition. *Maiden v. Rozwood,* 461 Mich. 109, 118, 597 N.W.2d 817 (1999). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence. *Corley v. Detroit Bd. of Ed.,* 470 Mich. 274, 278, 681 N.W.2d 342 (2004). When considering a motion under MCR 2.116(C)(10), the trial court and this Court must view the proffered evidence in the light most favorable to the party opposing the motion. *Maiden,* 461 Mich. at 120, 597 N.W.2d 817. A trial court properly grants the motion when the proffered evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Brown v. Brown,* 478 Mich. 545, 552, 739 N.W.2d 313 (2007). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v. Gen. Motors Corp.,* 469 Mich. 177, 183, 665 N.W.2d 468 (2003).

Plaintiff argues on appeal that she produced sufficient evidence from which a jury could find that the corporate defendants knew or should have known of Dueweke's

propensity to commit criminal sexual contact (CSC) so as to render defendants vicariously liable for Dueweke's actions. Plaintiff points to an incident about two weeks before the assault on A.S. in which Dueweke permitted three female campers to jump on him and pull at his shirt and was disciplined for it.[3] Plaintiff asserts this incident was sexual in nature because body parts could have been exposed and that the trial court's characterization of this incident as "inaction" was improper fact-finding. Plaintiff argues that she produced affidavits of two experts that this incident rendered Dueweke's subsequent CSC reasonably foreseeable. Plaintiff also notes that Michael Rowe, BAC Executive Director, testified that Dueweke should not have been left alone with the campers, and if he had not been, the incident would not have happened. We conclude the trial court properly ruled that the horseplay incident[4] was insufficient to place defendants on notice of Dueweke's propensities so as to render his later criminal assault on A.S. foreseeable.

**\*2** The trial court properly granted defendants summary disposition of plaintiff's claims based on vicarious liability for the intentional tort of defendants' employee. Despite plaintiff's expert's opinion, plaintiff presented no evidence that would permit a reasonable jury to find that defendants knew, or that a reasonable employer should have known, that (1) Dueweke had committed similar misconduct in the past, and (2) Dueweke had the propensity to commit sexual assault in the future. See *Hamed v. Wayne Co.,* 490 Mich. 1, 12, 803 N.W.2d 237 (2011), and *Brown,* 478 Mich. at 553–556, 563, 739 N.W.2d 313 (the pertinent standard is what a *reasonable* employer knew or should have known, not that of a child abuse expert trained to identify patterns of pre-abuse "grooming" behaviors).

"The general rule of respondeat superior is that an employer is not liable for the torts of its employees who act outside the scope of their employment." *Zsigo v. Hurley Medical Ctr.,* 475 Mich. 215, 217, 716 N.W.2d 220 (2006); see also *Salinas v. Genesys Health Sys.,* 263 Mich.App. 315, 317, 688 N.W.2d 112 (2004) (noting that "liability cannot be imposed against an employer for torts intentionally committed by an employee that are outside the scope of the employment"). Further, Michigan courts have recognized that criminal conduct of an employee is, in general, unforeseeable and outside the scope of employment of a legitimate business. See *Brown,* 478 Mich. at 555, 739 N.W.2d 313 ("an

employer can assume that its employees will obey our criminal laws"). Our Supreme Court has explained:

> [W]e have consistently held that an employer's liability for the criminal acts of its employees is limited to those acts it can reasonably foresee or reasonably should have foreseen. This is because we should not expect employers to assume that their employees will disobey the law. Criminal conduct is inherently arbitrary and highly unpredictable.
>
> [*Hamed,* 490 Mich. at 13, 803 N.W.2d 237.]

But the general rule does not always apply, and our Supreme Court has provided clear rules for determining when an exception might exist to the general rule of employer non-liability for the intentional torts of an employee. An employer may be held vicariously liable for an employee's criminal conduct when "an employer had (1) actual or constructive knowledge of prior similar conduct and (2) actual or constructive knowledge of the employee's propensity to act in accordance with that conduct." *Hamed,* 490 Mich. at 12, 803 N.W.2d 237. To satisfy the first prong of this test, there must be sufficient similarity between the prior conduct of the employee and the conduct at issue so as to lead a reasonable employer to recognize the prior conduct as an "inevitable prelude," or such that would "inexorably lead to criminal sexual conduct," *Brown,* 478 Mich. at 555, 739 N.W.2d 313, or "inevitably lead to acts of criminal sexual conduct." *Hamed,* 490 Mich. at 16, 803 N.W.2d 237.

The trial court correctly ruled that Dueweke's permitting female campers to jump on him and pull at his clothing was not at all similar to his future commission of criminal sexual contact in a locked closet that would place defendants on notice of an imminent risk of harm to campers. *Id.; Brown,* 478 Mich. at 555, 739 N.W.2d 313. The evidence showed defendants performed a criminal background check on Dueweke that disclosed nothing and were familiar with him from his past attendance as a camper. Plaintiff presented no evidence of any similar sexual misconduct in Dueweke's

past that defendants could have but did not discover. Further, Dueweke's passive violation of workplace rules by allowing physical contact with female campers is not such "that would afford a reasonable employer notice of a propensity to rape or commit some other type of criminal conduct[.]" *Brown, 478 Mich. at 563, 739 N.W.2d 313.* Because there was no other evidence from which to infer that defendants had actual or constructive knowledge that Dueweke committed similar misconduct in the past and no other evidence from which to infer defendants had actual or constructive knowledge that Dueweke had a propensity to commit criminal sexual conduct, defendants cannot be held vicariously liable for his intentional tort of CSC against A.S. *Hamed, 490 Mich. at 12, 16, 803 N.W.2d 237; Brown, 478 Mich. at 563, 739 N.W.2d 313.* Consequently, the trial court correctly ruled as a matter of law that no basis existed to impose vicarious liability on defendants for Dueweke's intentional tort of CSC on A.S. *Zsigo, 475 Mich. at 221, 231, 716 N.W.2d 220; Salinas, 263 Mich.App. at 317, 688 N.W.2d 112.*

