# EXHIBIT B

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**JERMICHAEL BROWN, JR.,**

     Plaintiff,

v.

**MUSKEGON RIVER YOUTH HOME, LLC; MUSKEGON RIVER YOUTH HOME, INC.; MUSKEGON RIVER YOUTH HOME REAL ESTATE, LLC, d/b/a K & K LAND LLC; MUSKEGON RIVER PATHWAY OF HOPE LLC,** formerly d/b/a **YOUTH OPPORTUNITY CENTER FOR SUCCESS AND INDEPENDENCE; MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT; MECOSTA-OSCEOLA INTERMEDIATE SCHOOL DISTRICT BOARD OF EDUCATION;** and **JOHN/JANE DOES 1-10,** in their official, professional, personal, and individual capacities, jointly and severally;

     Defendants.

JURY TRIAL DEMANDED

CASE NO.: 1:25-cv-442
HON.

---

Elizabeth K. Abdnour (P78203)
Abdnour Weiker, LLP
325 E. Grand River Ave., Ste. 250
East Lansing, MI 48823
Phone: (517) 994-1776
Email: liz@education-rights.com

David Wesley Cornish, Esquire*
Cornerstone Legal Group, LLC
230 South Broad Street, 17th Floor
Philadelphia, PA 19102
Phone: 888-313-1385
Email: dwesley24@gmail.com
*Admission application to be filed

*Attorneys for Plaintiff*

---

1

# COMPLAINT

Plaintiff Jermichael Brown, Jr. ("Brown"), by and through counsel, alleges as follows, against Defendants Muskegon River Youth Home, LLC, Muskegon River Youth Home, Inc.; Muskegon River Youth Home Real Estate, LLC, d/b/a K & K Land, LLC; Muskegon River Pathway of Hope LLC, formerly d/b/a Youth Opportunity Center for Success and Independence; Mecosta-Osceola Intermediate School District; Mecosta-Osceola Intermediate School District Board of Education; and John/Jane Does 1-10, in their official, professional, personal, and individual capacities (collectively "Muskegon River Youth Home", "Muskegon River", "MRYH", the "Facility", the "School", and/or "Defendants"):

## INTRODUCTION

1. At all relevant times to this Complaint, Muskegon River Youth Home operated a residential facility where juveniles were placed by the judicial system or their parents in Evart, Osceola County, Michigan.

2. Muskegon River Youth Home operated from approximately 1996 to approximately 2024.

3. Muskegon River Youth Home was delegated a critical and legislatively mandated public function: (a) to provide a custodial setting for children adjudicated delinquent in juvenile court proceedings, as well as children at risk for delinquency or criminal conduct; (b) to carry out legislatively mandated control and related services; and (c) to provide appropriate sanctions and rehabilitation under the laws governing punishment and treatment of juveniles for criminal acts.

4. Upon information and belief, Muskegon River Youth Home accepted juveniles court-ordered or otherwise placed into their care in Mecosta, Osceola, Kent, Wayne, and other

Michigan Counties, by their respective parents, judges, and/or child protective and care agencies.

5. Upon information and belief, Muskegon River Youth Home offered rehabilitation, education, and support services for youth.

6. Mecosta-Osceola Intermediate School District provided educational services at Muskegon River Youth Home.

7. Instead of fulfilling its promise and solemn responsibility to protect these vulnerable youth, they were exposed to predators and abusers. Muskegon River Youth Home failed to enact safety measures and other policies to protect children; failed to adequately screen, hire, train, and supervise staff; and failed to fulfill its duties under state and federal law and, as a result of the Defendants' misconduct, Plaintiff was physically and sexually abused.

8. Thus, Muskegon River Youth Home acted as an arm of the State of Michigan, where it operated, providing a core public function, and was a state governmental actor for 42 U.S.C. § 1983 liability purposes.

9. Muskegon River Youth Home acted as an arm of the State of Michigan, where it operated, providing a core public function, acting under the color of law for 42 U.S.C. § 1983 liability purposes.

10. Defendants were bound by the "Balanced and Restorative Justice" (BARJ) philosophy which requires that "youth committing delinquent acts are provided with supervision, care, and rehabilitation (the legal basis for treatment of those adjudicated in the juvenile

court system) in a manner that is balanced to include (1) community protection, (2) personal and legal responsibility, and (3) competency development."[1]

11. Defendants violated the clearly established federal Constitutional and statutory rights of Plaintiff pursuant to the Fourth, Eighth, and Fourteenth Amendments, and committed tortious conduct under state law, by subjecting Plaintiff to harmful and degrading physical, mental, and sexual abuse, including using physical force, and by failing to protect him from harm and injuries at the hands of others.

12. Defendants violated Plaintiff's state and federal Constitutional rights to educational opportunities.

13. Defendants caused the injuries and harms to Plaintiff by failing to properly train, supervise, and discipline the all the staff members and, as a result, the John/Jane Doe Defendants, as a matter of practice and custom, engaged in the prohibited conduct on a systematic basis with the expectation that their conduct would not be subject to discipline or sanctions.

14. Further, Defendants failed to protect Plaintiff from assaults and abuse by staff and fellow students at Muskegon River Youth Home.