**\*3** Plaintiff argues that the trial court erred by engaging in improper fact finding at the summary disposition phase, see *Featherly v. Teledyne Industries, Inc., 194 Mich.App. 352, 357, 486 N.W.2d 361 (1992)* (a trial court may not make factual findings or weigh the credibility of witnesses when deciding a summary disposition motion), by characterizing the incident of female campers jumping on Dueweke as passive, innocent horseplay, and, therefore, not similar to the future CSC. This argument is without merit. First, in a negligence action the trial court must determine as a question of law whether a defendant owes the plaintiff a duty, *Brown, 478 Mich. at 552, 739 N.W.2d 313,* and second, under MCR 2.116(C)(10), the trial court must determine whether the plaintiff has produced sufficient evidence from which a reasonable jury could find as a matter of fact that the defendant breached the duty. In this case, whether a duty exists—the breach of which imposes vicarious liability on defendants—depends on plaintiff's producing sufficient evidence of foreseeablity under the test stated in *Hamed, 490 Mich. at 12, 803 N.W.2d 237.* In this regard, evidence is sufficient to withstand summary disposition if it raises a question of fact on which reasonable minds might differ. *West, 469 Mich. at 183, 665 N.W.2d 468.* If reasonable minds could not differ in concluding that the *Hamed* standard was not satisfied, the issue is one of law for the trial court to decide. *Hiner v. Mojica, 271 Mich.App. 604, 610, 722 N.W.2d 914 (2006).* The trial court's characterization of the camper horseplay incident with three female campers as a passive response by Dueweke is not improper judicial fact-finding; it is the proper judicial determination that reasonable minds could not differ and find such conduct similar to the future CSC Dueweke committed where he lured a single camper into a locked closet and forced sexual contact. As a matter of law, the evidence was insufficient to satisfy the first prong of the *Hamed* standard—similar prior conduct.

The trial court also properly determined that the affidavits of plaintiff's experts were insufficient to create a question of fact regarding satisfying the second prong of the *Hamed* standard—"actual or constructive knowledge of the employee's propensity to act in accordance with that conduct." *Hamed, 490 Mich. at 12, 803 N.W.2d 237.* Although Kathleen Faller, an expert in the field of child sexual abuse, averred that the horseplay incidents would have been recognized as "foreseeable grooming behaviors" by a "camp director or supervisor with proper training on child sexual abuse awareness and prevention," plaintiff's reliance on this evidence must fail. First, Faller herself notes specialized training is necessary to recognize "grooming behavior." But the law does not require such training, and the evidence must be such to place a *reasonable employer* on notice of the employee's propensity. See *Brown, 478 Mich. at 553– 556, 563, 739 N.W.2d 313.* Thus, the trial court correctly observed that even if plaintiff's expert could predict future criminal activity based on the horseplay incidents, the trial court could not alter the legal standard of foreseeability on the basis of the expert's specialized training. Moreover, the trial court properly followed our Supreme Court's admonition against using hindsight to determine whether an employer might have been placed on notice of future criminal conduct by an employee. The Court in *Brown,* 478 Mich. 555–556, rejected permitting "a jury to impose liability on an employer if, in retrospect, somehow the harm was avoidable." The Court would "not transform the test of foreseeability into an 'avoidability' test that would merely judge in hindsight whether the harm could have been avoided." *Id. at 556;* see also *Hamed, 490 Mich. at 14, 803 N.W.2d 237.* Consequently, the trial court correctly ruled that reasonable minds could not differ that Dueweke's sexual contact with A.S. was not foreseeable by a reasonable employer; therefore, defendants were entitled to judgment as a matter of law of plaintiff's claims based on vicarious liability.

**\*4** **[2]** Plaintiff next argues that the trial court erred by granting defendants summary disposition on issues of direct negligence in hiring, training and supervising Dueweke. Plaintiff contends that whether Dueweke's acts were reasonably foreseeable was a question of fact for the jury. Again, plaintiff relies on Faller's affidavit that with "proper training on child sexual abuse awareness and prevention," defendant's managers and supervisors would have recognized Dueweke's conduct as "potential grooming behavior."

Plaintiff also argues that defendants' camp program constituted an unlicensed child care organization under 1973 PA 116, MCL 722.115(1). [5] Plaintiff asserts that under Mich. Admin Code, R 400 .5101(c) & (d), defendants' camp was a "center," which required "caregivers" to be at least 17 years old. [6] Plaintiff also argues that defendants operated a "day camp," Mich. Admin Code, R 400.11106(1)(i), [7] and that Mich. Admin Code, R 400.11111(2)(a) required one adult staff member for every 10 campers below the age of 13. Plaintiff contends these rules are relevant to the issue of foreseeability and whether defendants were negligent because the violation of administrative rules and regulations are evidence of negligence.

Plaintiff further argues that the trial court erred by dismissing her direct negligence claims because Bronson's Executive Director, Michael Rowe, testified that Dueweke should not have been left alone with the campers and that defendants should have but did not comply with licensing requirements. Last, plaintiff argues that the general rule that an employee's criminal conduct is unforeseeable does not apply to minors because minors "cannot be held fully accountable for their actions" and an employer of a minor should therefore be accountable.

We conclude that the trial court correctly granted defendants summary disposition on plaintiff's claims of negligent hiring, training and supervision of Dueweke. For the same reasons discussed regarding plaintiff's claims of vicarious liability, there is no evidence creating a question of fact that defendants knew or should have known that Dueweke might sexually assault a camper. Because Dueweke's criminal conduct was not foreseeable, defendants did not and could not have had a duty of care to protect campers from Dueweke's unforeseeable criminal actions. *Brown,* 478 Mich. 552–559; see also *Babula v. Robertson,* 212 Mich.App. 45, 51–52,

536 N.W.2d 834 (1995) (holding a babysitter's general duty of care owed to her charge did not extend to protection from unforeseeable CSC committed by babysitter's husband). With respect to alleged agency rule violations, we note that none of the rules plaintiff cites are designed to protect campers from criminal conduct in general or sexual assault in particular. So, even if the trial court erred by ruling that the cited rules do not apply, they do not create a duty to protect campers from criminal sexual conduct. See *Klanseck v. Anderson Sales & Service, Inc.,* 426 Mich. 78, 87, 393 N.W.2d 356 (1986); *Rakowski v. Sarb,* 269 Mich.App. 619, 628 n. 4, 713 N.W.2d 787 (2005).