15. Because of Defendants' conduct, Plaintiff suffered and continues to suffer harm, including emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, all of which adversely affects his daily activities and the full enjoyment of life. Plaintiff has already and will in the future sustain a loss of earnings and earning capacity and has

---

[1] State of Michigan Department of Health & Human Services, Juvenile Justice Field Services Manual, JJM 110 (Oct. 1, 2020), https://mdhhs-pres-prod.michigan.gov/olmweb/EX/JJ/Public/JJM/110.pdf.

and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

16. Accordingly, Plaintiff makes individual claims for the abuse he suffered from Defendants' conduct.

17. Plaintiff brings this lawsuit to hold Defendants accountable for the harm they caused him.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 because Plaintiff alleges actions arising under the laws of the United States, including the Civil Rights Act of 1871, and 42 U.S.C. §§ 1983, 1985, and 1988, and deprivation of his federal constitutional rights to equal educational opportunities and other related federal rights.

19. At all relevant times, the individual Defendants acted under the color of state law and such actions were performed in the course and scope of their employment.

20. This Court has subject matter jurisdiction over individual claims brought by Plaintiff, based on the federal questions raised pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

21. The amount in controversy, without interest and costs, exceeds $75,000.

22. This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that the events and/or omissions giving rise to the claim occurred in this District and Defendants regularly conducted business within this Federal District, including accepting into their care residents from this District and providing care to residents in this District.

## **PARTIES**

24. Plaintiff is **Jermichael Brown, Jr.**, an individual and resident of the United States of America, and the State of Michigan.

25. Defendant **Muskegon River Youth Home, LLC,** is a registered business with a corporate headquarters in Michigan which, at all times relevant to this Complaint, conducted business in Mecosta and Osceola Counties, Michigan.

26. Defendant **Muskegon River Youth Home, Inc.** is a registered business with a corporate headquarters office within Michigan which, at all times relevant to this Complaint, conducted business in Mecosta and Osceola Counties, Michigan.

27. Defendant **Muskegon River Youth Home Real Estate, LLC, d/b/a K & K Land LLC,** is a registered business with a corporate headquarters office within Michigan which, at all times relevant to this Complaint, conducted business in Mecosta and Osceola Counties, Michigan.

28. Defendant **Muskegon River Pathway of Hope LLC, formerly d/b/a Youth Opportunity Center for Success and Independence** is a registered business with a corporate headquarters office within Michigan which, at all times relevant to this Complaint, regularly conducted business in Mecosta and Osceola Counties, Michigan.

29. Defendant **Mecosta-Osceola Intermediate School District (MOISD)** was at all relevant times and continues to be a public educational institution in Mecosta County, Michigan and existing under the laws of the State of Michigan.

30. Defendant **MOISD Board of Education** was at all relevant times and continues to be the governing body of MOISD.

31. Defendants **John/Jane Does 1-10** are current and former owners, managers, administrators, supervisors, teaching staff, medical staff, and others who, at all times relevant to this Complaint, were employed by or were under the control of Muskegon River Youth Home and/or MOISD and abused and/or facilitated the abuse of children at Muskegon River Youth Home.

## COMMON FACTS AND ALLEGATIONS

32. MRYH received children from across the State of Michigan.

33. Children were referred to MRYH based upon Department of Human Services (DHS) referrals, judicial orders, or parent decisions.

34. MOISD provided educational services at MRYH.

### *Jermichael Brown, Jr.'s Abuse at MRYH*

35. Plaintiff was court-ordered to reside at MRYH.

36. At all times relevant hereto, Plaintiff was a victim of abuse during his time at Defendant MRYH's facility by its staff members.

37. Plaintiff avers that MRYH knew or should have known that its employee(s) had committed acts of abuse upon one or more of the other residents of its facility(ies) prior to the time that Plaintiff was subjected to the acts of abuse that are the subject of this filing.

38. Plaintiff describes the following incidents involving assault while he was housed at a MRYH facility:

   a.  Plaintiff was court ordered to live at MRYH when he was a juvenile in approximately 2019, when he was approximately 15 years old.

b. While residing at MRYH, staff members **Dewey**, **Beard**, and **Cast** restrained him and another student using extreme force while Plaintiff was not verbally and/or physically resisting any staff commands.

c. Staff member **Beard** slammed Plaintiff onto the floor.

d. After Plaintiff was slammed onto the floor, staff member Cast slammed Plaintiff's head into a metal bed frame.

e. Both being slammed onto the floor and into the bed frame caused Plaintiff substantial pain.

f. In a separate occasion staff member **Ms. Nicole** went to Plaintiff's room and said "let me see you beat off again, I like what I seen last night," directly referencing wanting to see Plaintiff engage in masturbation.

g. Plaintiff responding to Ms. Nicole's command and began using his hand to stroke his genitals while she observed him doing so.

h. While Plaintiff was being forced to masturbate, Ms. Nicole touched Plaintiff's body while using her phone to show him photos of her naked and in various states of undress.

i. Ms. Nicole told Plaintiff not to inform anyone else that she ordered him to masturbate and/or that she had shown him naked pictures of herself.

j. Plaintiff observed Ms. Nicole and staff member **Tom** punish a separate resident after he told staff members, including one believed to be a supervisor, about the sexual abuse perpetrated by Ms. Nicole.

k. As a result, Plaintiff feared reporting Ms. Nicole's abuse.

39. Specifically, regarding staff member(s), Ms. Nicole it is averred that the physical contact she made with Plaintiff's body was indecent contact for the purpose of arousing the aforementioned individual(s).