**\*5** It is axiomatic that the tort of negligence consists of four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Henry v. Dow Chemical Co.,* 473 Mich. 63, 71–72, 701 N.W.2d 684 (2005). "Duty" is a legally recognized obligation to conform to a particular standard of conduct toward another so as to avoid unreasonable risk of harm. *Maiden,* 461 Mich. at 131, 597 N.W.2d 817. If defendants did not have a duty to protect A.S. from the risk of harm that occurred, plaintiff's negligence claim fails as a matter of law. *Id.* at 135, 597 N.W.2d 817; *Cook v. Bennett,* 94 Mich.App. 93, 98, 101, 288 N.W.2d 609 (1979) (unless the defendant owes a duty to the plaintiff, a negligence analysis can proceed no further). Generally, the law will not impose a duty on one party to protect another unless there is a special relationship between them, *Bailey v. Schaaf,* 494 Mich. 595, 604, 835 N.W.2d 413 (2013), or some other special circumstance exists, *Krass v. Tri–County Security, Inc.,* 233 Mich.App. 661, 668, 593 N.W.2d 578 (1999), and the protected party is readily identifiable as foreseeably endangered, *Bailey,* 494 Mich. at 614, 835 N.W.2d 413; *Marcelletti v. Bathani,* 198 Mich.App. 655, 665, 500 N.W.2d 124 (1993).

In this case, the trial court and the parties analyze plaintiff's claims on the basis that a special relationship existed between defendants and A.S. that was similar to that between teacher and student, *Gaincott v. Davis,* 281 Mich. 515, 518, 275 N.W. 229 (1937) ("the relation of a teacher to a pupil is that of one *in loco parentis* ") or that between babysitter and child, *Babula,* 212 Mich.App. at 49, 536 N.W.2d 834. "A teacher owes a duty to exercise reasonable care over students in his or her charge." *Cook,* 94 Mich.App. at 98, 288 N.W.2d 609.

And, "a baby-sitter is under a common-law duty to exercise prudent and reasonable care to protect from injury a child for whom she is caring." 🚩 *Babula,* 212 Mich.App. at 49, 536 N.W.2d 834. Accepting that a duty of care arises out of the special relationship between defendants while acting *in loco parentis* with respect to campers, the duty would not extend to protecting campers form unforeseeable criminal conduct. 🚩 *Id.* at 51–52, 536 N.W.2d 834. Consequently, plaintiff's claims that defendants are liable for negligence in hiring, training and supervising Dueweke fail because there is no evidence that defendants knew or should have known Dueweke might commit CSC on a camper. A survey of pertinent cases decided by our Supreme Court and this Court confirms this conclusion.

**[3]** We first note, however, that as she did in the trial court, plaintiff presents no argument that defendants were negligent in training Dueweke. Further, the undisputed evidence shows that defendants trained Dueweke to not have physical contact with campers, and Dueweke knew that his conduct was wrong without such training. It appears that plaintiff's argument regarding negligent training is that defendants' managers and supervisors should have been trained to recognize behaviors that might identify persons prone to commit CSC. But plaintiff's complaint did not assert this theory and plaintiff cites no legal authority requiring such training or removes child sexual abuse from the rule requiring foreseeability before a duty will arise to protect against criminal conduct. Therefore, plaintiff's claim of negligent training is abandoned.

See 🚩 *Houghton v. Keller,* 256 Mich.App. 336, 339–340, 662 N.W.2d 854 (2003) (cursory treatment of an issue with little or no citation of supporting authority constitutes abandonment of an issue).

**\*6** Case law makes clear that foreseeability of the risk or danger is a requisite to the existence of a duty to protect an identifiable person or class of people from criminal conduct.

In 🚩 *Hersh v. Kentfield Builders, Inc.,* 385 Mich. 410, 189 N.W.2d 286 (1971), the plaintiff alleged that the defendant was negligent in hiring and retaining an employee who assaulted the plaintiff. The trial court allowed the case to go to the jury on the basis that there was evidence from which the jury could find that the defendant knew or should have known of the employee's propensities and criminal record. 🚩 *Id.* at 413–414, 189 N.W.2d 286. Specifically, there was evidence that "the employer defendant [learned] of a prior criminal record during the time of his employment." 🚩 *Id.* at

413, 189 N.W.2d 286. Our Supreme Court held that whether the defendant-employer knew or should have known of the employee's vicious propensities was a question of fact for the jury. *Id.* Thus, the issue decided in *Hersh* was whether the evidence was sufficient to satisfy the long-standing requirement for claims alleging an employer negligently hired or retained an employee: " ' 'An employer who knew or should have known of his employee's propensities and criminal record before commission of an intentional tort by employee upon customer who came to employer's place of business would be liable for damages to such customer.' " 🚩 *Id.* at 412, 189 N.W.2d 286, quoting 🚩 *Bradley v. Stevens,* 329 Mich. 556, 46 N.W.2d 382 (1951) (headnote 2). Thus, *Hersh* provides that in a claim of negligence in hiring and retaining an employee by a plaintiff injured by the employee's criminal conduct, the plaintiff must show that the defendant-employer knew or should have known that the employee-actor had committed prior similar acts *and* had the propensity to do so again.

The same standard applies with respect to claims against an employer alleging negligent supervision of an employee.