40. MRYH supervisors, employees, administrators, and/or staff members implicated who directly caused the harm to Plaintiff and/or threatened Plaintiff were acting within the scope of their duties as employees of MRYH and caretakers to Plaintiff.

41. It is averred MRYH's staff, supervisors, administrators, and employees actively discouraged and prevented disclosure to third parties about any claims of child abuse against any staff member at any facility operated by Defendants.

### *Defendants Had a Duty to Provide a Safe and Secure Facility for Juveniles Committed to or Otherwise Housed at MRYH and Provide Educational Opportunities Pursuant to Constitutional and State Law Mandates*

42. At all times the institutional Defendants and all their staff members, workers, employees, servants, volunteers, and the like were mandatory reporters pursuant to Michigan law and were required to report any suspected child abuse pursuant to section (3) of M.C.L. 722.623, *et seq.*; and all other applicable child abuse reporting requirement laws related to mandatory abuse reporters and applicable to Defendants' facilities.

43. MRYH served as a custodial facility for the placement of juvenile court adjudicated youth and other at-risk youth. Operating from approximately 1996 until approximately 2024, MRYH provided juvenile residential care for the duration of its existence. Upon information and belief, it claimed to assess the unique needs of each student, teach tools for success, and offer meaningful opportunities for personal growth.

44. Upon information and belief, children with a wide range of backgrounds, abilities, and diagnoses received treatment from MRYH programs. MRYH offered clinical,

therapeutic, educational, and employment programs for children with special needs and their families.

45. Upon information and belief, there was no clear and safe mechanism by which victims could report abuse within MRYH; as reported, those who did report were disbelieved, or worse, retaliated against, exacerbating and amplifying the trauma of the actual abuse.

46. In 2018, MRYH was sued by the parents of a child who committed suicide while he was at the facility. The lawsuit alleged that MRYH knew that the child was suicidal and depressed but left him alone in his room without providing required checks every 15 minutes. *Hutchinson, et al. v. Muskegon River Youth Home, Inc., et al.*, No. 1:18-cv-647 (W.D. Mich. Jun. 8, 2018).

47. In 2020, MRYH was sued by the parent of a child who alleged the child was severely physically and psychologically abused while he was at the facility. *Kaczynski v. Muskegon River Youth Home, Inc., et al.*, No. 1:20-cv-126 (W.D. Mich. Feb. 12, 2020).

48. In 2012, the U.S. Equal Employment Opportunity Commission (EEOC) obtained a ten-year consent decree after filing federal litigation against MRYH alleging discrimination against pregnant employees.  The lawsuit alleged that the home violated Title VII of the Civil Rights Act of 1964 by discriminating against female employees on the basis of their sex. *EEOC v. Muskegon River Youth Home, Inc.*, No. 1:12-cv-01049 (W.D. Mich. Sep. 27, 2012).

49. Upon information and belief, many of the children who were housed at MRYH were vulnerable, intellectually disabled, and/or already fleeing from abuse.

50. The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are

easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or residential treatment setting, abuse can more easily be hidden, and children have limited access to police, advocates, or social services representatives who can intervene.

51. Upon information and belief, MRYH failed to enact appropriate uniform national and system-wide protocols and policies to ensure the safety of its youth. Defendants acted with an extreme disregard for the wellbeing of children in its programs by failing to properly screen, hire, and train employees, failing to report known abuse of youth in MRYH facilities, and ignoring and covering up complaints alleged against it regarding child abuse.

52. Further, MRYH failed to enact sufficient measures to ensure the safety of youth in its care.

53. Moreover, MRYH's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its students exacerbated and amplified the trauma of the actual abuse due to institutional betrayal.

54. The term "Institutional Betrayal" refers to wrongdoings perpetrated by an institution upon individuals dependent on that institution, including failure to prevent or respond supportively to wrongdoings by individuals (*e.g.,* physical, emotional, and sexual abuse) committed within the context of the institution.

55. These failures, acts, and egregious omissions created a highly dangerous risk of physical, emotional, and sexual abuse for any child placed in a MRYH program or facility. This pervasive culture of abuse allowed perpetrators access and opportunity to abuse highly

vulnerable children and young adults and gave them the impunity to act without the risk
of detection or punishment.

56. Upon information and belief, MRYH was funded in large part by the State of Michigan
and other government entities, jurisdictions, and agencies, both inside and outside
Michigan, to provide services mandated by law for children who had been ordered to
receive its services by a court.

57. Defendants had the duty to provide treatment, supervision, and rehabilitation in
accordance with federal and state Constitutional standards and laws and prevailing
standards for the care and custody of juveniles in need of treatment and supervision. As
detailed in this Complaint, Defendants failed to provide these services in accord with
Constitutional, statutory, and community standards of care.

## COMMON CAUSES OF ACTION

### Federal Law Claims

### COUNT 1 – Violations of Title IX 20 U.S.C. § 1681 *et seq.*
### Deliberate Indifference to Sex Discrimination
### As to the MRYH and MOISD Defendants

58. Plaintiff alleges and incorporates via reference the allegations contained in all the above
paragraphs, as fully as though the same were set forth herein at length.

59. Federal law, Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §
1681(a), states: "No person in the United States shall, on the basis of sex, . . . be
subjected to discrimination under any education program or activity receiving Federal
financial assistance. . . ."