In 🚩 *Millross v. Plum Hollow Golf Club,* 429 Mich. 178, 181, 413 N.W.2d 17 (1987), the Court addressed whether the exclusive remedy of the dramshop act precluded such a claim. The Court held that the plaintiff's "negligence claim that arose out of the selling, giving, or furnishing of alcoholic liquor by a liquor licensee" was "preempted by the exclusive remedy of the dramshop act," and further held "that the plaintiff has failed to assert a valid cause of action on the basis of negligent supervision of an employee[.]" *Id.* The Court addressed the latter claim because "the dramshop act does not control or abrogate actions arising out of conduct of a tavern owner other than the selling, giving, or furnishing of intoxicants, provided that the alleged unlawful or negligent conduct is in breach of a duty recognized as a basis for a cause of action at the common law." 🚩 *Id.* at 192–193, 413 N.W.2d 17. The plaintiff alleged that the defendant's employee had worked a 13–hour shift and consumed alcoholic beverages before attempting to drive home. The employee killed the plaintiff's husband in an auto accident. The Court held that these facts did not establish a common-law duty "because it has not been alleged that the defendant *knew or should have known* of the existence of any *special circumstances* regarding [the employee] that could establish a duty of care to third persons." 🚩 *Id.* at 197–198, 413 N.W.2d 17 (emphasis added). The Court also opined that the plaintiff did not allege

Case 1:25-cv-00442-JMB-SJB ECF No. 175-5, PageID.2865 Filed 03/06/25 Page 58 of 66

Smith v. Bronson Lifestyle Imp. and Research Center Co., Not Reported in N.W. Rptr....

2015 WL 8932816

facts to show a foreseeable risk such that an independent duty to supervise would arise. 📁 *Id.* at 198, 413 N.W.2d 17.

**\*7** Then, in 📁 *Brown,* 478 Mich. 545, 739 N.W.2d 313, the Court made plain that the same requirement of foreseeability that applies to claims of vicarious liability also applies to claims of direct negligence. In *Brown,* the defendant Michael Brown (Brown), raped the plaintiff Lisa Brown (no relation), who was a security guard employed by the firm hired by Brown's employer to provide security. "Brown had no prior criminal record, no history of violent behavior, and certainly no history indicating that he harbored a propensity to commit rape." 📁 *Id.* at 547, 739 N.W.2d 313. The plaintiff sought to hold Brown's employer (Samuel–Whittar Steel) liable on the ground that Brown "routinely made crude, sexually explicit comments to her when they interacted at defendant's facility." 📁 *Id.* at 549, 739 N.W.2d 313. The plaintiff had complained to Brown's employer about Brown's lewd comments at least three times before the rape. 📁 *Id.* at 549, 739 N.W.2d 313. Plaintiff sued Brown's employer on theories of both vicarious liability and direct negligence asserting "that because she had complained about Brown's lewd comments, defendant had notice of Brown's propensity to commit violent acts and therefore defendant was negligent in failing to take reasonable steps to prevent the rape." 📁 *Id.* at 550, 739 N.W.2d 313. The trial court granted the defendant's motion for summary disposition because "there was no genuine issue of material fact concerning whether defendant was liable for the unforeseen criminal acts of Brown." *Id.* This Court reversed, opining that Brown's "language and the circumstances were sufficient to create a jury question regarding whether Whittar knew or should have known of Michael Brown's violent propensities." 🚩 *Brown v. Brown,* 270 Mich.App. 689, 700, 716 N.W.2d 626 (2006). Our Supreme Court reversed and reinstated the trial court's order granting summary disposition because the defendant-employer "could not reasonably have anticipated that Brown's vulgarities would culminate in a rape." 📁 *Brown,* 478 Mich. at 566, 739 N.W.2d 313.

Our Supreme Court in *Brown* further opined that a duty to prevent the rape never arose on the part of Brown's employer because it had no notice of Brown's propensity to commit rape. 📁 *Id.* at 552–562, 739 N.W.2d 313. The Court explained that the employee's lewd and offensive comments were insufficient and that prior acts or comments that would

"convey an unmistakable, particularized threat of rape" were required to provide such notice. 📁 *Id.* at 547–548, 566, 739 N.W.2d 313. The *Brown* Court incorporated the reasoning of 📁 *MacDonald v. PKT, Inc.,* 464 Mich. 322, 628 N.W.2d 33 (2001), concerning the liability of a premises possessor to invitees for the criminal conduct of third parties, that foreseeability of a specific risk is necessary for a duty to arise. *Brown,* 478 Mich. 553–554. The Court quoted from *MacDonald* that " '[a] merchant can assume that patrons will obey the criminal law ... until a specific situation occurs on the premises that would cause a *reasonable person to recognize a risk of imminent harm to an identifiable invitee.*' " 📁 *Id.* at 554, 📁 628 N.W.2d 33 (emphasis added). "As in *MacDonald,* similar concerns of foreseeability and duty arise in the negligent retention context when we consider whether an employer may be held responsible for its employee's criminal acts." *Id.* Thus, "an employer can assume that its employees will obey our criminal laws" until circumstances occur that "clearly and unmistakably ... would have put *a reasonable employer on notice of an imminent risk of harm to a specific victim.*" 📁 *Id.* at 555, 📁 628 N.W.2d 33 (emphasis added). In sum, "if an employee has not done or said anything that would afford a reasonable employer notice of a propensity to rape or commit some other type of criminal conduct, there is no ... basis for the imposition of tort liability on an employer." 📁 *Id.* at 563, 📁 628 N.W.2d 33.

**\*8** In this case, there is no evidence that Dueweke had ever engaged in criminal conduct in the past and no circumstance —including female campers jumping and pulling on Dueweke's clothing—that "clearly and unmistakably ... would have put a reasonable employer on notice of an imminent risk of harm to a specific victim." 📁 *Id.* at 555, 📁 628 N.W.2d 33. Furthermore, the *Brown* Court held that liability of an employer could not be based on a determination that an occurrence was foreseeable because, in hindsight, the "the harm could have been avoided." 📁 *Id.* at 555– 556, 739 N.W.2d 313. Thus, the horseplay incidents and the opinion of plaintiff's expert that specialized training might have helped defendants recognize that such activity might have been grooming activity does not create a duty on the part of defendants that would support plaintiff's direct negligence claims. Horseplay does not "convey an unmistakable, particularized threat of rape," 📁 *id.* at 548, 739 N.W.2d 313, such that a reasonable employer (not a child sex

abuse expert), would have "clearly and unmistakably" been put on notice of "an imminent risk of harm" to campers. *Id.* at 555, 739 N.W.2d 313. Because Dueweke's criminal act was not reasonably foreseeable, no duty arose on defendants' part to protect A.S. from Dueweke's criminal assault. *Id.* 552–555, 739 N.W.2d 313.