60. Title IX is implemented through the U.S. Department of Education (DOE) regulations,
which apply to "every recipient [of federal funding] and to all sex discrimination

occurring under a recipient's education program or activity in the United States," 34 C.F.R. § 106.11, and which covers sexual harassment—including sexual assault—by school employees, students, and third parties.

61. The DOE regulations further require that recipients of federal financial assistance "must adopt, publish, and implement grievance procedures . . . that provide for the prompt and equitable resolution of complaints made by students, employees, or other individuals who are participating or attempting to participate in the recipient's education program or activity, or by the Title IX Coordinator, alleging any action that would be prohibited by Title IX or this part." 34 C.F.R. § 106.8(b)(2).

62. Plaintiff is a "person" under Title IX.

63. Defendants' programs and facilities included educational programs. Education was a primary aspect of the services Defendants provided to MRYH residents.

64. Defendants received federal financial assistance for their education programs and was therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.*

65. Under Title IX, Defendants were required to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

66. Plaintiff and other children were subjected to sexual harassment, abuse, and assault by MRYH staff members while a resident at MRYH.

67. The sexual harassment, abuse, and assault experienced by Plaintiff and other children at MRYH constituted sex discrimination under Title IX.

68. Defendants were on notice of the conduct as described above but nonetheless failed to carry out their duties to investigate and take corrective action under Title IX.

69. Defendants failed to take immediate, effective remedial steps to resolve Plaintiff's and other children's complaints of sex discrimination and instead acted with deliberate indifference to Plaintiff's and other children's claims, including punishing another child for reporting abuse.

70. The sexual harassment, abuse, and assault experienced by Plaintiff at MRYH was so severe, pervasive and objectively offensive that it impeded and effectively denied Plaintiff's equal access to educational opportunities and benefits.

71. Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade children who had experienced sexual assault and discrimination from seeking assistance and protection.

72. Defendants were deliberately indifferent to Plaintiff's sexual abuse by, among other things:

   a. Failing to promptly and adequately investigate, remedy, and respond to his and other children's complaints about sexual abuse at MRYH;

   b. Punishing children for reporting sex abuse;

   c. Failing to adequately train and supervise staff members on how to respond to and address sex abuse; and

   d. Failing to maintain appropriate numbers of staff to ensure that there were no blind spots where sex abuse could go undetected.

73. Defendants are also liable for their failure to remedy the hostile educational environment experienced by Plaintiff by failing to offer appropriate interim measures and

accommodations that could have provided him equal access to educational opportunities and benefits and failing to remedy known sexually hostile environments.

74. As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

75. In subjecting Plaintiff to this wrongful treatment as described, and through its violations of Title IX, Defendants acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and oppression. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants, in a sum to be shown according to proof.

76. Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 2 – Violations of Title IX 20 U.S.C. § 1681 *et seq.*
### Policy or Practice/Heightened Risk of Sexual Harassment
### As to the MRYH and MOISD Defendants

77. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

78. The abuse described previously in this Complaint created an abusive and sexually hostile educational environment on MRYH's campus that impeded and effectively denied Plaintiff's equal access to educational opportunities and benefits.

79. Defendants are liable for the abusive and hostile educational environment on campus because they had actual knowledge of its staff in sex discrimination and abuse of children but allowed them to continue to have unfettered access to children.

80. Upon information and belief, Defendants failed to provide appropriate training and supervision of its staff to ensure that sexual abuse of children would not occur and that, if it did, it would be addressed appropriately.

81. As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

82. In subjecting Plaintiff to this wrongful treatment as described, and through its violations of Title IX, Defendants acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and oppression. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants, in a sum to be shown according to proof.

83. Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00),

exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive

damages, and such other legal and equitable relief as the Court deems appropriate.

<u>**COUNT 3 – Violations of Title 42 (42 U.S.C. § 1983 *et seq.*)**</u>
<u>**Civil Rights Deprivation and Excessive Use of Force**</u>
**As to All Defendants**

84. Plaintiff alleges and incorporates via reference the allegations contained in all the above

    paragraphs, as fully as though the same were set forth herein at length.

85. Pursuant to the Fourth, Eighth and Fourteenth Amendments of the United States

    Constitution, at all times relevant, Plaintiff had the right to be free from cruel, unusual

    and excessive force while under the custody and control of Defendants.

86. At all times Plaintiff was unarmed, and did not pose a threat of safety to Defendants or

    others.

87. Under all circumstances known to Defendants, the physical force used against Plaintiff

    was objectively and clearly excessive.

88. The Fourth, Eighth, and Fourteenth Amendments to the United States Constitution

    protect Plaintiff from physical and sexual abuse and unreasonable uses of force by

    Defendants.

89. These Amendments also require Defendants to establish policies and practices to protect

    Plaintiff and other children from known harms and known patterns of constitutional

    deprivations.

90. Defendants violated Plaintiff's clearly established right to be free from unreasonable and

    excessive use of force as guaranteed by the Fourth, Eighth and Fourteenth Amendments

    to the United States Constitution.

91. MRYH acted as an arm of the State of Michigan, where it operated, providing a core public function, and was a state governmental actor for 42 U.S.C. § 1983 liability purposes.

92. As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

93. In subjecting Plaintiff to this wrongful treatment as described, and through its violations of Plaintiff's Constitutional rights, Defendants acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and oppression. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants, in a sum to be shown according to proof.

94. Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE,** Plaintiff demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 4 – Violations of Title 42 (42 U.S.C. § 1983 *et seq.*)
### *Monell* Liability
### As to All Defendants

95. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

96. At all times relevant hereto, Defendants failed to train, discipline and supervise MRYH employees responsible for Plaintiff's custody and care, and/or encouraged MRYH employees to violate federal and state laws without regard to the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

97. At all times relevant hereto, Defendants refused to provide MRYH employees any training, discipline and supervision with regard to the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution; refused to provide MRYH employees with supervision and discipline to protect the constitutional rights of citizens; and refused to require MRYH employees to follow policies and procedures and state and federal law relating to Plaintiff's right to be provided with medical care for serious medical needs.

98. At all times relevant hereto, Defendants knew, or should have known, that the policies, procedures, training supervision and discipline of MRYH employees were inadequate for the tasks that each Defendant was required to perform.

99. At all times relevant hereto, there was a complete failure to train, supervise and discipline MRYH employees. The training, supervision and lack of discipline were so reckless that future violations of the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as described in the preceding paragraphs, were certain to occur.

100. At all times relevant hereto, Defendants were on notice and knew that the failure of training, discipline and/or supervision of MRYH employees with regard to the constitutional rights of citizens to be free from violations of the Fourth, Eighth and

Fourteenth Amendments to the United States Constitution, as described in the preceding

paragraphs, were inadequate and would lead to the violation of Plaintiff's constitutional

rights.

101.  At all times relevant hereto, Defendants' response to this knowledge was so inadequate

as to show a complete disregard for whether MRYH employees would violate the

constitutional rights of citizens to be free from violations of the Fourth, Eighth and

Fourteenth Amendments to the United States Constitution.

102.  Defendants implicitly authorized, approved, or knowingly acquiesced in the excessive

force and cruel and unusual punishment of citizens, and knew, or should have known,

that such treatment would deprive MRYH residents of their constitutional rights.

103.  At all times relevant hereto, there was a clear and persistent pattern of violations of

citizens' constitutional rights to be free from violations of the Fourth, Eighth and

Fourteenth Amendments to the United States Constitution, as described in the preceding

paragraphs.

104.  At all times relevant hereto, Defendants knew, or should have known, that there was a

clear and persistent pattern of violations of citizens' constitutional rights to be free from

violations of the Fourth, Eighth and Fourteenth Amendments to the United States

Constitution, as described in the preceding paragraphs.

105.  Defendants tolerated the police officers' repeated violations of the Fourth, Eighth and

Fourteenth Amendments to the United States Constitution, which allowed MRYH

employees to continue to engage in this unlawful behavior.

106.  Defendants refused to discipline officers who violated citizens' constitutional rights

to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United

States Constitution; failed to fully investigate allegations of misconduct, looked the other way, and thus, tacitly encouraged such behavior. In doing so, Defendants condoned, ratified or encouraged MRYH employees to violate the Fourth, Eighth and Fourteenth Amendments to the United States Constitution as a matter of policy.

107.  That the conduct of the aforementioned Defendants, individually, corporately and as agents of said individual Defendants, deprived Plaintiff of his clearly established rights, privileges, and immunities guaranteed him under the United States Constitution, specifically those set forth under the Fourth, Eighth and Fourteenth Amendments to same, as evidenced by the following particulars:

   a.  Permitting Plaintiff and other MRYH residents to be subject to excessive force and cruel and unusual punishment, in violation of the Fourth, Eighth and Fourteenth Amendments;

   b.  Failing to properly train and supervise the individuals within MRYH having custodial and/or care giving responsibilities over Plaintiff to ensure the above breaches/deviations were not committed;

   c.  Tolerating the conduct of individuals within MRYH having custodial and/or care when it was apparent that there was a pattern of treatment of Plaintiff and other persons in a manner consistent with excessive force and in violation of his Fourth, Eighth and Fourteenth Amendment protection against excessive force and cruel and unusual punishment; and

   d.  Failing to discipline the individuals within MRYH having custodial and/or care when it was apparent that they were using excessive force and cruel and unusual punishment.

21

108.  As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered

damages, including emotional distress, great pain of mind and body, shock,

embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of

income, and a loss of education.

109.  In subjecting Plaintiff to this wrongful treatment as described, and through its violations

of Plaintiff's Constitutional rights, Defendants acted willfully and maliciously with the

intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute

malice and oppression. Plaintiff is therefore entitled to the recovery of punitive damages,

in an amount to be determined by the court, against Defendants, in a sum to be shown

according to proof.

110.  Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. §

1988(b).

**WHEREFORE,** Plaintiff demands judgment against Defendants, individually, jointly

and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00),

exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive

damages, and such other legal and equitable relief as the Court deems appropriate.

### Michigan State Law Claims

### COUNT 5 – Negligence and Recklessness
### As to All Defendants

111.  Plaintiff alleges and incorporates via reference the allegations contained in all the above

paragraphs, as fully as though the same were set forth herein at length.

112.  Defendants had a duty to act reasonably and to maintain a safe environment for

Plaintiff while within the Defendants' care.

113.  Defendants are not afforded immunity via M.C.L. 691.1635 or 691.1407 because the conduct which caused Plaintiff's injuries amounts to gross negligence and/or willful misconduct and/or was prohibited by law and a violation of the prohibition is punishable by imprisonment.