This Court reached a similar result in *Babula,* 212 Mich.App. 45, 536 N.W.2d 834, decided a decade before *Brown.* The facts of *Babula,* in which the husband of a babysitter sexually molested the nine-year-old who was entrusted to the babysitter's care, are analogous to the present case. The husband pleaded guilty to a charge of second-degree criminal sexual conduct and the child's mother brought a civil action against him and his wife, the babysitter. *Id.* at 47, 536 N.W.2d 834. The trial court granted the babysitter's motion for summary disposition because a duty to protect the child from her husband's criminal conduct did not arise because she had no reason to suspect that her husband would molest the child. This Court discussed various factors that may give rise to a duty of care, including whether the harm was foreseeable, and noted that some "jurisdictions have held that a baby-sitter is under a common-law duty to exercise prudent and reasonable care to protect from injury a child for whom she is caring." *Id.* at 49, 536 N.W.2d 834. The Court also noted that duty of care may be imposed "where a defendant voluntarily assumed a function that he was under no legal obligation to assume." *Id.* at 50, 536 N.W.2d 834. The Court reasoned that the babysitter had "voluntarily assumed control over the child's safety and, thus, had a duty to use reasonable care in ensuring that the child's well-being was not endangered." *Id.* at 51, 536 N.W.2d 834. But because her husband's criminal conduct was "wholly unforeseeable," the Court held that the babysitter's "general duty of care while baby-sitting did not extend to the specific harm done in the immediate case." *Id.* at 51–52, 536 N.W.2d 834. The Court also held that the fact that the husband was intoxicated was not sufficient to put his wife, the babysitter, on notice that he might molest the child. *Id.* at 53, 536 N.W.2d 834. Similarly, in this case, the prior horseplay did not put defendants on notice that Dueweke would later commit CSC. Consequently, defendants' general duty of care regarding campers did not extend to protecting them from the unforeseeable criminal conduct of Dueweke. *Id.* at 51–52, 536 N.W.2d 834.

**\*9** Plaintiff's allegations of agency rule violations do not alter the conclusion that defendants did not have a duty to protect campers from the unforeseeable criminal conduct of Dueweke. While a duty may arise from a statutory obligation, *Cipri v. Bellingham Frozen Foods, Inc.,* 235 Mich.App. 1, 15, 596 N.W.2d 620 (1999), plaintiff did not allege that defendants breach of a statutory duty resulted in her injuries. Rather, plaintiff pleaded common-law negligence in hiring, training, and supervising Dueweke. She alleges that the purported statutory and rule violations are evidence of negligence and the violations tend to show that Dueweke's criminal conduct was foreseeable. See *Beals v. Walker,* 416 Mich. 469, 481, 331 N.W.2d 700 (1982) ("Violations of administrative rules and regulations are evidence of negligence.") But establishing negligence on the basis of a statutory violation requires showing that "[1] the statute is intended to protect against the result of the violation; [2] the plaintiff is within the class intended to be protected by the statute; and [3] the evidence will support a finding that the violation was a proximate contributing cause of the occurrence." *Klanseck,* 426 Mich. at 87, 393 N.W.2d 356. Here, the rules plaintiff cites are not intended to protect against child sexual abuse. Moreover, assuming that the rules plaintiff cites apply, we conclude their violation is not relevant to showing that defendants knew or should have known that Dueweke was prone to commit child sexual abuse. So, the alleged rule violations do not establish a pertinent statutory duty or provide evidence of circumstances giving rise to a common-law duty. In short, the alleged statutory and rule violations do not render Dueweke's conduct foreseeable.

Moreover, assuming that defendants' children's day camp was a "child care organization" under 1973 PA 116, MCL 722.115(1), the pertinent statutory duty that would arise is found in the child protection law, 1975 PA 238. In *Phillips v. Deihm,* 213 Mich.App. 389, 397398, 541 N.W.2d 566 (1995), this Court held "that a person over eighteen years of age who is responsible for a child, as defined by MCL 722.622(i); MSA 25.248(2)(i), has a duty to act reasonably to prevent the sexual abuse of that child." The plaintiff in *Phillips* brought a civil action alleging his grandfather (Duwayne Deihm) sexually abused him over an eight-year period of time and also sued Duwayne's wife (Opal) alleging that she "was aware of, but failed to prevent, the sexual abuse." *Phillips,* 213 Mich.App. at 392, 541 N.W.2d 566. The Court noted that generally "there is no duty to protect

Case 1:25-cv-00442-JMB-SJB    ECF No. 17-5,    PageID.1387    Filed 08/06/25    Page 56 of 66
Smith v. Bronson Lifestyle Imp. and Research Center Co., Not Reported in N.W. Rptr....
2015 WL 8932816

against the criminal acts of a third person absent a special relationship between the defendant and the plaintiff or the defendant and the third person." *Id.,* at 397, 541 N.W.2d 566, citing *Babula,* 212 Mich.App. at 49, 536 N.W.2d 834. In this case, however, the Court ruled "Opal's alleged failure to act could constitute criminal neglect," under then MCL 722.622(d)(ii), and held that a duty of protection arose by statute because Opal met the definition of a person responsible for the child's health or welfare under then MCL 722.622(i). *Phillips,* 213 Mich.App. at 397–398, 541 N.W.2d 566.

*10 Although MCL 722.622 has been amended several times over the years, the essence of the provisions the *Phillips* Court applied to impose a duty of protection remain essentially same and the current version of the statute, in pertinent part, provides:

As used in this act: ...

(g) "Child care organization" means that term as defined in section 1 of 1973 PA 116, MCL 722. 111.

* * *

(j) "Child neglect" means harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:

* * *

(ii ) Placing a child at an unreasonable risk to the child's health or welfare *by failure of* the parent, legal guardian, or other person responsible for the child's health or welfare *to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk.*

* * *

(u) "Person responsible for the child's health or welfare" means a parent, legal guardian, person 18 years of age or older who resides for any length of time in the same home in which the child resides, or, except when used in section 7(2)(e) or 8(8), nonparent adult; or an owner, operator, volunteer, or employee of 1 or more of the following:

(i ) A licensed or registered child care organization....

[ MCL 722.622 (Emphasis added).]