114.  Defendants acted with a lack of care towards Plaintiff through their acts and omissions, including: allowing and authorizing a culture of abuse at MRYH facilities; failing to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending MRYH programs; failing to adequately train staff regarding best practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately supervise staff members to proactively identify and curtail signs of abuse; failing to maintain MRYH facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiff's wellbeing while in MRYH programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about incidents of physical, sexual and/or emotional abuse at MRYH; and failing to prevent serious and lasting psychological, physical, and emotional harm to youth in MRYH programs.

115.  Moreover, Defendants' lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of children exacerbated and amplified the trauma of the actual abuse due to institutional betrayal.

116.  As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock,

embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

**WHEREFORE,** Plaintiff, demands judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

<u>**COUNT 6 – Negligent Retention**</u>
**As to All Defendants**

117.  Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

118.  Defendants became aware or reasonably should have become aware that their employees were engaged in acts of physical, sexual, and/or emotional abuse of MRYH patients and residents, and yet failed to investigate, discharge, or reassign these employees.

119.  Defendants reasonably should have known that their staff physically and sexually abused Plaintiff while in their care. With reasonable supervision, protocols, and checkpoints in place, Defendants should have been aware of these egregious acts. Nonetheless, Defendants allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

120.  Defendants reasonably should have known that MRYH staff verbally and physically abused Plaintiff. Multiple staff observed Plaintiff's abuse, putting MRYH on actual notice of its employees' bad acts.

121.  Defendants also knew, through the direct observation of its staff, that MRYH staffers physically abused Plaintiff, routinely watched and groomed Plaintiff and other children for sexual abuse and threatened them with physical harm when they tried to report such.

122.  With reasonable supervision and protocols in place, Defendants would have responded appropriately to each of these incidents and ensured children were safe from future abuse.

123.  Defendants reasonably should have known that Ms. Nicole sexually abused Plaintiff on MRYH property. Had Defendants adequately and appropriately supervised and exercised control over its staff, they would have been aware of the abuse that occurred to Plaintiff.

124.  Defendants knew or reasonably should have known of Plaintiff's and other children's abuse yet negligently retained the employees responsible for the abuse. Because of Defendants' breach of their duty to take action to prevent reasonably foreseeable harm by their employees under these circumstances, Plaintiff was grievously harmed.

125.  Moreover, Defendants' lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of children exacerbated and amplified the trauma of the actual abuse due to institutional betrayal.

126.  As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 7 – Negligent Supervision
**As to All Defendants**

127.  Plaintiff alleges and incorporates via reference the allegations contained in all the above

paragraphs, as fully as though the same were set forth herein at length.

128.  Defendants knew or should have known of the need to properly and effectively

observe, manage, direct, oversee, and/or supervise administrators, staff, teachers,

counselors, employees, agents, servants, representatives, and/or ostensible agents in their

relationships with children.

129.  Defendants knew or should have known of the particular risk posed by the staff

members named within the Complaint and others based on, among other things, their

inappropriate and/or questionable conduct; their history of sexually, physically, and/or

emotionally abusing children; and/or their behavior indicative of an intent to isolate,

groom, and/or facilitate sexually contacting and/or abusing a minor child, including the

abuse by the staff members named within the Complaint and others.

130.  The negligence, carelessness, and/or recklessness of Defendants, for the conduct of

their actual or apparent administrators staff, teacher, counselors, employees, agents,

servants, representatives, and/or ostensible agents, in the hiring, certifying, assigning,

observation, retaining, supervision, management, oversight, direction, administration,

and/or otherwise control of the staff members named within the Complaint and/or other

staff members consists of one or more of the following:

    a.  Negligent hiring, certifying, assigning, observation, retaining, supervision,

        management, oversight, direction, administration, and/or otherwise control of

        staff and/or teachers and/or counselors in the employ of Defendants;

      b.   Failing to use due care in hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of the staff members named within the Complaint and/or other staff members and the relationship of the staff members named within the Complaint and others and/or other staff members with Plaintiff; and

      c.   Failing to investigate and supervise the staff members named within the Complaint and/or other staff members and their relationship and/or interactions with Plaintiff.

131.  Moreover, Defendants' lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of children exacerbated and amplified the trauma of the actual abuse due to institutional betrayal.

132.  As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 8 – Gross Negligence
**As to All Defendants**

133.  Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

134. Defendants owed Plaintiff a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

135. Defendants acted with a lack of care towards Plaintiff by demonstrating a conscious disregard or indifference towards his safety and wellbeing and significantly departing from how a reasonably careful person would act under the circumstances.

136. At all relevant times, Defendants owed a duty to Plaintiff to implement practices and policies to:

    a. Prevent sexual, emotional, and physical abuse of youth by MRYH staff;

    b. Prohibit and prevent romantic or sexual relationships between youth and MRYH staff;

    c. Prohibit grooming and other sexually exploitative behavior by MRYH staff;

    d. Require the prompt reporting of any allegations or suspicions of sexual, physical or emotional abuse of youth in MRYH programs by staff or by peers;

    e. Require the independent investigation of all reports of sexual, physical, or emotional abuse of youth in MRYH programs;

    f. Mandate the training of all staff who work directly with youth in MRYH programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

    g. Protect Plaintiff and from such abuse and foreseeable risks; and

    h. Provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

137. Defendants' duty arose from taking responsibility for the care and custody of youth attending their programs.

138.  Defendants acted recklessly and indifferently as the entity responsible for the care and custody of children with disabilities and advanced mental health needs who sought out MRYH for treatment, growth, and education, including Plaintiff.