Consequently, the pertinent statutory duty with respect to a "child care organization" that is required to be licensed or registered under 1973 PA 116 is very similar to the common-law duty of care when acting *in loco parentis.* The common law duty does not extend to protection against unforeseeable risk of criminal conduct, even when one is acting *in loco parentis. Brown,* 478 Mich. 552–559; *Babula,* 212 Mich.App. at 49, 51–52, 536 N.W.2d 834. The statutory duty to prevent child abuse on the part of a child care organization or its employees does not arise unless the child care organization or its employee "has, or should have, knowledge of the risk" and has the ability to intervene to eliminate the risk. MCL 722.622(j)(ii ). A common-law duty did not arise in this case because Dueweke's criminal conduct was unforeseeable. See *Brown,* 478 Mich. 552–559; *Babula,* 212 Mich.App. at 49, 51–52, 536 N.W.2d 834. For the same reason, no duty arose under MCL 722.622(j)(ii ) because nothing showed that defendants knew, or should have known, of the risk.

Next, plaintiff argues that her claim should survive summary disposition because Bronson's Executive Director, Michael Rowe, expressed regret and agreed that Dueweke should not have been left alone with the campers and that defendants should have been licensed. This argument fails because Rowe's comments do not render Dueweke's conduct foreseeable. And, our Supreme Court has rejected allowing "a jury to impose liability on an employer if, in retrospect, somehow the harm was avoidable." *Brown,* 478 Mich. 555–556. The Court would "not transform the test of foreseeability into an 'avoidability' test that would merely judge in hindsight whether the harm could have been avoided." *Id.* at 556; see also *Hamed,* 490 Mich. at 14, 803 N.W.2d 237. Simply stated, Rowe's comments are not evidence that defendants knew or should have known of prior similar conduct by Dueweke or that Dueweke harbored a propensity to engage in such conduct. *Brown,* 478 Mich. at 547–548, 557, 563, 739 N.W.2d 313.

*11 [4] Finally, plaintiff cites no authority and presents no persuasive argument in support of her argument that liability may be imposed on employers of minors who commit criminal conduct without regard to whether the

Case 1:25-cv-00442-JMB-SJB    ECF No. 23-5, PageID.288    Filed 07/08/25    Page 61 of 66

Smith v. Bronson Lifestyle Imp. and Research Center Co..., Not Reported in N.W. Rptr....

2015 WL 8932816

conduct is foreseeable. This argument is therefore abandoned.

*Houghton,* 256 Mich.App. at 339–340, 662 N.W.2d 854 (cursory treatment of an issue with little or no citation to authority constitutes abandonment of an issue).

In sum, the trial court properly granted defendants summary disposition regarding plaintiff's claims they were vicariously liable for Dueweke's intentional torts because there is no evidence that would permit a reasonable jury to find that defendants knew, or that a reasonable employer should have known, that (1) Dueweke had committed similar misconduct in the past, and (2) Dueweke had the propensity to commit criminal sexual conduct in the future. Furthermore, because Dueweke's criminal conduct was not foreseeable, a duty of care did not arise on the part of defendants to protect campers from Dueweke's unforeseeable criminal actions. Consequently, plaintiff's claims of direct negligence fail.

We affirm and remand for further proceedings. We do not retain jurisdiction. As the prevailing parties, defendants may tax costs pursuant to MCR 7.219.

STEPHENS, J. (concurring).

I agree with the majority conclusion to affirm and its analysis that defendants cannot be held vicariously liable for Dueweke's intentional torts when Dueweke's criminal conduct was not foreseeable, as defined in *Hamed v. Wayne Co.,* 490 Mich. 1, 12, 803 N.W.2d 237 (2011). I write separately because I believe that the Bronson Athletic Club (BAC) summer kids' camp program fell within the purview of the Child Care Organizations Act, *MCL 722.111 et seq.,* as a child caring institution.

Under MCL 722.111(b),

> "Child caring institution" means a child care facility that is organized for the purpose of receiving minor children for care, maintenance, and supervision, usually on a 24–hour basis, in buildings maintained by the child caring institution for that purpose, and operates throughout the year. An educational program may be provided, but the educational program shall not be the primary purpose of

the facility. Child caring institution includes a maternity home for the care of unmarried mothers who are minors and an agency group home, that is described as a small child caring institution, owned, leased, or rented by a licensed agency providing care for more than 4 but less than 13 minor children. Child caring institution also includes institutions for developmentally disabled or emotionally disturbed minor children. Child caring institution does not include a hospital, nursing home, or home for the aged licensed under article 17 of the public health code, 1978 PA 368, MCL 333.20101 to 333.22260, a boarding school licensed under section 1335 of the revised school code, 1976 PA 451, MCL 380.1335, a hospital or facility operated by the state or licensed under the mental health code, 1974 PA 258, MCL 330.1001 to 330.2106, or an adult foster care family home or an adult foster care small group home licensed under the adult foster care facility licensing act, 1979 PA 218, MCL 400.701 to 400.737, in which a child has been placed under section 5(6).

*12 The BAC program, while not a 24–hour operation, serves the purpose and operates in the manner described in the statute. The BAC's program was advertised as a five-day summer program for children aged 6–12. It operated from 9 a.m. to 3 p.m. with before and after care options. The program also operated during the school year for days when school was not in session. The program was open to both BAC members and to the general public. Parents who availed themselves of the program were not required to be onsite when their children were in the program.

Despite the guise of its program name as a "camp," the evidence indicates that the BAC operated an all-year round

childcare institution and as such, was subject to licensing rules and regulations appurtenant to childcare institutions.

It is for these reasons that I respectfully concur.

**All Citations**

Not Reported in N.W. Rptr., 2015 WL 8932816

---

### Footnotes

1    Plaintiff's claims against Dueweke via defendant Sherry Gesmundo, his mother and next friend, remain unaffected by these orders. Consequently, reference to defendants in this opinion means only the corporate defendants.

2    MedSport managed the BAC under contract with Bronson and employed Dueweke as a camp counselor. But for purposes of this appeal both Bronson and MedSport do not dispute that they were Dueweke's employer and present a unified position regarding plaintiff's claims.