139.  Defendants knew or should have known that by failing to take appropriate measures with respect to the lack of appropriate training, supervision, and oversight of its facilities and employees who worked closely with children and young adults suffering with advanced mental health needs, criminal records, unstable family relationships, substance abuse concerns, and/or intellectual and developmental disabilities, they created an unreasonable risk of harm to Plaintiff so great that it was highly probably that harm would result.

140.  Youth like Plaintiff in residential programs like MRYH are easily targeted because they are more likely to be perceived as weak or vulnerable and are seen as less likely to report abuse. In a group home or residential treatment setting, abuse can more easily be hidden, where children have limited access to parents, guardians, police, advocates, or social services representatives who can intervene.

141.  Defendants should have been aware of the delicate nature of working with these youth and the likelihood of abuse and harm resulting from the failure to closely monitor, train, and supervise their staff. Defendants thus owed its resident youth a duty to protect them from the foreseeable risk of staff who take advantage of children's vulnerability and staff's power differential for improper purposes.

142.  By recklessly failing to keep these children safe while in its care and custody, Defendants exhibited a willful disregard for necessary precautions to reasonably protect Plaintiff.

143.  Moreover, Defendants' lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of children exacerbated and amplified the trauma of the actual abuse due to institutional betrayal.

144.  As a direct and proximate result of Defendants' actions and inactions, Plaintiff has suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation, loss of enjoyment of life, a loss of income, and a loss of education. Plaintiff was prevented and will continue to be prevented from performing his activities of daily living due to the gross negligence of Defendants.

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 9 – Vicarious Liability
### As to the MRYH Defendants

145.  Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

146.  When Plaintiff was sexually, physically, and emotionally abused by MRYH staff members, these staff members were acting within their scope of employment in supervising and providing treatment to MRYH patients.

147.  MRYH is vicariously liable under the doctrine of *respondeat superior* for the tortious conduct committed by their staff members against children at MRYH.

148.  MRYH ratified its staff members' abusive conduct towards Plaintiff by failing to discipline, take corrective action, and/or report the child abuse.

149. These tortious acts were also foreseeable, as MRYH was aware of repeated incidents of

sexual, physical, and emotional abuse of MRYH patients within their facilities. MRYH

knew that its patients, including Plaintiff, were particularly susceptible to abuse as youth

with disabilities and critical mental health needs. MRYH knew, or reasonably should

have known, that by failing to implement appropriate procedures, policies, and

safeguards, it was highly foreseeable that its staff would continue to abuse vulnerable

children in their treatment programs, including Plaintiff.

150. As a direct and proximate result of MRYH's actions and inactions, Plaintiff has

suffered and/or continue to suffer from physical pain and suffering, mental and emotional

distress and suffering, physical manifestations of this distress, loss of self-esteem,

anxiety, fright, grief, humiliation, loss of enjoyment of life, a loss of income, and a loss of

education. Plaintiff was prevented and will continue to be prevented from performing his

activities of daily living due to the gross negligence of MRYH.

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly

and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00),

exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive

damages, and such other legal and equitable relief as the Court deems appropriate.

<u>**COUNT 10 – Negligent Infliction of Emotional Distress**</u>
**As to the MRYH Defendants**

151. Plaintiff alleges and incorporates via reference the allegations contained in all the above

paragraphs, as fully as though the same were set forth herein at length.

152. Pursuant to Michigan law, MRYH's negligent acts and omissions constitute the

negligent infliction of emotional distress, as: 1) MRYH owed a duty of care to Plaintiff;

2) MRYH breached the duty of care by failing to use due care in protecting Plaintiff from

abuse, as described above; 3) MRYH's negligence caused Plaintiff physical impact or

injury, as he was physically and sexually abused by MRYH staff; and 4) Plaintiff

suffered emotional distress as a result of MRYH's negligent conduct.

153.  Moreover, MRYH's lack of and/or failure to enforce adequate policies and procedures

for the prevention of, and proper response to, abuse of its residents exacerbated and

amplified the trauma of the actual abuse due to institutional betrayal.

154.  As a direct and proximate result of MRYH's actions and inactions, Plaintiff has

suffered and/or continue to suffer from physical pain and suffering, mental and emotional

distress and suffering, physical manifestations of this distress, loss of self-esteem,

anxiety, fright, grief, humiliation, loss of enjoyment of life, a loss of income, and a loss of

education. Plaintiff was prevented and will continue to be prevented from performing his

activities of daily living due to the gross negligence of MRYH.

155.  **WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly

and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00),

exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive

damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 11 – Intentional Infliction of Emotional Distress
### As to the MRYH Defendants

156.  Plaintiff alleges and incorporates via reference the allegations contained in all the above

paragraphs, as fully as though the same were set forth herein at length.

157.  MRYH's conduct was extreme and outrageous.

158.  Muskegon River Youth Home actions and inactions were outrageous and extreme,

shocking, atrocious, and intolerable. Their conduct goes beyond the possible bounds of

decency, and Muskegon River Youth Home acted with the reckless disregard of the probability that Plaintiff would suffer emotional distress as a result.