3    From the excerpts of Dueweke's deposition that plaintiff cites, it appears that two Medsport employees (Lindsey Ralya, program director, and Valentine Tinker, head counselor) counseled Dueweke to not allow female campers to have physical contact with him but that this counseling was for the same incident. Dueweke testified that a similar instance with the same three campers had occurred the day before the incident for which he was counseled. Dueweke further testified that after being counseled, the same three girls attempted on at least one occasion to engage in horseplay with him, but that he discouraged their behavior by telling them "no" and "when they tried to grab up on me, I took their hands off me." None of these three campers were present at the after-camp session when the CSC incident occurred.

4    Our use of the term "horseplay" in this opinion refers to camper-initiated physical contact and is how the trial court consistently referenced the conduct. For consistency, we use this term in this opinion.

5    MCL 722.111(1)(a) defines a "child care organization" as "a governmental or nongovernmental organization *having as its principal function receiving minor children for care,* maintenance, training, and supervision, notwithstanding that educational instruction may be given." (Emphasis added). It is unclear whether defendants had as their "principal function receiving minor children for care." See e.g., *Barry Co. Probate Court v. Dep't of Social Services,* 114 Mich.App. 312, 318, 319 N.W.2d 571 (1982): "[T]he probate court is not a 'child care organization' ... [because] the probate court's principal function is not the receiving of minor children."

6    These rules have been rescinded effective January 2, 2014. See 2013 MR 13 (08/01/2013).

7    A "day camp" is a "camp," Mich. Admin Code, R 400.11101(1)(e), as defined by 1973 PA 116, MCL 722. 111. See n. 4, *supra.* A "children's camp" is defined as "a residential, day, troop, or travel camp that provides care and supervision and is conducted *in a natural environment* for more than 4 children, apart from the children's parents, relatives, or legal guardians, for 5 or more days in a 14–day period." MCL 722.111(d) (emphasis added). State investigator Carol Mullen noted "that the summer camp at Bronson Athletic Camp does not meet the definition of 'camp' under this statute. The definition of 'camp' in the State of Michigan requires that the camp be primarily an outdoor facility."

---

**End of Document**                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 475285

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

In the Matter of John DOE, Minor.

Richard ROE, Plaintiff–Appellant,

v.

UNIVERSITY OF DETROIT JESUIT HIGH SCHOOL AND ACADEMY, Defendant–Appellee,

and

Karl KISER and Susan Rowe, Defendants.

No. 264679.
|
Feb. 28, 2006.

**Synopsis**

**Background:** Father of child who was sexually assaulted on premises of private high school during school event brought negligence action against school, school president, and school principal. The Circuit Court, Wayne County, entered summary judgment in favor of defendants. Father appealed.

**Holdings:** The Court of Appeals held that:

[1] high school did not owe a duty to protect child from convicted sexual felon who entered school during school-sponsored activity;

[2] school officials were not liable to child; and

[3] defense of governmental immunity was not applicable to private high school.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (3)

[1]    **Education**  👉  Duty to Protect Against Intentional Injuries

Private high school did not owe a duty to protect child from convicted sexual felon who entered school through unlocked and unattended doors during school-sponsored activity; school was not in session at time of assault, child was not participating in school-sponsored event, child's care and control was not entrusted to school at time of assault, and injury to child was not foreseeable.

[2]    **Education**  👉  Officers and employees

President and principal of private high school were not liable to child who was sexually assaulted by a convicted sexual felon on school premises during school event; school officials did not have direct oversight of child at the time of assault, and school officials did not owe administrative duty to protect child from unforeseeable event that occurred at a time when child's care and control was not entrusted to school.

[3]    **Education**  👉  Immunity in general

Defense of governmental immunity did not apply to negligence action brought against private high school.

Before: HOEKSTRA, P.J., and NEFF and OWENS, JJ.

[UNPUBLISHED]

PER CURIAM.

**\*1** Plaintiff appeals as of right the trial court's order granting summary disposition in this negligence action involving a sexual assault of plaintiff's son that occurred on the premises

2006 WL 475285

of defendant University of Detroit Jesuit High School and Academy. We affirm.

## I

On Saturday, September 18, 2004, plaintiff's twelve-year-old son, identified for purposes of anonymity as "John Doe," was driven by plaintiff to Jesuit High School and Academy where John and his brother attended school. While plaintiff waited in the car, John entered the school premises to locate his brother, who was participating in a school event. While inside the school, John was accosted by a non-student, sexual predator, taken to an unlocked men's restroom, and sexually assaulted.

Plaintiff filed this negligence action against Jesuit High School and Academy, defendant Father Karl Kiser, president of the school, and defendant Susan Rowe, school principal. The trial court granted defendants' motion for summary disposition on the basis that defendants owed no actionable duty under the facts of this case. The court concluded that because plaintiff father was present, the doctrine of *in loco parentis* was inapplicable. Further, because neither Father Kiser or Rowe was present at the school on the day of the assault, neither defendant owed a duty because the existence of a special relationship, and, thus, a duty, is coterminous with presence, *Cook v. Bennett,* 94 Mich.App. 93, 98, 228 N.W.2d 209 (1979).

## II

We review de novo a trial court's decision on a motion for summary disposition. *Beaudrie v. Henderson,* 465 Mich. 124, 129, 631 N.W.2d 308 (2001). A motion for summary disposition brought under MCR 2.116(C)(8), for failure to state a claim upon which relief can be granted, tests the legal sufficiency of the claims on the basis of the pleadings alone. *Id.* at 129–130, 631 N.W.2d 308. All well-pleaded factual allegations are accepted as true and are construed in a light most favorable to the nonmoving party. *Adair v. State,* 470 Mich. 105, 119, 680 N.W.2d 386 (2004); *Alan Custom Homes, Inc. v. Krol,* 256 Mich.App. 505, 508, 667 N.W.2d 379 (2003). The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Adair, supra.*

"The existence of a duty is ordinarily a question for the trial court to decide as a matter of law." *Cook, supra* at 98, 288 N.W.2d 609. If the question of duty involves no disputed factual issues, and the court concludes that a defendant owes the plaintiff no duty, summary disposition is proper. *Id.*

## III

**[1]**   Plaintiff argues that the trial court erred in granting summary disposition of plaintiff's claim that defendants were negligent in leaving the doors to the school unlocked and unattended during school-sponsored activities, thus permitting a convicted sexual felon to enter the school and sexually assault a twelve-year old student in an unlocked restroom. Given the circumstances of this case, we conclude that plaintiff has failed to show defendants owed John a duty. A plaintiff's failure to set forth a breach of any duty warrants a grant of summary disposition in favor of the defendant. *Id.* We therefore find no error in the grant of summary disposition.