159.  Muskegon River Youth Home conduct was a substantial factor in causing severe emotional and psychological distress to Plaintiff. This distress was of such an intensity that no reasonable person should be expected to endure it.

160.  Moreover, Muskegon River Youth Home lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

161.  By permitting a culture of systematic physical, emotional, and sexual abuse at Muskegon River Youth Home facilities, Muskegon River Youth Home caused Plaintiff to suffer, among other things, appalling and deplorable acts of physical, sexual, and/or emotional abuse, and the resulting pain, suffering, humiliation, grief, shame, disgust, anxiety, nervousness, shock, distrust, and loss of enjoyment of life. Plaintiff will continue to suffer from these enduring harms and has incurred/will continue to incur lost earnings, lost earning capacity, and expenses for psychological treatments and counseling.

162.  **WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 12 – Breach of Fiduciary Duty
**As to the MRYH Defendants**

163.  Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

164.  MRYH owed a fiduciary duty to act in the best interests of the youth they serve. When a child was placed in MRYH, MRYH assumed the fiduciary duty to ensure that the child received appropriate care and was safe from foreseeable harms.

165.  By allowing and authorizing a culture of physical, emotional, and sexual abuse in its programs and facilities, repeatedly failing to report child abuse in its facility, allowing youth to be systematically abused while in MRYH programs, inadequately training and supervising employees, failing to maintain safe premises for youth which eliminated "blind spots," and failing to monitor Plaintiff's wellbeing so as to detect signs of abuse, among other failures, acts, and omissions as previously described, MRYH breached its fiduciary duty towards Plaintiff.

166.  As a direct and proximate result of MRYH's actions and inactions, Plaintiff has suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation, loss of enjoyment of life, a loss of income, and a loss of education. Plaintiff was prevented and will continue to be prevented from performing his activities of daily living due to the gross negligence of MRYH.

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 13 – Violation of the Elliott Larsen Civil Rights Act
## M.C.L. 37.2201 *et seq.* – Sex Discrimination
### As to All Defendants

167.  Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

168.    Defendants MRYH and MOISD are educational institutions by and within the meaning of ELCRA, M.C.L. 37.2401.

169.    ELCRA prohibits discrimination in educational institutions based on sex, specifically providing that no school shall "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2402(a).

170.    Defendants violated the ELCRA by failing to timely investigate and respond to reports of sexual abuse, providing any interim measures to ensure the safety of the victim, and failing to commence any sort of investigation after a report was filed, and failing to adequately train and supervise their staff with respect to the handling of sex discrimination complaints.

171.  As a direct and proximate result of Defendants' actions and inactions, Plaintiff has suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation, loss of enjoyment of life, a loss of income, and a loss of education. Plaintiff was prevented and will continue to be prevented from performing his activities of daily living due to the gross negligence of MRYH.

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00),

exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive

damages, and such other legal and equitable relief as the Court deems appropriate.

**PRAYER FOR RELIEF**

172.  Plaintiff alleges and incorporates via reference the allegations contained in all the above

paragraphs, as fully as though the same were set forth herein at length.

173.  Plaintiff respectfully requests the Court to enter judgment on his behalf as follows:

    a.  Declaring that Defendants violated their mandatory reporting obligations;

    b.  Ordering Defendants to make a complete disclosure of all records and information

       in their possession, custody, or control during the time period from five years

       before Plaintiff's residency to the present pertaining to the abuse of students at

       MRYH. Plaintiff requests that the Court appoint a special master and/or take other

       appropriate measures to ensure sensitive information about the victims of

       Defendants' abuse remains confidential (unless authorized by a victim/survivor)

       and, additionally, provide a mechanism for the victims of abuse to review records

       pertaining to them to verify that they exist, are accurate, and complete, and are

       available to be reviewed by Michigan and/or other government officials and law

       enforcement agents;

    c.  Ordering appropriate injunctive, declaratory, and other equitable relief;

    d.  Issuing a writ of mandamus commanding Defendants to report, as required by law

       for, all child abuse presently known or suspected by them, and to submit proof of

       compliance with such order to the Court within 10 days of such order;

    e.  Entering a judgment in favor of Plaintiff and against Defendants in an amount in

       excess of $75,000.00;

f.   Awarding Plaintiff compensatory, restitutionary, general, consequential, punitive, and exemplary damages in an amount to be determined at trial;

g.   Awarding pre-judgment and post-judgment interest as permitted by law;

h.   Awarding reasonable attorneys' fees and costs, including expert fees as provided for by law; and

i.   Granting such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMAND

174.  Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

175.  Plaintiff demands a jury trial on all claims triable as a matter of right.

Date:   April 21, 2025

Respectfully Submitted,

*s/Elizabeth K. Abdnour*
Elizabeth K. Abdnour (P78203)
Abdnour Weiker, LLP
325 E. Grand River Ave., Ste. 250
East Lansing, MI 48823
Phone: (517) 994-1776
Email: liz@education-rights.com

David Wesley Cornish, Esquire*
Cornerstone Legal Group, LLC
230 South Broad Street, 17th Floor
Philadelphia, PA 19102
Phone: 888-313-1385
Email: dwesley24@gmail.com

*Admission application to be filed

**ATTORNEYS FOR PLAINTIFF**