**\*2**   As a general rule, a person has no duty to protect others from the criminal acts of third parties. *Williams v. Cunningham Drug Stores, Inc.,* 429 Mich. 495, 498–499, 418 N.W.2d 381 (1988); *Graves v. Warner Bros,* 253 Much App 486, 493; 253 Mich.App. 486, 656 N.W.2d 195 (2002). The rationale underlying this general rule is that criminal activity, by its nature, is normally unforeseeable. *Id.* An exception to the general rule may be found if a special relationship exists between the plaintiff and the defendant, e.g., landlord-tenant, proprietor-patron, employer-employee, residential invitor-invitee, doctor-patient, carrier-passenger, innkeeper-guest. *Id.* at 494, 656 N.W.2d 195; *Marcelletti v. Bathani,* 198 Mich.App. 655, 664, 500 N.W.2d 124 (1993). The rationale underlying the special relationship exception is based on control; in each circumstance one person entrusts his care to another person, who is in control and best able to provide a place of safety. *Williams, supra* at 499, 418 N.W.2d 381.

In the context of schools, this Court has recognized that a special relationship may exist between a school agent or employee and a student, thereby imposing a duty to aid or protect. *Cook, supra* at 98, 101, 288 N.W.2d 609. "At least in a limited sense the relation of a teacher to a pupil is that of one *in loco parentis." Gaincott v. Davis,* 281 Mich.

2006 WL 475285

515, 518, 275 N.W. 229 (1937). With respect to a teacher, a duty to exercise reasonable care for the safety of students is premised on a teacher's responsibility for oversight of student activity, and the duty is therefore coterminous with the teacher's presence at school. ⚑ *Cook, supra* at 98, 288 N.W.2d 609. "[A] teacher must be present to observe and control." *Id.*

Plaintiff argues that a private-tuition-based grade and high school has a special relationship with its students, thus imposing a duty to protect during school-sponsored activities. However, it was undisputed that the assault in this case took place on a Saturday, when school was not in session. Further, although school-sponsored activities were taking place that day, John was not participating in any school-sponsored event. Plaintiff had driven John to the school and waited in the car while the twelve-year-old went into the school to locate his brother. Under these circumstances, we cannot conclude that the special relationship exception for students applies to impose a duty on defendants. The rationale for imposing a duty on school personnel, i.e., *in loco parentis,* is inapplicable under these circumstances. Defendants were not standing *in loco parentis* with respect to John at the time the assault occurred nor was John's control entrusted to defendants at the time of the assault.

Further, the existence of a duty depends in part on foreseeability, i.e., whether it was foreseeable that the actor's conduct may create a risk of harm to the victim. *Goldman v. Phantom Freight, Inc.,* 162 Mich.App. 472, 481, 413 N.W.2d 433 (1987). "Where the events leading to injury are not foreseeable, there is no duty, and summary disposition is appropriate." ⚑ *Johnson v. Detroit,* 457 Mich. 695, 711, 579 N.W.2d 895 (1998). Plaintiff has not shown circumstances to support a conclusion that the injury in this case was foreseeable.

**\*3** While one would like to assume that a child is safe from harm on school premises whenever school-sponsored events are taking place, that is not always the case. We recognize that in certain circumstances, school officials or employees have a duty to protect the safety of students. Plaintiff, however, has failed to show that those circumstances are present in this case.

IV

**[2]** Plaintiff argues that the trial court erred in ruling that defendants were absolved of negligence because they allegedly were not physically present at the school when the assault occurred. Plaintiff further argues that the trial court erred in denying his motion to amend his complaint to allege that defendants were, in fact, physically present at the time the assault occurred. We find no error, albeit for reasons different from those relied on by the trial court.

In rendering its decision, the trial court reasoned that a principal has the same special relationship with a student as a teacher and that the duty stemming from the principal's relationship is therefore coterminous with the principal's presence. See ⚑ *Cook, supra* at 98, 288 N.W.2d 609 (teacher's duty is coterminous with presence at the school). We find this general reasoning flawed because, in this case, there was no allegation that defendants had direct oversight of John at the time of the assault. Unlike a teacher's duty, a principal's duty to a student normally stems from a responsibility for administration of the school and the overall safety of students, rather than from direct oversight. [1] Nonetheless, "[t]his Court will not reverse an order of the trial court if the court reached the right result for the wrong reason." ⚑ *Grand Trunk W R, Inc. v. Auto Warehousing Co.,* 262 Mich.App. 345, 354, 686 N.W.2d 756 (2004).

As discussed above, we find no basis for imposing a duty on defendants in their roles as principal and president of the school under the circumstances of this case. Any error in the court's ruling concerning defendants' presence or the denial of plaintiff's motion to amend his complaint is irrelevant to the outcome and therefore is not error requiring reversal.

V

**[3]** Plaintiff argues that the trial court erred in applying a standard of gross negligence in this case based on a defense of governmental immunity. We find no basis for the trial court's consideration of governmental immunity in this case given the undisputed status of Jesuit High School and Academy as a private school. However, given our reasoning, any error in this regard does not affect the outcome and is therefore not a basis for reversal.

Affirmed.

2006 WL 475285

**All Citations**

Not Reported in N.W.2d, 2006 WL 475285

---

## Footnotes

1    We disagree with the general statement to the contrary in *Brewster v. Smith,* unpublished opinion per curiam of the Court of Appeals, issued June 11, 1999 (Docket No. 204608), slip op p 2 ("By logical extension, a principal has the same special relationship with a student [as a teacher has], the duty stemming from that relationship likewise being coterminous with the principal's presence.")

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.